IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

|  |  |
|---|---|
| JPMORGAN CHASE BANK, N.A., | ) |
| | ) HON. |
| Plaintiff, | ) |
| | ) Case No. |
| v. | ) |
| | ) |
| LARRY J. WINGET and the | ) |
| LARRY J. WINGET LIVING TRUST | ) |
| | ) |
| Defendants. | ) |

# COMPLAINT

Plaintiff JPMorgan Chase Bank, N.A., as Administrative Agent ("Agent"), states the following for its Claims against Larry J. Winget ("Winget") and the Larry J. Winget Living Trust ("Winget Trust").

## NATURE OF ACTION

1. These Claims are brought by the Agent against Winget and the Winget Trust for enforcement of a guaranty and two pledge agreements entered into by Winget and the Winget Trust in 2002.

## THE PARTIES

2. Plaintiff JPMorgan Chase Bank, N.A. is a bank organized and operated as a national association, with its main office in Columbus, Ohio.

3. Defendant Larry J. Winget is a resident of Michigan.

4. Defendant the Larry J. Winget Living Trust is a trust organized under the laws of Michigan. Defendant Larry J. Winget is the trustee of the Larry J. Winget Living Trust.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332 (Diversity). Plaintiff and Defendants are citizens of different States and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs.

6. Venue is proper in this District pursuant to 28 U.S.C. § 1391.

## BACKGROUND

7. JPMorgan Chase Bank merged with Bank One, NA in 2004 to form JPMorgan Chase Bank, N.A., which succeeded to Bank One, NA's rights in regard to the agreements described herein among Bank One, NA, Winget and the Winget Trust.

8. Bank One, NA served as Administrative Agent for a group of lenders ("Senior Lenders") that extended credit to Venture Holdings Company, LLC (n/k/a NM Holdings Company, LLC) ("Venture"), a Michigan limited liability company, under a Credit Agreement that was entered into on May 27, 1999 and that was subsequently amended eight times ("Credit Agreement"). A copy of the Credit Agreement, with all amendments, is in the possession of the Defendants.

9. At all times relevant, Venture was owned and controlled by Winget and/or the Winget Trust. Venture and its direct and indirect wholly owned U.S. subsidiaries Vemco, Inc. (n/k/a NM Emco, Inc.), Venture Industries Corporation (n/k/a NM Industries Corporation), Venture Mold & Engineering Corporation (n/k/a NM Mold & Engineering Corporation), Venture Leasing Company (n/k/a NM Old Leasing Company), Vemco Leasing, Inc. (n/k/a NM Nemco Leasing, Inc.), Venture Holdings Corporation (n/k/a NM Holdings Corporation), Venture Service Company (n/k/a NM Service Company), Experience Management LLC (n/k/a NM Exp

LLC), Venture Europe, Inc. (n/k/a NM Europe, Inc.), and Venture EU Corporation (n/k/a NM EU Corporation) (collectively, "the Venture Debtors") were engaged in the business of developing and manufacturing auto parts for use by certain original equipment manufacturers.

10. Each of the Venture Debtors guaranteed the obligations of Venture under the Credit Agreement. Repayment of the obligations under the Credit Agreement and the guarantees is secured by a pledge of substantially all of the assets and properties of the Venture Debtors pursuant to the Security Agreement dated May 27, 1999 (as amended, restated or otherwise modified, "Venture Security Agreement"). The Defendants are in possession of a copy of the Venture Security Agreement.

11. On March 28, 2003, each of the Venture Debtors commenced cases under Chapter 11 of Title 11 of the United States Code ("Bankruptcy Code") by filing duly authorized bankruptcy petitions commencing bankruptcy cases in the United States Bankruptcy Court for the Eastern District of Michigan, Southern Division ("Bankruptcy Court"). On January 17, 2006, the Venture Debtors' Chapter 11 cases were converted to Chapter 7 cases under the Bankruptcy Code and a Chapter 7 Trustee was appointed ("Venture Chapter 7 Trustee").

