UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JP MORGAN CHASE BANK, NA,

       Plaintiff,                                     Civil No. 08-CV-13845

v.                                                 HONORABLE AVERN COHN

LARRY WINGET and the LARRY
WINGET LIVING TRUST,

       Defendants,
_____/

**MEMORANDUM AND ORDER
GRANTING PLAINTIFF'S MOTION TO STRIKE DEFENDANTS' JURY DEMAND**[*]

**I. Introduction and Background**

This is a commercial finance dispute. Plaintiff-Counter Defendant JPMorgan Chase Bank, N.A. (the "Agent") is the Administrative Agent for a group of lenders that extended credit to Venture Holdings Company, LLC ("Venture") under a Credit Agreement.[1] The Agent is suing Defendants Larry Winget ("Winget") and the Larry Winget Living Trust ("Winget Trust") (collectively, "Defendants") to enforce a guaranty and two pledge agreements entered into by Winget and the Winget Trust in 2002 in which they guaranteed the obligations of Venture, a company owned and controlled by Winget and/or the Winget

---

[*] The Court originally scheduled this matter for hearing. Upon review of the parties' papers, however, the Court finds that oral argument is not necessary. See E.D. Mich. LR 7.1(e)(2).

[1] Bank One, NA, was the Administrative Agent for the lenders. It merged with JP Morgan in 2004 to form JP Morgan Chase Bank, N.A.

Trust.[2]  In its Complaint, the Agent asserts three claims as follows:

    Count I:    Enforcement of Guaranty Against the Winget Trust

    Count II:    Enforcement of Guaranty Against Winget

    Count III:    Enforcement of Pledge Agreements Against Winget and the Winget Trust

The Agent's Complaint does not contain a jury demand.

In November 2008, the Winget Trust filed a motion for a judgment on the pleadings as to Count I, arguing that it is entitled to a judgment that the language of section 3 of the

---

[2] This is the second lawsuit filed by the Agent against Winget and the Winget Trust regarding this subject matter. On October 28, 2005, the Agent filed a two count complaint for (1) specific performance and (2) declaratory judgment. JP Morgan v. Winget, No. 05-74141. Under Count I, the Agent sought to inspect Winget's financial records relating to Venture and affiliated companies, particularly PIM and Venco, pursuant to Section 11 of a Guaranty with Winget. The Agent essentially sought to monitor the value of its collateral under the Guaranty. Under Count II, the Agent asked the Court to declare the rights of the parties under two Pledge Agreements between the Agent and Winget as to PIM and Venco. The Court granted judgment to the Agent on Count I and dismissed Count II. Plaintiffs appealed. The Court of Appeals for the Sixth Circuit affirmed. JP Morgan v. Winget, No. 07-1096 (6th Cir. Dec. 14, 2007) .

Guaranty[3] limited the liability of both Winget and the Winget Trust to the Pledged Stock.[4] On February 23, 2009, the Court issued an Amended Memorandum and Order in which it found that the plain language of section 3 does not limit the Winget Trust's liability. See Dkt. 29. Specifically, the Court stated that

> [t]he "last paragraph" of Section 3 is unambiguous. It names Winget, and Winget alone, in connection with limiting liability under the Guarantee to the Pledged Stock. It does not apply to the Winget Trust. It carves out an exception to the unconditional guarantee assumed by both Winget and the Winget Trust by limiting actions against Winget to only the Pledged Stock. There is no exception for actions against the Winget Trust.

