UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

---

JPMORGAN CHASE BANK, N.A.,

    Plaintiff/
    Counter-Defendant,

v

LARRY J. WINGET and the
LARRY J. WINGET LIVING TRUST,

    Defendants/
    Counter-Plaintiffs.

Case No. 2:08-cv-13845

Hon. Avern Cohn
Magistrate Judge: Michael J. Hluchaniuk

---

William T. Burgess (P36922)
DICKINSON WRIGHT PLLC
Attorneys for Plaintiff/Counter-Defendant
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
Ph:    (313) 223-3500
wburgess@dickinson-wright.com

Melville W. Washburn (IL ARDC 6195497)
SIDLEY AUSTIN LLP
Attorneys for Plaintiff/Counter-Defendant
One South Dearborn Street
Chicago, IL 60603
Ph:    (312) 853-7000
D/L:   (312) 853-2070
mwashburn@sidley.com

John E. Anding (P30356)
Thomas V. Hubbard (P60575)
Leo L. Clarke (P70277)
DREW, COOPER & ANDING, P.C.
Attorneys for Defendants/
Counter-Plaintiffs
Ledyard Building, Suite 300
125 Ottawa Avenue, N.W.
Grand Rapids, MI 49503
Ph:    (616) 454-8300
janding@dcadvocate.com
thubbard@dcadvocate.com
lclarke@dcadvocate.com

---

**DEFENDANTS' REPLY TO PLAINTIFF'S
RESPONSE TO DEFENDANTS' MOTION FOR
LEAVE TO TAKE ADDITIONAL DEPOSITIONS**

I.  **INTRODUCTION**

This case balances on the fulcrum of *intent*—that is, what the parties intended as the scope of the October 2002 guaranty by Larry Winget and the Larry J. Winget Living Trust that forms the basis of Chase's **half billion dollar** claim against Defendants. Chase seeks to deny full and fair discovery in this matter in hopes of leaving its interpretation of the Guaranty unchallenged. The discovery Winget now seeks is vital to a full vetting of the parties' intent,[1] and Chase's position should be rejected as directly opposed to the approach spelled out by Judge Cohn on April 27, 2009.

II.  **ARGUMENT**

Contrary to Chase's position, the fact that lenders who participated in financing the Venture syndicated debt during the relevant time period of 2002-2005 (the "Bank Group") have no memory of a representation by their Agent, Plaintiff JPMorgan Chase ("Chase"), that the debt was supported by an unlimited guaranty of the Larry J. Winget Living Trust (the "Trust") is, in fact, evidence that *no such unlimited guaranty* was ever contemplated by the parties. Further, when the Bank Group can produce no documents discussing an unlimited guaranty by the Trust, and testify that they have no memory of any such guaranty being discussed during the entire pendency of the syndicated loan, the *absence of such documents and memories* is, in and of itself, persuasive evidence of the intent of the parties to limit the scope of the Trust's guaranty.

The documents and testimony of Apollo Management and its representative Damian Giangiacomo illustrate the fact that the discovery sought by Winget of the Bank Group—*whom Chase's counsel are treating as clients along with Chase in this litigation*—is critical to allowing a complete vetting of the intent of the parties.

---

[1] This is quite literally true, as Chase's counsel is treating *all* members of the Venture syndicated lending group, for whom Chase acted as Administrative Agent, as its clients for purposes of this litigation. (*See* e.g., Bradley Tr., pp. 6:18-23, 7:1-6.)

A. **The Trust is Never Mentioned in Lender Documents that Would have Noted Such a Material Source Of Repayment.**

There can be no serious dispute that discovery conducted by Winget of the Bank Group thus far has yielded relevant documents. A particularly relevant document was produced by Chase on behalf of Lender Apollo Management. (Attached as Ex. 1) The document is dated November 1, 2002, immediately following the execution of the Eighth Amendment to the Credit Agreement in October 2002, and describes the Eighth Amendment's "key benefits to the Bank Group," including:

- Unlimited secured guaranties from the North American ancillary assets that Winget personally owns and are held outside of the Company and were not part of the banks' collateral package.

- Guaranties from the operating companies in South Africa and Australia which Winget also personally held and kept outside the Company, subject to a cap of $50 million of value.

The listing of "benefits" illustrates Apollo's interest in identifying and valuing *all potential sources of repayment*, including guaranties from Winget individually and from entities Winget controls.[2] Tellingly, this document *never mentions* the existence of an unlimited guaranty by the Trust. The simplest, and truly only, explanation for this absence is that the parties to the Eighth Amendment never intended the Trust to have unlimited liability. Based on this document alone, Chase has failed to meet its burden of establishing that further discovery from the Bank Group lacks "likely benefits" for Winget, as required by F.R.C.P. 26(b)(2)(C)(iii).

B. **The Testimony of Damian Giangiacomo Illuminates the Intent of the Parties and Reinforces Winget's Need for Further Discovery.**

Damian Giangiacomo of Apollo Management established the foundation for the Apollo Memo discussed above. His testimony indicating his lack of memory of any documents

---

[2] The description of collateral dovetails perfectly with the 8th Amendment to the Credit Agreement, "Collateral means collectively all property of the Borrower, of the Guarantors and of the Affiliate Guarantors." It implicitly *rejects* Chase's proposal that a more restrictive definition of "collateral"—to include only secured assets—applies.

