UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JP MORGAN CHASE BANK, NA.,

    Plaintiff,

-vs-

                                                                   Case No. 08-13845
                                                                HON. AVERN COHN

LARRY J. WINGET and the
LARRY J. WINGET LIVING TRUST,

    Defendants.
_____/

## MEMORANDUM AND ORDER
## GRANTING IN PART AND DENYING IN PART
## PLAINTIFF'S MOTION TO STRIKE TESTIMONY (Doc. 200)

### I. Introduction

#### A.

This is a commercial finance dispute. The background and nature of the case is described in the following documents:

> Amended Memorandum And Order Denying Defendants' Amended Motion For Judgment On The Pleadings As To Count I (Doc. 29)

> and

> Memorandum And Order Granting Defendants' Motion For Leave To Amend Answer and Denying Without Prejudice Defendants' Motion To Compel and Denying Without Prejudice Plaintiff's Motion For Summary Judgment On Count I and Denying As Moot Defendants' Motion To Stay (Doc. 40)

Briefly, plaintiff JPMorgan Chase Bank, N.A. (Agent) is the Administrative Agent for a group of lenders (Lenders) that extended credit to Venture Holdings Company, LLC (Venture) under a Credit Agreement. The Agent is suing defendants Larry Winget

(Winget) and the Larry Winget Living Trust (Winget Trust) to enforce a guaranty and two pledge agreements entered into by Winget and the Winget Trust in 2002 in which they guaranteed the obligations of Venture, a company owned and controlled by Winget and/or the Winget Trust.

B.

Before the Court are cross-motions for summary judgment on the issue of the Winget Trust's liability. (Doc. 186 and Doc. 191). In conjunction with the summary judgment motions, defendants' papers include what they characterize as expert reports by

- Stephen Carl Arch - professor and chairperson, Department of English, Michigan State University (Arch)

- George F. Bearup - a lawyer (Bearup)

- Robert D. Mollhagen - a lawyer (Mollhagen)

- Daniel W. Terpsma - a former bank executive (Terpsma)

Defendants have also included in their motion papers the affidavit of J.T. Atkins (Atkins), a former financial analyst and advisor to Larry J. Winget.

C.

The Agent has moved to strike the testimony of Arch, Bearup, Mollhagen, Terpsma and Atkins on the grounds that

- Defendants have not sought to have Arch, Bearup, Mollhagen or Terpsma qualified as experts

- Arch, Bearup, Mollhagen and Terpsma possess no scientific, technical or other specialized knowledge that qualifies their opinions as admissible evidence
- The testimony of Arch, Bearup, Mollhagen and Terpsma is unhelpful and unreliable

2

- The testimony of Atkins is irrelevant and prejudicial

For the reasons which follow, the Court will disregard the testimony of Arch, Bearup and Mollhagen, and will deny the motion as to the testimony of Terpsma and the affidavit of Atkins.

II.  Discussion

A.

As an initial matter, the criteria for admission of expert testimony is well-established and need not be repeated in detail here.  See <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993).[1]  Moreover, because the motions for summary judgment have not yet been decided, it is not clear as to the extent to which the Court will consider the opinion of Terpsma or the affidavit of Atkins in deciding the motions.  Should the case proceed to trial, the Court will consider such opinion and testimony.  The weight to be given the opinion and testimony is another matter.

B.

With regard to Arch, he states in his report, was engaged to "analyze the meaning of a single sentence in [the guaranty]."  The sentence reads:

> Notwithstanding anything herein or elsewhere to the
> contrary, no action will be brought for the repayment of the

---

[1] Under <u>Daubert</u> and its progeny, district courts must exercise a gatekeeping role in screening the reliability of expert testimony.  Consistent with this directive, Federal Rule of Evidence 702 provides that:
If scientific, technical, or other specialized knowledge will assist the trier of fact to ... determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case.

