UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JP MORGAN CHASE BANK, N.A.,

      Plaintiff/Counter-Defendant,

v.                                          Case No. 08-13845

LARRY WINGET and the LARRY WINGET          HON. AVERN COHN
LIVING TRUST,

      Defendants/Counter-Plaintiffs.

_____/

## MEMORANDUM AND ORDER DENYING DEFENDANT/COUNTER-PLAINTIFFS' MOTION TO COMPEL DISCOVERY ON COUNTS II AND III (Doc. 267)

### I.  Introduction

This is a commercial finance dispute.  Plaintiff/Counter-Defendant JPMorgan Chase Bank, N.A. (Chase) is the Administrative Agent for a group of lenders that extended credit to Venture Holdings Company, LLC (Venture) under a Credit Agreement.[1]  Chase is suing defendants/counter-plaintiffs Larry Winget (Winget) and the Larry Winget Living Trust (Winget Trust) to enforce a guaranty and two pledge agreements entered into by Winget and the Winget Trust in 2002 in which they guaranteed the obligations of Venture, a company owned and controlled by Winget and/or the Winget Trust.  Chase makes three claims, as follows:

Count I       Enforcement of Guaranty Against the Winget Trust

Count II      Enforcement of Guaranty Against Winget

---

[1]Bank One, NA, was the Administrative Agent for the lenders.  It merged with JP Morgan in 2004 to form JP Morgan Chase Bank, N.A.

Count III       Enforcement of Pledge Agreements Against Winget and the Winget Trust

As to Count I, Winget and the Winget Trust have filed a counterclaim seeking reformation of the Guaranty. A bench trial on the counterclaim is scheduled to begin on Monday, August 6, 2012.

Before the Court is Winget and the Winget Trust's motion to compel discovery on Counts II and III. For the reasons that follow, the motion is DENIED.

## II. Discussion

### A. Background

On January 21, 2009, the Court stayed proceedings on Counts II and III on the grounds that proceedings on Count I may moot Counts II and III. (Doc. 19). The parties then engaged in discovery on Count I, which resulted in several matters referred to a magistrate judge for resolution. (See Docs. 84, 85, 139, 158,164, 175). Following the denial of Chase's motion for summary judgment on Count I (Docs. 211, 214), the Court lifted the stay on Counts II and III. (Doc. 213).

On December 19, 2011, the Court entered a Pretrial Order (Doc. 217) which states in part:

1.      Discovery and related matters are completed except as described in Paragraph 7 below. No motions are pending.

. . .

7.      Defendant may have limited discovery in the form of deposing the employee of the Agent most knowledgeable regarding the reasonable efforts of the Agent to collect on the other collateral as described in paragraph 5.2 of the Pledge Agreements. Such deposition shall be taken by January 31, 2012. As a preliminary to the deposition, defendants shall advise the Agent of such documents the employee shall familiarize himself/herself with. Defendant following the deposition shall have the right to request enlargement of the discovery on cause shown.

8.      Any objections or modification request to this order shall be filed within five

business days.

On January 3, 2012, the Court issued a modification to the pretrial order (Doc. 220) which states in part:

> 1.      Plaintiff shall make available by January 9, 2012, for inspection and copying by defendants, the full Credit File relating to the Venture loan which is the subject matter of this case.

On April 2, 2012, following Winget and the Winget Trust's motion for expansion of discovery the Court entered an order which, inter alia, granted the motion and reserved Chase's right to move to limit discovery on Counts II and III.  (Doc. 251).  The Court also set a close for discovery of September 30, 2012 as to Counts II and III.

Thereafter, Winget and the Winget Trust sought to obtain electronaically stored information (ESI) which it says were responsive to Defendants' December 4, 2008 Requests for Production of Documents related to Counts II and III; and/or production of any ESI previously extracted.

Chase objected on the ground that "the Pledge Agreements are unambiguous, and the only relevant discovery is to identify 'other collateral' that has not yet been collected on…None of the discovery requested in the Letters is relevant to this issue." (Ex. 6 to Defendants' Motion, May 14, 2012 Letter.)  In a subsequent letter, Chase confirmed that it would "not agree to any discovery of any sort as to documents created or events that occurred prior to May 3, 2005 [the date of closing for Venture bankruptcy sale]," asserting that res judicata bars defenses based on pre-bankruptcy sale activities. (Ex. 7 to Defendants' Motion.).

Winget and the Winget Trust raised the discovery issue with the Court following the hearing on Chase's Daubert motion relating to the issues in the August 6, 2012 trial

3

on May 21, 2012.  An informal discussion with the Court and counsel for the parties

followed; the parties were unable to reach agreement.  Winget and the Winget Trust

then filed the instant motion to compel.

