UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JP MORGAN CHASE BANK, N.A.,

    Plaintiff/Counter-Defendant,

v.                                       Case No. 08-13845
                                           HON. AVERN COHN

LARRY WINGET and the LARRY WINGET
LIVING TRUST,

    Defendants/Counter-Plaintiffs.
_____/

**AMENDED MEMORANDUM AND ORDER GRANTING CHASE'S MOTION FOR ENTRY OF FINAL JUDGMENT (Doc. 454)[1]**

### I. Preliminary Comments

There are three motions before the Court:

Chase's Motion for Entry of Final Judgment (Doc. 454)

Defendant/Counter-Claimant's Motion for Sanctions Against Plaintiff/Counter-Defendant Pursuant to Rule of Civil Procedure 11 (Doc. 356)

and Motion for Sanctions against Attorney William Burgess Pursuant to 28 U.S.C. § 1927 (Doc. 380)

These three motions have been fully briefed. The Court has spent a great deal of time on them and has come to a decision on them; therefore, I will proceed with the decision. I call your attention to the fact that this case really began on October 28th, 2005 with the filing of a complaint for specific performance and declaratory judgment. By my count, that's eight years ago. It is now time to bring it to a conclusion.

---

[1]This is an edited version of the Court's bench decision of December 18, 2013.

## II. Introduction

This is a commercial finance dispute. Plaintiff/Counter-Defendant JPMorgan Chase Bank, N.A. (Chase) is the Administrative Agent for a group of lenders that extended credit to Venture Holdings Company, LLC (Venture) under a Credit Agreement. Chase is suing defendants/counter-plaintiffs Larry Winget and the Larry Winget Living Trust (collectively Winget) to enforce a guaranty and two pledge agreements entered into by Winget and the Winget Trust in 2002 in which they guaranteed the obligations of Venture, a company owned and controlled by Winget and/or the Winget Trust. Chase makes three claims, as follows:

Count I - Enforcement of Guaranty Against the Winget Trust

Count II - Enforcement of Guaranty Against Winget

Count III - Enforcement of Pledge Agreements Against Winget and the Winget Trust

On October 2012, the Court entered a decision on reformation as to Count I (Doc. 365). Count I (as reformed) and Count II are effectively the same. The parties engaged in extended and contentious discovery and disagreement over the issues for trial on Chase's complaint. All of this culminated in Chase filing a motion for summary judgment on Winget's enforceability and delay defenses. (Doc. 391). The Court granted the motion. (Doc. 450). Chase contends that the decision on reformation and the elimination of Winget's defenses have resolved all outstanding issues of fact and law. As such, Chase filed a motion for entry of judgment which is now before the Court. For the reasons that follow, the motion is GRANTED.

### III.  Legal Standard

> Once a summary judgment has been entered, no further proceedings in the action are feasible. Thus, in the two-party, single-claim situation the granting of a summary judgment is a "judgment" within the definition of Rule 54(a) and an appeal is proper.  The same is true in the multiple-claim or multiple party situation if the summary judgment disposes of all the claims between or among all the parties.

10A Wright, Miller, et al., Federal Practice and Procedure § 2715 (3d. ed.).  Because as will be explained, the Court has disposed of all claims between the parties, entry of a final judgment is appropriate under Fed. R. Civ. P. 58(b)(2)(B).

### IV.  Analysis

#### A.  All Outstanding Issues Have Been Resolved

In its decision on reformation, the Court ruled in favor of Winget on his Counterclaim as to Count I of the Complaint, ruling that Section 3 of the Guaranty, dated October 21, 2002, executed by Larry Winget and the Trust in favor of Bank One, N.A., for the benefit of itself and the Lenders under the Credit Agreement (the Guaranty), was reformed to read in relevant part as follows:

> . . . no action will be brought for the repayment of the Guaranteed Obligations under this Guaranty and no judgment therefor will be obtained or enforced against Larry Winget and The Larry J. Winget Living Trust other than with respect to the Pledged Stock . . . .

(Doc. 365.).  The decision on reformation thus resolved all of the issues raised by the parties concerning Winget's Counterclaim.

The Court's subsequent Scheduling Order listed three issues for trial:

> 1. The enforceability of the Pledge Agreements relating to P.I.M. Management Company and Venco #1, L.L.C., in light of the pledge of shares in Venture Holdings, B.V. and the pledge of shares in Venture Asia Pacific, (Pty) Ltd.

3

>2. Reasonableness of the efforts by Chase to sell the collateral remaining subsequent to the sale of Venture's assets in the bankruptcy court.
>
>3. The text of the judgment to be entered in favor of Chase should it prevail at trial.

(Docs. 379 and 384).