12. In addition to the Venture Debtors, Winget and/or the Winget Trust own and/or control numerous other entities, including Deluxe Pattern Corporation ("Deluxe") and certain of its affiliates, including Venture Heavy Machinery Limited Liability Company, Venture Equipment Acquisition Company, Venture Real Estate Acquisition Company, Realven Corporation, Venture Real Estate, Inc., Venture Automotive Corp., and Farm and Country Real Estate (with Deluxe, collectively the "Deluxe Debtors" and with the Venture Debtors, "Debtors"). On May 24, 2004, each of the Deluxe Debtors commenced cases under Chapter 11 of the Bankruptcy Code by filing duly authorized bankruptcy petitions in the Bankruptcy Court.

On January 30, 2008, the Deluxe Debtors' Chapter 11 cases were converted to Chapter 7 cases under the Bankruptcy Code and a Chapter 7 Trustee was appointed ("Deluxe Chapter 7 Trustee").

13. Among the other entities owned and controlled by Winget and/or the Winget Trust are P.I.M. Management Co. ("P.I.M."), a Michigan corporation, and Venco #1, L.L.C. ("Venco"), a Michigan limited liability company.

14. On October 21, 2002, pursuant to the eighth amendment to the Credit Agreement ("8th Amendment"), Winget and the Winget Trust entered into a guaranty of payment in favor of the Agent ("Guaranty," attached hereto as Exhibit A), wherein Winget and the Winget Trust guaranteed the obligations of Venture under the Credit Agreement and secured payment of those obligations. In addition, in connection with the 8th Amendment, the Deluxe Debtors guaranteed the obligations of Venture under the Credit Agreement and secured those obligations by pledging to the Agent substantially all of their assets and property pursuant to the Security Agreement dated October 21, 2002 ("Deluxe Security Agreement" and with the Venture Security Agreement, "Security Agreements"). The Defendants are in possession of a copy of the Deluxe Security Agreement.

15. Under the terms of the Guaranty (at § 3), Winget's obligations as guarantor can be satisfied through recourse to stock, including stock in P.I.M. and Venco, that was pledged by Winget and the Winget Trust in two pledge agreements dated October 21, 2002 (hereinafter, "Winget/ P.I.M. Pledge Agreement," and "Winget/Venco Pledge Agreement," attached hereto as Exhibits B and C and hereinafter, collectively, "Pledge Agreements").

16. Pursuant to Section 7.6 of the Credit Agreement, the commencement of the bankruptcy cases by the Venture Debtors constituted a Default as defined thereunder. As a result of this Default and others, pursuant to Section 8.1(a) of the Credit Agreement, all Obligations as defined in the Credit Agreement became immediately due and payable without presentment, demand, protest or notice of any kind.

17. On January 7, 2005, the Debtors filed their Motion for (A) Entry of an Order, Pursuant to 11 U.S.C. §§ 105 and 363 and Fed. R. Bankr. P. 2002 and 6004 (i) Approving Bid Procedures for the Potential Sale of Substantially All of the Debtors' Assets, (ii) Approving Notice Procedures Regarding the Proposed Sale, and (iii) Scheduling a Hearing Date to Consider the Sale, and (B) Entry of an Order, after the Sale Hearing, Pursuant to 11 U.S.C. §§ 105(a), 363, 365 and 1146 and Fed. R. Bankr. P. 6004 and 6006, (i) Authorizing the Debtors to Sell Substantially All of Their Assets, (ii) Authorizing the Debtors to Assume and Assign Certain Executory Contracts and Unexpired Leases, and (iii) Granting Related Relief ("Sale Procedures Motion"). The Sale Procedures Motion was granted by an order of the Bankruptcy Court dated February 1, 2005 ("Sales Procedure Order").