In light of this ruling, the Agent filed a motion for summary judgment on Count I, seeking to enforce the Guaranty without any limits against the Winget Trust. Additionally, Defendants filed a motion to amend their answer to assert affirmative defenses and a counterclaim in which they essentially claim that the parties intended that Winget and the Winget Trust be treated as one and that the Winget Trust's liability is limited to the Pledged

---

[3] Section 3 provides:

SECTION 3. The Guaranty. Subject to the last paragraph of this Section 3, the Guarantor hereby and unconditionally guarantees, as primary obligor and not as surety, the full and punctual payment . . . of the Guaranteed Obligations . . .
   . . .
   Notwithstanding anything herein or elsewhere to the contrary, *no action will be brought for the repayment of the Guaranteed Obligations* under this Guaranty and no judgment therefore will be obtained or enforced *against Larry Winget other than with respect to the Pledged Stock* in accordance with the provisions of the related pledge agreements[.]

(Emphasis added).

[4] In January 2009, the Court entered a Pretrial and Scheduling Order in which it stayed proceedings on Counts II and III because "[i]t appears that disposition of Count I may moot Counts II and III." See Dkt. 19.

3

Stock. Defendants assert that to the extent that section 3 says otherwise, it is a mutual mistake evidenced by the parties' course of dealing and other documentary evidence. Defendants counterclaim contains one count, which is entitled: "Mistake, Reformation and Unjust Enrichment." Defendants demand a jury trial, presumably on the claims raised by the Agent in their original Complaint and on the counterclaim. See 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2318, p. 217 (3d ed. 2008) ("[i]f a general demand for jury is made without specifying any issues, it will be regarded as a demand for jury trial on all the issues in the case").

On April 27, 2009, the Court issued an order in which it, among other things, granted Defendants' motion for leave to amend their answer, thereby allowing Defendants to assert their counterclaim, and denied without prejudice the Agent's motion for summary judgment. See Dkt. 40. With regard to the former disposition, the Court determined that "[a]llowing amendment will provide for a complete vetting as to the circumstances of the negotiation and drafting of the Guaranty and the parties' intent as to Winget and the Winget Trust's liability under the Guaranty." Accordingly, the Court denied the Agent's motion for summary judgment "without prejudice to its right to renew on notice to the Court."

Now before the Court is the Agent's motion to strike Defendants' jury demand. For the reasons that follow, the Agent's motion will be granted.

## II. Analysis

### A. Law

The Seventh Amendment to the United States Constitution provides as follows:

> In Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried by a jury, shall be otherwise reexamined in any Court of the

4

United States, than according to the rules of the common law.

U.S. Const. amend VII. The preservation of this ancient right is also reflected in the Federal Rules of Civil Procedure:

> **Rule 38. Right to a Jury Trial; Demand**
>
> **(a) Right Preserved.** The right of trial by jury as declared by the Seventh Amendment to the Constitution--or as provided by a federal statute--is preserved to the parties inviolate.

Fed. R. Civ. P. 38.

The Sixth Circuit has succinctly explained the importance and contours of the right to a jury trial under the Seventh Amendment:

> In Dimick v. Schiedt, 293 U.S. 474, 55 S.Ct. 296, 79 L.Ed. 603 (1935), the Supreme Court said that "[m]aintenance of the jury as a fact-finding body is of such importance and occupies so firm a place in our history and jurisprudence that any seeming curtailment of the right to a jury trial should be scrutinized with the utmost care." Id. at 486, 55 S.Ct. at 301. The Seventh Amendment provides that "[i]n suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved." As explained by Justice Story,
>
>> [b]y common law, [the framers of the Amendment] meant . . . not merely suits, which the common law recognized among its old and settled proceedings, but suits in which legal rights were to be ascertained and determined, in contradistinction to those where equitable rights alone were recognized, and equitable remedies were administered.
>
> Curtis v. Loether, 415 U.S. 189, 193, 94 S.Ct. 1005, 1008, 39 L.Ed.2d 260 (1974) (quoting Parsons v. Bedford, 28 U.S. (3 Pet.) 433, 446-47, 7 L.Ed. 732 (1830) (alteration in original)).

Golden v. Kelsey-Hayes Co., 73 F.3d 648, 659 (6th Cir. 1996).

There is no right to a jury trial under the Seventh Amendment when "th[e] case will resolve . . . only equitable rights." Golden, 73 F.3d at 659. See also Provident Life & Acc.