3

reflecting, or any representations regarding, an unlimited guaranty by the Trust undermines Chase's position that such an unlimited guaranty ever existed. Regarding the Contents of the Apollo Memo (Ex. 1), Mr. Giangiacomo testified that:

- The Memo was created to describe the status of the investment and the status of the company (Giangiacomo Rough Tr., p. 17, attached as Ex. 2);

- It would be *unusual* to leave a material source of repayment out of the Memo. Even an unsecured material source of repayment *would be relevant* to Apollo's analysis as described in the Memo (Giangiacomo Rough Tr., p. 41).

In other words, Mr. Giangiacomo confirmed the significance of the fact that an unlimited guaranty by the Trust—which by Chase's own admission would have been a "material" source of repayment—was not mentioned in the Apollo Memo.[3]

Further, Mr. Giangiacomo provided relevant testimony regarding the Eighth Amendment and Guaranties:

- Mr. Giangiacomo testified that his company, Apollo Investments, would want analysis of all material sources of repayment (Giangiacomo Rough Tr., p. 30.), and would want to know how much the material sources of repayment were worth. (Giangiacomo Rough Tr., p. 31.)

- If the Trust had been a material source of repayment, he would have asked for its financial statements. Yet, he had no memory of asking for or seeing financial statements from the Trust. (Giangiacomo Rough Tr., p. 91.)

- He had no recollection of ever being told or viewing a document showing that the Trust was an unlimited guarantor under the Eighth Amended Credit Agreement (Giangiacomo Rough Tr., pp. 37-38), and could not challenge the recollections of Larry Winget or other Venture representatives that the Trust did not have unlimited exposure. (Giangiacomo Rough Tr., p. 78.)

Mr. Giangiacomo also testified as to Chase's role and responsibility as Agent for the Bank Group. Chase, as Agent, reported to a "steering committee" from the Bank Group while the Eight Amended Credit Agreement was being negotiated (Giangiacomo Rough Tr., pp.

---

[3] Chase's internal credit summary valued the Trust assets at no less than $150 Million, an amount that Chase Vice President, Richard Babcock, admitted was "internal" relative to the Venture loan.  (Ex. 3, Babcock Tr., 152:18-153:23; Ex. 4, Credit Approval Summary, p. 2.)

4

43-44). As a member of the steering committee, Apollo expected to be informed by Chase of any material changes during negotiations. (*Id.* at 47.) Placed in context, Mr. Giangiacomo's lack of memory concerning, and Apollo's lack of any documents discussing an unlimited guaranty by the Trust is striking. If such a guaranty had been secured by Chase during the negotiations, Chase would have been obligated to so advise the Bank Group.

In short, the Bank Group's testimony provides the critical perspective of key players to the transaction. The Bank Group had a direct financial interest in the terms of the Eighth Amendment. Along with performing their own "due diligence" with regard to the Venture loan, they relied on Chase as their Agent to provide material information on *all* material sources of repayment. If (as Mr. Giangiacomo testified) none of the members of the Bank Group recall discussion of an unlimited guaranty by the Trust, and if (as with Apollo) no member of the Bank Group performed or requested any analysis of the value of the Trust as a source of repayment, the clear inference is that no such unlimited guaranty was contemplated by the parties in 2002. This testimony supplies the "complete vetting as to the circumstances of the negotiation and drafting of the guaranty and the parties' intent" that the Court ordered on April 27, 2009 (Dkt. No. 40), and Defendant's Motion should thus be granted.

## CONCLUSION

Even in the face of Chase's dilatory practices, both documentary discovery and deposition discovery have thus far yielded important information regarding the intent of the parties. Chase's rush to close discovery serves only its own litigation strategy and undermines the Court's Order of April 27, 2009. For the reasons set forth herein and in their principal brief, Defendants respectfully request that their Motion for Leave to Take Additional Depositions be granted.

Dated: September 9, 2010

/s/ John E. Anding
John E. Anding (P30356)
Thomas V. Hubbard (P60575)
Leo L. Clarke (P70277)
DREW, COOPER & ANDING, P.C.
Attorneys for Defendants/
Counter-Plaintiffs
Ledyard Building, Suite 300
125 Ottawa Avenue, N.W.
Grand Rapids, MI 49503
Ph:    (616) 454-8300
janding@dcadvocate.com
thubbard@dcadvocate.com
lclarke@dcadvocate.com

## CERTIFICATE OF SERVICE

I hereby certify that on September 9, 2010, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to all counsel of record.

Dated: September 9, 2010

/s/ John E. Anding
John E. Anding (P30356)
Thomas V. Hubbard (P60575)
Leo L. Clarke (P70277)
DREW, COOPER & ANDING, P.C.
Attorneys for Defendants/
Counter-Plaintiffs
Ledyard Building, Suite 300
125 Ottawa Avenue, N.W.
Grand Rapids, MI 49503
Ph:    (616) 454-8300
janding@dcadvocate.com
thubbard@dcadvocate.com
lclarke@dcadvocate.com

I:\JEATeam Shared Files\2652-06 Winget\MTNS, BIS, EXHIBITS\DFs' Reply PLs Rsp Deps LLC (2)