> Guaranteed Obligations under this Guaranty and no judgment therefor (sic) will be obtained or enforced against Larry Winget other than with respect to the Pledged Stock in accordance with the provisions of the related pledge agreements, provided that the Guarantor shall be fully and personally liable for any damages arising from any violations of any of the agreements of the Guarantor herein in favor of the lenders.

In <u>Thomas Noe, Inc. v. Homestead Ins. Co.</u>, 173 F.3d 581, 583-84 (1999), the Sixth Circuit said:

> The plaintiff contends that the trial court erred in failing to consider the affidavit of an expert witness, Professor Beth Eisler of the University of Toledo College of Law. Professor Eisler's affidavit opines that both of the exclusionary clauses in question here are ambiguous, and it suggests that "reasonable minds ay differ as to whether Mr. Noe was 'actually in or upon' the vehicle or was 'attending' the vehicle."
>
> Given our conclusion that Exclusionary Clause 5.D is unambiguous, it is clear that evidence of a law professor's contrary conclusion is inadmissible. See <u>North Am. Specialty Ins. Co. v. Myers</u>, 111 F.3d 1273, 1280-81 (6th Cir. 1997) (holding a report of an "expert in the interpretation of insurance contracts" inadmissible to defeat summary judgment where there were no ambiguous provisions or technical terms in the relevant portion of the insurance policy in question). Professor Eisler's affidavit offers an opinion on a legal matter – the proper interpretation of an insurance policy – that is well within the competence of the court. See <u>Id</u>. The district court did not err in disregarding the affidavit.

In the Amended Memorandum And Order Denying Defendants' Amended Motion For Judgment On The Pleadings As To Count I (Doc. 29), the Court said:

> The "last paragraph of Section 3 is unambiguous. It names Winget, and Winget alone, in connection with limited liability under the Guarantee to the Pledged Stock.

Thus, the Court has already opined on the language of Section 3, finding it unambiguous. This is why on the counterclaim Winget and the Winget Trust ask for the

4

following as relief:

> (i) Reformation of the Guaranty to reflect the actual intent of the parties that the liability of Winget and the Trust, if any, under the Guaranty and the Pledge Agreements is limited to recourse against the stock pledged under the Pledge Agreements and that Chase has no rights against the [sic] Winget or the Trust under the Guaranty until it has complied with the "reasonable efforts" and "last resort" conditions of the Pledge Agreements.

Given the Court's finding, Arch's contrary conclusion is not admissible.

C.

With regard to Bearup, the "Scope of Report" section of his report states:

> I have been asked to examine the Eighth Amendment Closing Documents (referred to for convenience as the *Eighth Amendment*, Deposition Exhibit 18), the Trust Agreement for the Larry J. Winget Revocable Living Trust (also referred to for convenience as the *Trust*) as well as related closing documents and testimony that reflect many of the negotiations that preceded the execution of the Eighth Amendment as to whether, based upon my experience as a trust attorney, the actions of the parties to the Eighth Amendment were consistent with a factual finding that they *intended* that the Guaranty signed by the Trust impose an *unlimited* undertaking upon the Trust as to the debt of the obligor (emphasis in original)

This statement is self-declaration of inadmissability. It is the Court's task to decide if "the actions of the parties. . .were consistent with a factual finding that they intended that the Guaranty signed by the Trust impose an unlimited undertaking upon the Trust as to the debt of the obligor." Bearup's conclusions are not necessary to assist the Court in its decision.

D.

Mollhagen's opinion is of the same order as Bearup's. His "Requested Opinion":

> You have requested that I provide my opinion ("Requested

5

> Opinion") as to whether the Transaction Documents (as defined below) taken as a whole are consistent with a factual finding that the parties to the Transaction Documents intended that the Guaranty impose unlimited liability on the Larry J. Winget Trust (the "Trust") as to the obligations of the Borrower (as defined below) under the Transaction Documents, but only limited liability on Larry J. Winget ("Winget")

also is a self-declaration of inadmissability. Mollhagen was also asked to do the Court's job: determine what the parties agreed to based on the evidentiary record.