### B.  Counts II and III

Count II seeks a judgment on Chase's rights under the Winget Guaranty.  The

last paragraph of §3 of the Winget Guaranty provides:

> Notwithstanding anything herein or elsewhere to the contrary, no action will be
> brought for the repayment of the Guaranteed Obligations under this Guaranty
> and no judgment therefor will be obtained or enforced against Larry Winget other
> than with respect to the Pledged Stock in accordance with the provisions of the
> related pledge agreements.

The Guaranty requires that Chase satisfy certain conditions precedent prior to

enforcement of its rights under the Winget Guaranty.

The pledge agreement—which is the subject of Count III of Chase's

Complaint—is Winget and the Winget Trust's pledge of stock in P.I.M. Management

Company, L.L.C. (PIM).  Each pledge agreement has a "Last Resort" provision under

paragraph 5.2 which states in relevant part:

> **Notwithstanding anything herein or elsewhere to the contrary, the
> Agent shall not exercise any rights or remedies under this Pledge
> Agreement until all reasonable efforts shall have been made by it
> to collect the Guaranteed Obligations from other collateral held by
> the Agent (other than the stock of [P.I.M. Management Company],
> Venture Asia Pacific (Pty) Ltd., Venture Holdings B.V. or Venco
> #1, L.L.C.), it being intended that the Collateral provided by this
> Pledge Agreement [. . .] shall be realized upon by the Agent only
> as a last resort.**

(Emphasis in original).

In order to establish its right to enforce either the Winget Guaranty or Winget's

4

Pledge of PIM, Chase must prove, at a minimum, that it first undertook "all reasonable efforts" to collect the debt from "other collateral."

### C. Winget and the Winget Trust's Argument

Winget and the Winget Trust say that a comparison of Chase's pre-trial witness list for Counts II and III with Chase's witness list for Count I shows that the proofs relevant to Counts II and III require different witnesses from those who will be called to testify as to Count I, many of whom have never been deposed or even been previously disclosed, and none of whom have been examined with regard to the claims and defenses relevant to Counts II and III. Winget and the Winget Trust also say that their defense to Counts II and III is that Chase failed to satisfy the condition precedent of "reasonable efforts," and is thus barred from enforcement of the Winget Guaranty and/or the related Pledge Agreements. As such, Winget and the Winget Trust says they need information relating to any efforts Chase made to collect from other collateral.

### D. Chase's Argument

Chase agrees that discovery on Counts II and III is appropriate, specifically as to whether, under the Last Resort provisions of the pledge agreements Chase has made all reasonable efforts to collect on other collateral before enforcing the pledges. However, Chase says that Winget and the Winget Trust have requested discovery that goes far beyond this narrow issue.

Chase previously raised two objections to the discovery in letters to defendants and in its response to the motion to compel:

> 1. [T]he Pledge Agreements are unambiguous, and the only
> relevant discovery is to identify "other collateral" that has not yet
> been collected on. None of the discovery requested in the Letters

is relevant to this issue. Instead, the requested discovery appears targeted at the parties' "intent" in agreeing to the Pledge Agreements. Such parol evidence is irrelevant because the Agreements are unambiguous. (Ex. C (May 14, 2012, Letter from Melville W. Washburn to John E. Anding).)

2. Judge Cohn has previously ruled, and the Sixth Circuit has affirmed, that you are barred by res judicata from re-litigating issues that your client should have raised in the Venture and Deluxe Bankruptcy Proceedings. . . . Thus the reasonableness of the Agent's efforts to collect on collateral <u>during the Bankruptcy Proceedings</u> is not open to review in this proceeding. Based on these prior rulings . . . events that occurred prior to the § 363 Sale are not subject to discovery under Counts II and III.  Such events are irrelevant to the plain meaning of the Defendants' Pledge Agreements, and litigation regarding actions under the aegis of the bankruptcy court is barred by res judicata.

Chase again says that the requested discovery is extremely broad.  For example, Winget and the Winget Trust requested ESI (i) generated from October 1, 2002, through October 28, 2005, the same period as for Count I discovery; (ii) from two more custodians than was requested for Count I discovery; and (iii) based on broad search terms that would likely return not only every reference to the Pledge Agreements but a substantial amount of unrelated material as well.  Chase also says that Winget and the Winget Trust have requested new responses to several prior interrogatories and document requests, including regarding Chase's protocols and procedures for retrieving documents, the identity of the Ernst & Young Corporate Finance (EYCF) personnel with whom Chase worked to retrieve EYCF documents, and any written joint defense agreements executed by the Chase.  EYCF documents predate the Venture bankruptcy sale.  Chase says it is not in possession of any written joint defense agreements, nor are such agreements relevant to Counts II and III.