In its August 21, 2013, Memorandum and Order Granting Chase's Motion for Summary Judgment on Winget's defenses, the Court said that the only issue remaining for trial is:

>[W]hether Chase has satisfied the Last Resort Provision . . . . The only factual question raised by that issue is whether there is any more 'other collateral' that Chase has not yet made reasonable efforts to collect on which remains unliquidated.

(Doc. 450).

Upon reflection, however, this factual question was resolved in the Court's decision. In other words, Winget's defenses - the enforceability and delay defenses - presented the only factual arguments directed to issues 1 and 2. When the Court granted Chase summary judgment on these defenses, there was nothing more to adjudicate.

First, the Court found that the pledge agreements are enforceable and this enforceability is not affected by the subsequent pledge of shares in the other entities. (Doc. 450) This disposes of the first issue for trial listed in the Scheduling Order.

Second, the Court found that it is undisputed that all of the Other Collateral referenced by the Last Resort Provision "were assets of Venture and Deluxe, and were therefore subject to the Venture and Deluxe bankruptcy proceedings." (Id.) The Court also found that it is undisputed that "the Venture and Deluxe debtors- in-possession

4

sold their operating assets as [a] going concern," and that "the only remaining Other Collateral for purposes of the Last Resort Provision" was subsequently disposed of. (Id.) There is no more "Other Collateral" that remains unliquidated. The Court further found that all of the Excluded Assets identified in Chase's complaint and motion papers have now been disposed of pursuant to orders of those courts and that Winget is therefore precluded from challenging the disposition of those assets. (Id.)

Since this case was filed in 2008, Winget has identified only one "asset" not previously identified by Chase—the Hyundai proposal. (Id.). However, the Court found that Winget is precluded from challenging the disposition of this "asset" for the same reasons discussed above: the proposal was presented to the Bankruptcy Court and any challenges should have been raised in that forum. Further, and independently dispositive, the Court found that, because the Hyundai proposal never came to fruition, it is not "collateral held by the Agent . . . which remains unliquidated" and is therefore not within the scope of the Last Resort Provision. (Id.). Thus, there is no "other collateral" for Chase to take any action upon.

Overall, there remain no factual issues for trial and no defenses to judgment. Chase has satisfied the last resort provision, and it is entitled to judgment in its favor on Counts I, II, and III.

### B. The Form Of Judgment

That leaves the last issue - the form of judgment. The text of the judgment to be entered in favor of Chase should conform to Chase's remedies under the Guaranty and the Pledges that were the subject of Chase's complaint and Winget's counterclaim.

Winget's arguments in opposition to entry of final judgment are addressed below.

## C. Winget's Arguments Do Not Carry the Day

Winget has argued that there are several unresolved issues which preclude entry of final judgment at this time. Winget has variously presented these issues to the Court during conferences and in his papers. However, despite Winget's protestations to the contrary, all issues have been resolved by prior rulings or can be resolved now as a matter of law.

First, Winget says that Chase has not put in evidentiary proofs as to its reasonable efforts in connection with the elimination of the other collateral, and that the Court has defined the reasonable efforts provision, but has not applied that provision to any facts that have been advanced by Chase. Thus, says Winget, there has been no finding as to the reasonableness of Chase's efforts.

Winget is wrong. The Court found that Winget is precluded by res judicata from challenging the reasonableness of the collateral that has been liquidated to date. The Last Resort Provision applies to collateral "which remains unliquidated." (Doc. 450). The Court found that no collateral "remains unliquidated." (Id.) As to satisfying the Last Resort Provision, there is nothing left for Chase to present or prove.

Second, Winget argues that the Court must decide whether or not a money judgment can be entered in connection with either of these first two counts. This is a matter of contract interpretation. Chase is plainly entitled to a money judgment against both defendants. Winget is liable for the Venture debt under Section 3 of the Guaranty. Liability for a debt must be reflected in a money judgment for the amount of the debt. Winget suggests that the limitation on recourse in the Guaranty, as reformed, somehow precludes a money judgment. Winget ignores the distinction between "liability" and

"recourse." The judgment must be reduced to a set amount. As Chase points out, if it is not so reduced, then Chase can make the argument that there is no limit to the amount that Chase may recover.

In addition, a money judgment against both Defendants is necessary and appropriate because of their liability under Section 17 of the Guaranty for Chase's "costs and expenses including, without limitation, all court costs and attorneys' fees and expenses paid or incurred . . . in endeavoring to collect all or any part of the Guaranteed Obligations from, or in prosecuting any action against, the Guarantor with respect to his obligations hereunder." Recourse for this liability is not limited by Section 3 of the Guaranty.

Third, Winget says that Count II, against Larry Winget, should be dismissed because the pledges can only be enforced against the owner of the property. Winget says that there have been no proofs that Larry Winget owns the PIM stock." This, too, misses the distinction between liability and recourse. The Guaranty allows judgment against Larry Winget; it limits recourse to the pledged stock owned by the Trust. Moreover, as discussed above, recourse for Larry Winget's liability under Section 17 of the Guaranty is not limited by Section 3.