18. Pursuant to the Sale Procedures Order, the Debtors solicited offers from various potential purchasers, including the Agent on behalf of the Senior Lenders, for the sale of substantially all of the Debtors' assets. As a result of this solicitation process and pursuant to the express authority set forth in the Sale Procedures Order, New Venture Holdings, LLC ("New Venture"), a company established by certain of the Senior Lenders to purchase the Debtors' assets, submitted a combined cash and credit bid to the Debtors. The Debtors, in the exercise of their business judgment, determined that New Venture's bid was the highest and best offer received for the sale of their assets and agreed to sell substantially all of their assets to New

Venture pursuant to the terms of an Asset Purchase Agreement with New Venture (the "Sale"). On April 19, 2005, the Bankruptcy Court approved the Sale and the terms of the Asset Purchase Agreement dated as of April 8, 2005 among New Venture and the Debtors ("APA"), and on May 2, 2005, the Sale closed.

19. Pursuant to the APA, New Venture acquired all the assets and properties of the Debtors, other than those specific assets and properties excluded from the sale pursuant to the terms of the APA ("Excluded Assets"). Immediately after the closing of the Sale, the amount of the unpaid indebtedness owed to the Senior Lenders under the Credit Agreement, excluding interest, fees and costs, was $376,312,449.09.

20. After the closing of the Sale, the Debtors no longer engaged in any ongoing business operations and only Excluded Assets remained in the Debtors' estates. The Excluded Assets consisted primarily of claims and causes of action against Winget and persons and entities owned by or affiliated with Winget, together with miscellaneous assets including certain tax refunds and two parcels of real property.

21. Subsequent to the Sale, the Agent has taken steps to collect the Excluded Assets that constitute "Collateral" as defined in the Security Agreements, as follows:

(a) On May 19, 2005, Venture Holdings Corporation sold the real property located in Seabrook, New Hampshire. The Agent, on behalf of the Senior Lenders, realized $13,882,131.17 as a result of this sale.

(b) The Venture Chapter 7 Trustee received a distribution from Peguform UK Limited ("Peguform"), a non-debtor affiliate of the Venture Debtors in connection with Peguform's liquidation. This distribution ("Peguform Distribution") was made by Peguform

on account of intercompany receivables held by the Venture Debtors against Peguform. The Venture Debtors received a payment on account of a settlement with Valeo, a French organization ("Valeo Settlement"). The Venture Chapter 7 Trustee refused to turn over the Peguform Distribution and the Valeo Settlement to the Agent. On July 21, 2006, the Agent filed the Motion of the Agent Pursuant to 11 U.S.C. §§ 362 and 105 for Relief from the Automatic Stay ("Lift Stay Motion") to compel, among other things, the turn over of the Peguform Distribution and Valeo Settlement to the Agent. On September 19, 2006, the Bankruptcy Court entered an order granting the Lift Stay Motion and directing the Venture Chapter 7 Trustee to immediately turn over the Peguform Distribution and the Valeo Settlement to the Agent. On October 16, 2006, the Venture Chapter 7 Trustee turned over to the Agent $3,452,183.58, which constituted the Peguform Distribution and the Valeo Settlement.

(c) Tax refunds have been collected by the Venture Chapter 7 Trustee in the current amount of $605,000. Pursuant to the terms of that certain NM Holdings/Deluxe Pattern Settlement Agreement dated June 6, 2007 and approved by order of the Bankruptcy Court on September 13, 2007 ("NM/Deluxe Settlement Agreement"), the Venture Chapter 7 Trustee is obligated to turn over the tax refunds to the Agent upon written notice by the Agent. The Venture Chapter 7 Trustee has indicated that an additional $600,000 in tax refunds may be available.

(d) The Venture Chapter 7 Trustee has marketed two contiguous parcels of real property located in Portland, Indiana. These marketing efforts resulted in a purchase agreement approved by the Bankruptcy Court on May 4, 2005 for the sale of the Portland, Indiana property which would have resulted in a net recovery to the Agent on behalf of the Senior Lenders of approximately $250,000 before fees and costs. The potential purchaser did

not close under the purchase agreement and the real property remains unsold. As of January 4, 2004, the appraised value of the Portland, Indiana property was $900,000 which appraisal assumed an 18 month marketing period and did not take into consideration any environmental issues on the property. Despite the continuing efforts of the Venture Chapter 7 Trustee, only minimal (if any) value from the Portland, Indiana property will be realized.