5

Ins. Co. v. Adie, 982 F. Supp. 1269, 1270 (E.D. Mich. 1997) ("[i]f the case involves only equitable rights, then a jury trial is not allowed").  As stated by the Sixth Circuit,

> to determine whether the Seventh Amendment entitles a particular litigant to a jury trial in a particular case, we must determine whether that case will resolve legal rights, or only equitable rights. In making this determination, we engage in two different inquiries. First, we compare the case at issue to "18th-century actions brought in the courts of England prior to the merger of the courts of law and equity." If the case at issue was unknown in eighteenth century England, we must look to an analogous claim that existed then to guide us in deciding whether the present case is legal or equitable.  "Second, we examine the remedy sought and determine whether it is legal or equitable in nature."  The second inquiry is more important.

Golden, 73 F.3d at 659 (citations omitted).

Additionally, "[t]he right to jury trial . . . may be waived as it has in many, many cases, by conduct, such as . . . signing an agreement of the parties . . . in writing."  Wright & Miller, § 2321, pp. 271-272.  Thus, "[a] contractual provision for waiver of jury trial in the event of a dispute among the contradicting parties will be enforced, but it will be strictly construed."  Id. at p. 278.  See also K.M.C. Co., Inc. v. Irving Trust Co., 757 F.2d 752, 756 (6th Cir. 1985) ("[i]t is clear that the parties to a contract may by prior written agreement waive the right to jury trial").  The standard employed to determine whether a party waived its right to jury trial is whether the waiver was "knowing and voluntary."  See K.M.C. Co.,757 F.2d at 756.  "[T]he objecting party" has "the burden of demonstrating that its consent to the [waiver] was not knowing and voluntary."  Id. at 758.

### B.  The Parties' Arguments

The Agent argues that Defendants' jury demand must be stricken for two independent reasons.  First, the Agent contends that Defendants are not entitled to a jury trial on their counterclaim because, in their counterclaim, Defendants seek reformation, an

6

equitable remedy for which there is no right to trial by jury. Second, the Agent argues that Defendants' jury demand must be stricken because they expressly waived their right to a jury trial in this case.

In response, Defendants argue that it is entitled to a jury trial on its counterclaim because the claim involves genuine issues of material fact. Additionally, with respect to the Agent's waiver argument, Defendants admit that the Guaranty contains a waiver of the right to a jury trial, but argues that the waiver is unenforceable. Defendants rely upon one case, K.M.C. Co., discussed below, in support of their argument.[5]

### C. Discussion

#### 1. Defendants' Counterclaim Is An Equitable Claim To Which No Right To A Jury Trial Attaches

To determine whether Defendants are entitled to a jury trial on their counterclaim, the Court must undertake a two-part inquiry. First, the Court must compare Defendants' counterclaim "to '18th-century actions brought in the courts of England prior to the merger of the courts of law and equity.'" Second, the Court must "'examine the remedy sought and determine whether it is legal or equitable in nature.'" Golden, 73 F.3d at 659 (quoting cases). "The second inquiry is more important." Id.

The first inquiry is satisfied here because contract reformation was an equitable cause of action in 18th-century England. See Am. Cas. Co. v. Glaskin, 805 F. Supp. 866,

---

[5] Defendants also argue, briefly, that the present motion violates the Court's stay on Counts II and III of the Agent's Complaint. See Dkt. 19 (stating that "[p]roceedings on Counts II and III are STAYED until further order of the Court" because "[i]t appears that disposition of Count I may moot Counts II and III"). This argument is unpersuasive because the present motion is directed—not specifically at Counts II and III—but rather at Defendants' counterclaim and, more generally, this action as a whole.