E.

Terpsma's opinion, however, is of a different order. He was asked, as he states in his report, in light of his experience as a former bank executive with responsibility for commercial loan portfolios which included many "Syndicated Credits" to express an opinion as follows:

> Engagement
>
> I was engaged to render my opinion regarding whether or not the actions and communications undertaken by JPM are consistent with the conclusion that the Winget Trust provided a guaranty for "unlimited" support for the obligations of the Borrower, Venture Holdings Company, LLC.
>
> In addition, I was engaged to render an opinion as to whether or not a Guaranty, even if unsecured, with an estimated value of $100 million to the Agent and Secured Lenders, would be considered a material source of repayment, and if so, whether it would be a subject of Collateral Analysis undertaken by the Agent, and communicated to senior lenders.

As defendants' explain in the Corrected Defendants' Brief In Opposition To Plaintiff's Motion To Strike Expert Testimony (Doc. 205):

> [His] experience makes [his] testimony particularly reliable and relevant on the issue of the standard practices and customs Chase would have followed had it, in fact, secured

> for the syndicated lender an unlimited guarantee from the Trust under the Eighth Amendment.
>
> * * *
>
> [His] experience allows him to authoritatively address the standard commercial products of an administrative agent in servicing a group of syndicated lenders. . . .

Permitting Terpsma's opinion testimony on banking issues is consistent with the Sixth Circuit's decision in First Tennessee Bank National Ass'n v. Barreto, 268 F.3d 319 (6th Cir. 2001). In First Tennessee, a lender sued to compel the Small Business Administration (SBA) to fulfil its obligation under a guaranty to repurchase a defaulted loan. The district court's decision that the SBA was not obligated to repurchase the loan in light of the fact the lender was substantially negligent in servicing the loan was affirmed on appeal. The SBA's position was in large part dependent on the opinion testimony of an expert witness, an experienced bank executive. In turning aside a challenge to the admissibility of the expert's testimony, the Sixth Circuit said:

> After reviewing [the expert's] trial testimony, we cannot say that the district court abused its discretion by allowing him to testify as an expert witness. In reaching this conclusion, we find the Daubert reliability factors unhelpful in the present case, which involves expert testimony derived largely from [the expert's] own practical experiences throughout forty years in the banking industry. Opinions formed in such a manner do not easily lend themselves to scholarly review or to traditional scientific evaluation. . . . The fundamental objective when considering the admissibility of "expert" testimony is "to ensure the reliability and relevancy" of that testimony. As set forth above, the district court possessed an adequate basis for concluding that Iorlano's testimony was both reliable and relevant. Accordingly, we find no abuse of discretion in the district court's decision to admit his testimony.

First Tennessee, 268 F.3d at 335.

F.

Finally, Atkins' testimony is admissible. He had personal knowledge of the conduct of the parties after the signing of the Guaranty. As defendants point out, Michigan common law on contracts permits a court to determine the parties' intent not only by considering the documents regarding the transaction at issue, the testimony proffered by the parties, but also the post-formation conduct of the parties for evidence of intent. Atkins' statements are relevant and admissible on the issue of the parties' intent.

III.  Conclusion

Arch's testimony, whatever his qualifications as a linguist, is irrelevant in light of this Court's finding of no ambiguity in the text of the Guaranty. The testimony of Bearup and Mollhagen is irrelevant; it is the Court who will resolve the parties' disagreements as to the facts and the conclusion to be drawn from them. Terpsma's expert opinion is an aid to the Court's decision. Atkins' testimony is relevant. Accordingly, the Agent's Motion To Strike Testimony is GRANTED IN PART and DENIED IN PART.

SO ORDERED.


Dated:  November 30, 2011         S/Avern Cohn
                                  AVERN COHN
                                  UNITED STATES DISTRICT JUDGE


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, November 30, 2011, by electronic and/or ordinary mail.

                                   S/Julie Owens
                                   Case Manager, (313) 234-5160

8