### III.  Conclusion

Fed. R. Civ. P. 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense"  "[T]he party seeking the information bears the burden of showing its relevance."  Hennigan v. Gen. Elec. Co., 2010 WL 4189033, at *3 (E.D. Mich. Aug. 3, 2010).  Furthermore, the information sought must be relevant to a legally viable claim or defense; i.e., if the information is only relevant to a claim that fails as a matter of law, the information is not relevant for Rule 26(b) purposes.

Chase's position is well-taken.  The only disputed issue relating to Counts II and III is whether Chase has satisfied the Last Resort provision of the pledge agreements.  This is Winget and the Winget Trust's defense to enforcement.  The issue for discovery is whether there is any more "other collateral" that Chase has not yet made reasonable efforts to collect on which remains unliquidated before seeking to enforce the pledge agreements against Winget and the Winget Trust.

To this end, it is notable that despite being afforded discovery targeted to this very issue, see Doc. 217, Winget and the Winget Trust have not been able to identify any of the "other collateral" that is the subject of the pledge agreements.  According to Chase, almost all information about any remaining "other collateral" is a matter of public record in the Venture and Deluxe bankruptcies, in which Winget and the Winget Trust actively participated as the beneficial owners of the "other collateral."

Winget and the Winget Trust offer two theories to justify more discovery: (1) that Chase's actions during the Venture and Deluxe bankruptcy proceedings violated the Last Resort provision; (2) that the parties intended the pledge agreements

7

satisfied once certain other pledges were executed, and the pledge agreements are ambiguous.  Neither of these theories justify a broad discovery request beyond what already has been ordered.

As to the first theory, Winget and the Winget Trust say that Chase did not make "all reasonable efforts" because it decided "not later than June 2003 to eschew collection of the debt from its collateral under the 8th Amendment in favor of pursuing $150 Million in assets that were not part of its collateral, namely Winget's assets in South Africa and Australia." (Doc. 243 at 14, 18.)  In other words, Winget and the Winget Trust contend that in June 2003—three months after Venture voluntarily filed a Chapter 11 petition—Chase unreasonably chose to negotiate with Winget and the Winget Trust and other interested parties to reorganize Venture, rather than move to terminate the Chapter 11 proceeding and immediately liquidate all of the collateral.  This was unreasonable, they say, because a sale in June 2003 might have fetched a higher price for most of the collateral than the bankruptcy sale yielded two years later.  This is the same allegation of a "scheme" that Winget and the Winget Trust raised in its  2006 complaint, which the Court dismissed and the Sixth Circuit affirmed.  Winget v. JPMorgan Chase Bank, N.A., 537 F.3d 565, 570–71 (6th Cir. 2008) (describing the claim brought in that case and in the bankruptcy case).  In the 2006 case, the Court and the Sixth Circuit both held that res judicata bars such a claim.  Id. at 572, 577–81; Winget v. JPMorgan Chase Bank, N.A., 2007 WL 715342, at *3–4, 7–10 (E.D. Mich. Mar. 7, 2007).  The same result applies here.  Events prior to May 2, 2005, the date the Venture bankruptcy sale closed, are not relevant to the issue which is the subject of Counts II and III.  Winget and the Winget Trust are not entitled to discovery related to

8

that time frame.

The Sixth Circuit, in affirming the Court's dismissal of the 2006 case, framed the

scope of Winget and the Winget Trust's challenge to Counts II and III:

> . . . to the extent that Winget's claims challenge [Chase's] compliance with the
> Last Resort Conditions, such claims are premature.  These claims are premature
> because [Chase has] not yet enforced the Guaranty Documents; when they do
> so, Winget may then bring a claim that [Chase's] actions violated the Last Resort
> Conditions.

Winget, 537 F.3d at 581.  Whether Chase has complied with the Last Resort conditions

is the only issue which is properly the scope of discovery for Counts II and III.  Chase

does not disagree.  As the Court already ruled, information relative to this issue is

discoverable.

SO ORDERED.


 S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE


Dated:  August 1, 2012


I hereby certify that a copy of the foregoing document was mailed to the attorneys of
record on this date, August 1, 2012, by electronic and/or ordinary mail.


 S/Julie Owens
Case Manager, (313) 234-5160