Fourth, Winget contends that there have been no proofs as to the amount of the deficiency. Not so. Chase submitted proof of the amount of the deficiency in support of its motion for summary judgment. (See Doc. 392.) Winget did not raise a genuine issue of fact regarding the amount of the deficiency. Rather, in its response to Chase's statement of undisputed facts, Winget asserted that Chase's evidence supporting the deficiency "is an unverified, unexplained and unsupported spreadsheet." (Doc. 402).

However Chase provided a spreadsheet to Winget on October 5, 2012, in response to his August 30, 2012, interrogatory requesting a "current calculation of the total outstanding amount of the indebtedness under the Credit Agreement, including unpaid principal and accrued interest." Chase's interrogatory responses identified the spreadsheet as the source of the calculation and those responses were verified by Chase employee Phil Martin. See Exhibits B (Chase's interrogatory responses), C (Chase's production letter), and D (the spreadsheet produced on October 5, 2012, and included in Chase's December 2012 motion for summary judgment). By failing to present any evidence contesting the amount, Winget failed to create a genuine dispute of fact, and the amount of the deficiency was established when the Court granted Chase's motion for summary judgment.

Fifth, Winget asserts that there have been no proofs framed as to the remedies that are provided under that pledge or how they are to be enforced. No proofs are required. The remedies under the Pledges are set out in the pledge agreements. Furthermore, Chase's execution on the stock pledges under a final judgment is distinct from the findings supporting final judgment. Any questions regarding Chase's execution on collateral can only arise after final judgment is entered and Chase begins its collection efforts. This is why Chase's proposed order provides that the Court retains jurisdiction to supervise the collection process.

Sixth, Winget says that there are substantial questions under the principle of strictissimi juris, which says [that Winget is] entitled to strict construction of that document in [his] favor under Michigan law. Winget, however, has not identified any substantial questions. Strictissimi juris is not an independent "right," as Winget

suggests. Rather, it is a legal doctrine of contract construction. The doctrine states that "[t]he liability of a surety is not to be extended by implication beyond the terms of the contract. A surety cannot be held beyond the precise terms of his agreement." <u>Bandit Indus., Inc. v. Hobbs Int'l, Inc</u>., 620 N.W.2d 531, 534–35 (Mich. 2001) (internal citations and quotation marks omitted). This doctrine does not apply at this stage in the proceedings because the Guaranty and Pledges have already been interpreted by the Court. There is no question of interpretation to be decided using the concept of strictissimi juris.

Finally, Winget suggests that entry of judgment at this stage in the proceedings raises serious due process questions. Winget has had five years of due process, including multiple opportunities to pursue relevant discovery. The Court has addressed every legal theory he has advanced. Winget prevailed on reformation. He has not prevailed as to the enforceability of the Guaranty and Pledge Agreements.

To be clear. The Court is not, as Winget suggests, granting Chase summary judgment sua sponte. Rather, the Court is entering a judgment in favor of Chase based on the Court's reformation decision and its summary judgment ruling disposing of Winget's defenses.

All claims between or among the parties have been disposed of relative to the counts in Chase's complaint. A judgment shall be entered in favor of Chase under Fed. R. Civ. P. 58(b)(2)(B).

## V. Pending Matters

In granting Chase's motion, the following remains pending. First, the text of the final judgment. Chase's proposed judgment, attached as Exhibit A to its motion, may or

may not have some textual problems.  Winget shall have ten days in which to suggest changes in the text, not the substance, of the final judgment.  Chase may respond to any objections within ten days thereafter.

Second, Winget's Motion for Sanctions Under Rule 11 (Doc. 355) and Winget's Motion for Sanctions against William Burgess under § 1927 (Doc. 380) have not been formally decided.  These decisions on the sanctions motions will be the subject of separate orders.  However, each of these motions will be denied.  As will be explained, the motions are poorly taken and are frivolous in the circumstances of the case.

Finally, in responding to the Rule 11 sanction motion, Chase asked that the Court award its expenses, including attorney fees, incurred in connection with the motion.  See Doc. 360 at p. 9, Doc. 456 at p. 9.[2]  If Chase intends to follow through on its request, it shall reformat the request by separate motion and supporting brief within ten days.  Winget shall have ten days to respond and Chase shall have five days to reply.

SO ORDERED.

 s/Avern Cohn
UNITED STATES DISTRICT JUDGE

Dated:  December 20, 2013

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, December 20, 2013, by electronic and/or ordinary mail.

 s/Carol Bethel for Sakne Chami
Case Manager, (313) 234-5160

---

[2] A careful review of Burgess's response to the § 1927 motion does not disclose a request for attorney fees.