(e) A judgment in the amount of $36,263,015 has been obtained by Venture as a result of litigation against Autoliv, ASP ("Autoliv Judgment"). The Autoliv Judgment is currently the subject of an interpleader action pending before this Court. Subject to the legitimate claims of other interpleader claimants (only one of which remains to be determined in the pending interpleader action), the Agent on behalf of the Senior Lenders is entitled to the balance of the amount of the Autoliv Judgment, pursuant to the terms of the Security Agreements. On December 10, 2007, this Court entered an order authorizing the distribution of $5,000,000 of the Autoliv Judgment to the law firm of Drew Cooper & Anding. On May 21, 2008, this Court entered a stipulated order authorizing the distribution of $10,046,807.30, the then undisputed portion of the Autoliv Judgment, to the Agent for the benefit of the Senior Lenders. On August 22, 2008, this Court concluded that Winget has no actionable claim to any portion of the Autoliv Judgment and dismissed Winget's claim in the interpleader action. With the dismissal of Winget's claim, only one claim remains open in the interpleader action aside from the Agent's undisputed security interest. That claim seeks only $7,283,696.70 of the $21,171,675.70 that remains subject to the interpleader action. On August 26, 2008, the Agent filed a motion for a second interim distribution of the settled portion of the Autoliv Judgment requesting distribution to the Agent of $13,887,979, the now uncontested portion of the Autoliv Judgment.

(f) The Deluxe Debtors have brought claims against Winget and certain entities owned by or affiliated with Winget in the face amount of $39,747,034.39 ("Deluxe Claims"). The Deluxe Claims constitute "Collateral" as defined in the Deluxe Security Agreement. The Deluxe Claims are pending in the Bankruptcy Court and are being pursued by the Deluxe Chapter 7 Trustee. The Agent previously funded the fees and expenses of the Deluxe Debtors in pursuing the Deluxe Claims and anticipates continuing to fund the Deluxe Chapter 7 Trustee's continued pursuit of such claims. Pursuant to the terms of the NM/Deluxe Settlement Agreement, the Agent has the right to direct and control the prosecution of the Deluxe Claims. The amount of recovery on the Deluxe Claims is speculative.

(g) Other claims and causes of action have been brought by the Venture Debtors (and continued by the Venture Chapter 7 Trustee) against Winget and his affiliates. These claims are currently pending in the Bankruptcy Court. Depending upon the outcome of such litigation, the Agent on behalf of the Senior Lenders may have a security interest in some or all of the proceeds recovered by the Venture Chapter 7 Trustee pursuant to the terms of the Venture Security Agreement. The amount of recovery on these claims is speculative.

22. In summary:

- Substantially all assets of the Deluxe and Venture Debtors have been sold pursuant to 11 U.S.C. § 363;

- The real property located in Seabrook, N. H. has been sold;

- Proceeds of the Peguform Distribution and Valeo Settlement have been turned over to the Agent;

-9-

- The Venture Tax Refunds will be turned over to the Agent upon written notice;

- Unsuccessful attempts to sell the Portland, Indiana, real property establish that its market value is negligible;

- Recovery of the Autoliv Judgment is being pursued by the Agent in the Interpleader action;

- The Deluxe Claims against Winget and certain entities affiliated with Winget are being pursued by the Deluxe Chapter 7 Trustee, with the Agent having the right to direct and control the prosecution of such claims pursuant to the NM/Deluxe Settlement Agreement;

- The Venture Claims against Winget and certain entities affiliated with Winget are being pursued by the Venture Chapter 7 Trustee; the amount of the Agent's recovery is speculative.