872 (D. Colo. 1992) (citing William Blackstone, Commentaries on the Law of England, Book the Third, Ch. XXVII (1768)). The second, and more important, inquiry is also satisfied because it is well-settled that contract reformation is an equitable remedy. See, e.g., Hearne v. Marine Ins. Co., 87 U.S. 488, 490 (1874) ("[t]he reformation of written contracts for fraud or mistake is an ordinary head of equity jurisdiction"); 66 Am. Jur. 2d Reformation of Instruments § 1 (1973) ("[a]n action for reformation is an equitable action and is cognizable only in equity or on the equity side of the court" (footnote omitted)). Because this two-part inquiry is satisfied, it is not relevant whether Defendants' counterclaim implicates factual issues.

### 2. Defendants Waived Their Right To A Jury Trial

Section 19 of the Guaranty reads, in pertinent part, as follows:

> THE GUARANTOR, AND THE ADMINISTRATIVE AGENT AND THE LENDERS ACCEPTING THIS GUARANTY, HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THIS GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY.

In the opening paragraph of the Guaranty, the parties define "Guarantor" as "Larry Winget and the Larry J. Winget Trust," the Defendants herein. Additionally, the Guaranty is signed by (1) Larry Winget, (2) the Larry J. Winget Living Trust, and (3) the Agent. Defendants do not argue that the claims in this case fall outside the scope of the jury trial waiver. Rather, Defendants contend that the waiver is unenforceable under the authority of K.M.C. Co.

K.M.C. Co. involved a dispute between K.M.C. and Irving Trust Co. over the validity of a jury trial waiver provision contained in a financing statement. Id. at 755. K.M.C., the party objecting to the operation of the waiver, offered evidence in the form of an affidavit

8

that a representative from Irving Trust Co. "represented to K.M.C.'s president . . . before the signing of the financing statement that the jury waiver provision would not be enforced under circumstances such as those in the instant case." Id. at 757. The court held that "the parol evidence rule may not bar proof that such a representation was made" and determined that K.M.C.'s waiver was not "knowing and voluntary" given Irving Trust Co.'s failure to rebut the affidavit. Id. at 757-758. K.M.C. Co. therefore stands for the proposition that (1) parol evidence is admissible to demonstrate the existence of a condition precedent to the operation of a jury trial waiver and (2) if uncontroverted evidence demonstrates that the condition precedent is satisfied, the waiver is not "knowing and voluntary."

Relying on the affidavit of Ralph McKee, Winget's attorney, Defendants mistakenly argue that K.M.C. Co. is applicable here. In his affidavit, McKee states, in relevant part, that the parties always intended (1) for the Trust and Winget to be treated the same under the Guaranty and (2) that both are subject to the same last resort condition. "In short," according to Defendants, "the Trust has proffered testimony that Chase agreed not to sue the Trust – and therefore could not have occasion to enforce the jury waiver – until it satisfied the last resort condition" (emphasis deleted).

Defendants' argument is unpersuasive. As the Agent correctly notes, K.M.C. Co. involved parol evidence relating to the conditions under which the jury trial waiver would be enforced. The present case involves no such evidence, as McKee's affidavit contains no reference whatsoever to the jury trial waiver contained in section 19 of the Guaranty or to the existence of any conditions precedent to its enforcement. Put differently, unlike in K.M.C. Co. where the party objecting to the operation of the waiver offered evidence relating specifically to its enforceability, no such evidence has been offered here. For this

9

reason, K.M.C. Co. is inapplicable.  By virtue of section 19 of the Guaranty, Defendants clearly, knowingly, and voluntarily waived their right to a jury trial.  See K.M.C. Co.,757 F.2d at 756.

### III.  Conclusion

For the reasons discussed above, the Agent's motion to strike Defendants' jury demand is GRANTED.  The case manager shall set a date for a status conference to move the counterclaim to trial.

SO ORDERED.

      s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated:  July 20, 2009

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, July 20, 2009, by electronic and/or ordinary mail.

      s/LaShawn R. Saulsberry
Case Manager, (313) 234-5160