23. Despite these collection efforts, the Agent and the Senior Lenders continue to hold a claim against the Debtors' estates consisting of those amounts still due and owing under the Credit Agreement. As of the date hereof, assuming all Excluded Assets which constitute Collateral and which are not speculative as to recovery are realized upon, the amount of the unpaid indebtedness owed to the Senior Lenders under the Credit Agreement will exceed $321,690,000.00, not including interest, fees and costs.

**COUNT I – ENFORCEMENT OF GUARANTY AGAINST THE WINGET TRUST**

24. Plaintiff restates and realleges the allegations set forth in Paragraphs 1 through 23 above, as if set out in full herein.

25. Pursuant to Section 3 of the Guaranty, the Winget Trust absolutely and unconditionally guaranteed the full and punctual payment and performance of the Secured Obligations as defined in the Credit Agreement (and also defined as the "Guaranteed Obligations" in the Guaranty).

26. Venture has failed to pay punctually the Secured Obligations, and the Secured Obligations (in an amount in excess of $321 million) remain due and owing to the Agent and the Senior Lenders.

27. The Agent has complied with all of its obligations under the Guaranty. Further, under Section 4 of the Guaranty, the Winget Trust agreed that its obligations under the Guaranty would not be released, discharged or otherwise affected by, among other things: any action or failure to act by the Agent with respect to any collateral securing all or any part of the Guaranteed Obligations; the existence of any claim, setoff or other rights which the Winget Trust may have at any time against the Agent, any Senior Lender or any other person; or any other act or omission to act or delay of any kind by the Agent, any Senior Lender or any other person.

28. Section 17 of the Guaranty provides that the Winget Trust agrees to pay all costs and expenses, including, without limitation, all court costs and attorneys' fees and expenses paid or incurred by the Agent or any Senior Lender or any Affiliate of any Senior Lender in prosecuting any action against the Winget Trust with respect to its obligations under the Guaranty.

WHEREFORE, the Agent respectfully requests:

  A. entry of an order granting judgment against the Winget Trust and in favor of the Agent (on behalf of the Senior Lenders) in the full amount of the Guaranteed Obligations that remain unpaid as of the date of judgment, in an amount to be proven at trial;

  B. an award of attorneys' fees and costs as authorized and required under Section 17 of the Guaranty;

  C. entry of an order providing that the Court will retain jurisdiction for the purpose of supervising enforcement of the Guaranty and disposition of any collateral pursuant thereto; and

  D. such other relief as the Court deems just.

## **COUNT II – ENFORCEMENT OF GUARANTY AGAINST WINGET**

29. Plaintiff restates and realleges the allegations set forth in Paragraphs 1 through 28 above, as if set out in full herein.

30. Pursuant to Section 3 of the Guaranty, Winget absolutely and unconditionally guaranteed the full and punctual payment and performance of the Secured Obligations as defined in the Credit Agreement (and also defined as the "Guaranteed Obligations" in the Guaranty).

31. Venture has failed to pay punctually the Secured Obligations, and the Secured Obligations (in an amount in excess of $321 million) remain due and owing to the Agent and the Senior Lenders.

32. The Agent has complied with all of its obligations under the Guaranty. Further, under Section 4 of the Guaranty, Winget agreed that his obligations under the Guaranty would not be released, discharged or otherwise affected by, among other things: any action or

-12-

failure to act by the Agent with respect to any collateral securing all or any part of the Guaranteed Obligations; the existence of any claim, setoff or other rights which Winget may have at any time against the Agent, any Senior Lender or any other person; or any other act or omission to act or delay of any kind by the Agent, any Senior Lender or any other person.

33. With respect to Winget, Section 3 of the Guaranty provides that any judgment for repayment of the Guaranteed Obligations will be enforced only with respect to stock pledged in accordance with the provisions of certain related pledge agreements, including the Pledge Agreements pertaining to P.I.M. and Venco.

34. Section 17 of the Guaranty provides that Winget agrees to pay all costs and expenses, including without limitation, all court costs and attorneys' fees and expenses paid or incurred by the Agent or any Senior Lender or any Affiliate of any Senior Lender in prosecuting any action against Winget with respect to his obligations under the Guaranty.

WHEREFORE, the Agent respectfully requests:

A. entry of an order granting judgment against Winget and in favor of the Agent (on behalf of the Senior Lenders) in the full amount of the Guaranteed Obligations that remain unpaid as of the date of judgment, in an amount to be proven at trial, such judgment to be enforced against Winget only with respect to the stock pledged in accordance with the pledge agreements as referenced in the Guaranty and as set forth in Count III of this Complaint;

B. entry of an order providing that the Court will retain jurisdiction for the purpose of supervising enforcement of the Guaranty and disposition of any collateral pursuant thereto;

      C.    an award of attorneys' fees and costs as authorized and required under Section 17 of the Guaranty; and

      D.    such other relief as the Court deems just.

## COUNT III – ENFORCEMENT OF PLEDGE AGREEMENTS AGAINST WINGET AND THE WINGET TRUST

35.    Plaintiff restates and realleges the allegations set forth in Paragraphs 1 through 34 above, as if set out in full herein.

36.    A "Default" has occurred within the meaning of Section 5.1 of each of the Pledge Agreements.

37.    Section 5.2 of each of the Pledge Agreements permits the Agent, following the occurrence of a Default, to exercise the remedies provided in the Pledge Agreements and under applicable law. Section 6 of each of the Pledge Agreements and applicable law provide that all remedies of the Agent are cumulative and may be exercised simultaneously.

38.    Subject to the provisions of Section 5.2 of each of the Pledge Agreements (described below), the Agent is entitled to registration of the Collateral (as defined in the Pledge Agreements) in the name of the Agent or its nominee, to exercise all voting and corporate rights relating to the Collateral, to take possession or control of the Collateral, and/or to foreclose and enforce its security interest in the Collateral and dispose of the Collateral pursuant to applicable law.

39.    Pursuant to Section 7.7 of each of the Pledge Agreements, Winget and the Winget Trust agreed that the Agent's rights to registration of the Collateral and to exercise voting

and corporate rights as to the Collateral are specifically enforceable against Winget and the Winget Trust.

40. Each of the Pledge Agreements contains the following language in Section 5.2 thereof:

> the Agent shall not exercise any rights or remedies under [the] Pledge Agreement until all reasonable efforts shall have been made by it to collect the Obligations from other collateral held by the Agent . . ., it being intended that the Collateral provided by [the] Pledge Agreement shall be realized upon by the Agent only as a last resort.

(Exs. B and C, § 5.2.)

41. The Agent has made all reasonable efforts to collect the Obligations from the other collateral.

42. The Agent's obligations under Section 5.2 of the Pledge Agreements have been satisfied.

WHEREFORE, the Agent respectfully requests:

A. entry of an order granting judgment against Winget and the Winget Trust and in favor of the Agent (on behalf of the Senior Lenders) requiring registration of the Collateral in the name of the Agent or its nominee and permitting the Agent to exercise all voting and corporate rights relating to the Collateral;

B. entry of judgment against Winget and the Winget Trust and in favor of the Agent (on behalf of the Senior Lenders) granting possession and control of the Collateral;

      C.    entry of an order providing that the Court will retain jurisdiction for the purpose of supervising enforcement of the Pledge Agreements and disposition of any Collateral pursuant thereto;

      D.    an award of attorneys' fees and costs; and

      E.    such other relief as the Court deems just.

September 8, 2008                              Respectfully submitted,

/s/ William T. Burgess
(P36922)
DICKINSON WRIGHT, PLLC
500 Woodward Ave., Ste. 4000
Detroit, MI 48226
(313) 223-3500
wburgess@dickinsonwright.com

-and-

Melville W. Washburn
Larry J. Nyhan
Matthew Clemente
Kevin C. Pecoraro
SIDLEY AUSTIN LLP
1 South Dearborn Street
Chicago, IL 60603

Attorneys for Plaintiff JPMorgan Chase Bank, N.A.

DETROIT  7-4032  1055870v1