UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JP MORGAN CHASE BANK, NA.,

    Plaintiff/Counter-Defendant,

                                           Case No. 08-13845
-vs-                                     HON. AVERN COHN

LARRY J. WINGET and the
LARRY J. WINGET LIVING TRUST,

    Defendants/Counter-Plaintiffs.
_____/

**MEMORANDUM AND ORDER DENYING DEFENDANTS'/COUNTER-PLAINTIFFS'
MOTION FOR SANCTIONS AGAINST PLAINTIFF/COUNTER-DEFENDANT
PURSUANT TO FED. R. CIV. P. 11 (Doc. 356)**[1]

I. Introduction

Before the Court is Defendants'/Counter-Plaintiffs', Larry J. Winget and the Larry J. Winget Living Trust's (collectively, Winget) motion for sanctions under Fed. R. Civ.P. 11, against plaintiff/counter-defendant, JP Morgan Chase Bank, NA (Chase). The background of the motion is reflected in the Memorandum And Order Denying Defendants'/Counter-Plaintiffs' Motion For Sanctions Against Attorney William Burgess Pursuant To 28 U.S.C. §1927 of even date. As explained in the § 1927 decision, the basis for requesting sanctions pertains to Chase's conduct in defending against Winget's affirmative defense for reformation; a defense that Winget was ultimately successful following a trial on the merits. It is not directed at Chase's actions in pursuing liability following reformation - on which Chase has prevailed.

---

[1] At the hearing on December 18, 2013, the Court said that both the Rule 11 motion and the § 1927 motion were "poorly taken" and "frivolous." This memorandum explains the reasons for the statement.

Winget's position is that

> . . .Chase and its counsel have unquestionably continued to assert denials in the face of overwhelming and uncontested evidence that said denials are factually untenable and patently false. As such, both Chase and its counsel should be sanctioned under Rule 11 with a monetary award that reflects both the attorneys' fees incurred in defending against this unsupported claim and otherwise given effect to the goal of deterrence which Fed.R.Civ.P. 11 is intended to animate. Additionally, defendants note that nonmonetary directives are appropriate under Fed. R. Civ. P. 11(c)(4) to accomplish "effective deterrence" of the sanctionable conduct. In the instant case, along with an award of attorneys' fees and costs, defendants' request in the interest of effective deterrence that Chase's complaint be dismissed, in its entirety, with prejudice.

Chase's position is that

> Chase had a solid evidentiary basis for denying each alleged "fact" at issue. Chase acted more than reasonably. The request is simply a stratagem to argue the merits of the counterclaim. Also, the motion was filed too late.

No extended discussion of the motion and the defense against the motion is necessary. The motion is DENIED. The reasons follow.

## II. Legal Standard

### A.

Fed. R. Civ. P. 11 reads in relevant part as follows:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper -- whether by signing, filing, submitting, or later advocating it -- an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > (2) the claims, defenses, and other legal

2

>contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
>
>(3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
>(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.
>
>(c) Sanctions.
>
>(1) In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction on any attorney, law firm, or party that violated the rule or is responsible for the violation. Absent exceptional circumstances, a law firm must be held jointly responsible for a violation committed by its partner, associate, or employee.

B.

Relevant portions of the Advisory Committee Notes explain:

* * *

>The rule is not intended to chill an attorney's enthusiasm or creativity in pursuing factual or legal theories. The court is expected to avoid using the wisdom of hindsight and should test the signer's conduct by inquiring what was reasonable to believe at the time the pleading, motion, or other paper was submitted.

* * *

>. . .Any. . .award. . .should not exceed the expenses and attorneys' fees for the services directly and unavoidably caused by the violation of the certification requirement.

* * *

>. . .Nor should Rule 11 motions be prepared to emphasize

3

> the merits of a party's position, to exact an unjust settlement, to intimidate an adversary into withdrawing contentions that are fairly debatable, to increase the costs of litigation. . . .

### C.

The Sixth Circuit has explained that under Rule 11:

> [S]anctions may be imposed if "a reasonable inquiry discloses the pleading, motion, or paper is (1) not well grounded in fact, (2) not warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, or (3) interposed for any improper purpose such as harassment or delay." Herron v. Jupiter Transp. Co., 858 F.2d 332, 335 (6th Cir. 1988). The purpose of sanctions is to deter the abuse of the legal process. Id. Rule 11 was amended in 1983 to facilitate the imposition of sanctions against attorneys who disregard their professional responsibilities to the court. Id. As amended, the rule "stresses the need for some pre-filing inquiry into both the facts and the law to satisfy the affirmative duty imposed." Id.

Merritt v. International Ass'n. of Machinists, 613 F.3d 609, 626 (6th Cir. 2010).

Moreover, the "reasonable inquiry under Rule 11 is not a one-time obligation"—"plaintiff is impressed with a continuing responsibility to review and reevaluate his pleadings." Id. It is well established that "Rule 11 sanctions are appropriate when an attorney refuses to dismiss a claim after becoming aware that it lacks merits." Baker v. Chevron U.S.A., Inc., 533 F. App'x. 509, 2013 WL 3968783 (6th Cir. 2013). Additionally, a party who seeks attorney's fees as a Rule 11 sanction must mitigate damages by acting promptly and avoiding any unnecessary expenses in responding to papers that violate the rule. Jackson v. The Law Firm of O'Hara, et. al., 875 F2d 1224, 1230-31 (6th Cir. 1989) (citations omitted). Rule 11 motions are measured against an "objective standard of reasonableness under the circumstances." Gibson v. Solideal USA, Inc., 489 F. App'x. 24, 29 (6th Cir. 2012).

### III. Chronology

The chronology of significant papers and orders following the filing of the

4

complaint (Doc. 1) on September 8, 2008, are important considerations in assessing the merits of the Rule 11 motion. They are as follows:

| Document/Event | Document No. | Date |
|---|---|---|
| Answer | 8 | 10-10-2008 |
| Winget's Motion for Judgment on Pleadings | 11/12 | 11-07-2008 |
| Order Denying Motion | 18 | 01-07-2009 |
| Amended Denial Order | 29 | 02-23-2009 |
| Winget's Motion for Leave to Amend Answer (to assert reformation as affirmative defense) | 21 | 01-27-2009 |
| Order Granting Motion | 40 | 04-27-2009 |
| Chase's Motion for Summary Judgment | 23 | 01-28-2009 |
| Order Denying Motion | 40 | 04-27-2009 |
| Safe Harbor Notice (draft motion) | 360-2 | 06-30-2011 |
| Chase's Response | 360-3 | 07-18-2011 |
| Winget's Motion for Summary Judgment | 186 | 08-29-2011 |
| Notice of Withdrawal | 212 | 12-13-2011 |
| Chase's Motion for Summary Judgment | 191 | 08-29-2011 |
| Order Denying Motion | 214 | 12-13-2011 |
| Trial on Reformation |  | 08-06-2012 to 08-20-2012 |
| Winget's Motion for Sanctions | 356 | 09-25-2012 |
| Decision on Reformation | 365 | 10-17-2012 |

IV.  Discussion

A.

Winget's sanction papers are essentially a replication of its summary judgment papers. What the motion papers effectively say is that once discovery was complete, and the reformation case ready for trial, Chase should have seen the futility of going forward and conceded reformation, limiting the Winget Trust's liability to $50 Million

Dollars, and that Chase's failure to acknowledge that is sanctionable conduct. As a consequence of that failure, Winget says that Chase is obligated to pay its attorney fees and the liability case should be dismissed.[2]

In its conclusion section, Winget's corrected brief in support of its Rule 11 sanctions motion (Doc. 356) states as follows:

> For the foregoing reasons, defendants respectfully request that Chase and its counsel, jointly and severally, be sanctioned pursuant to Rule 11 in an amount equal to the fees and costs incurred by defendant[s] since the filing of Chase's Answer to defendants' counterclaim, which as of August 20, 2012 (the final day of trial as to defendants' reformation counterclaim) was $3,852,319.81.

B.

Winget's position lacks merit.

- It identifies no particular paper as sanctionable. It asks the Court to use the "wisdom of hindsight" to find that Chase's position merits sanction.

- It asks for attorney fees for the totality of its efforts following the filing of the answer to Winget's counterclaim. This ignores the fact that in some considerable measure the Court, in concluding reformation was in order, came to that conclusion by assessing the credibility of Chase's position that the language of the Winget Trust Guaranty was the determinate of its liability.

- The motion was initially proffered following two years of discovery, and was an effort to emphasize the merits of its position. Chase's response to Winget's draft motion (Exhibit B to Chase's response), fully responded to the allegations in the draft motion.

---

[2]The Court recently directed entry of judgment in Chase's favor as to the liability of Winget. (Doc. 470). The form of judgment has yet to be entered.

- At best, the motion was premature. At worst, the motion is an effort to obtain compensation for work done relating to reformation. This is seen by the examining the chronology of events relating to the filing of the Rule 11 motion. Winget's notice of its intent to file a Rule 11 motion, i.e. safe harbor, to Chase of its intention (which is not shared with the Court per Rule 11) came well before the issue of reformation was decided. The Court denied Chase's motion for summary judgment, finding factual issues related to reformation which precluded summary judgment. The Court then gave Winget an opportunity to consider whether to go forward on its cross motion for summary judgment in light of the denial of Chase's motion. Winget withdrew his motion. Nine months later, however, Winget filed his Rule 11 motion, based on the same evidence over which the Court had found a genuine issue of material fact. Moreover, it was filed following the bench trial but before the Court's decision on reformation. Thus, at the time of filing, the issue of reformation had not been adjudicated.
- There was no effort at mitigation. Winget withdrew its motion for summary judgment following close of discovery which led to a bench trial. Winget's Rule 11 motion suggest that there should not have been a trial at all, but rather his withdrawn summary judgment motion should have been granted.
- It was not unreasonable for Chase to move forward to trial following denial of its motion for summary judgment, considering the reasons the Court gave for the denial. There certainly was "a factual and legal basis for the issues raised."
- The motion papers emphasize the reasons for the Court's affirmative reformation decision. That Winget prevailed does not mean that sanctions are in order.
- Finally, as stated by Chase in its Supplemental Response To Winget's Motion

For Sanctions Pursuant To Rule 11 (Doc. 456), at p. 6-7:

> When responding to Winget's counterclaim, it was completely reasonable for Chase to believe that direct evidence based on contemporaneous documents actually memorializing the terms of the Trust's guaranty, plus the testimony of the only attorney representing either party who clearly and in detail described the process by which those documents were reviewed and edited and those terms were finalized, including her contemporaneous intent and understanding of the legal effect of those terms, raised a triable question of the parties' intent as to the terms of the Trust's undertaking in the Guaranty. Winget's withdrawal of his motion for summary judgment strengthened Chase's reasonable belief that its denials created triable issues of fact.
>
> Only after he conducted three years of wide-ranging, scorched-earth discovery did Winget decide that such discovery was unnecessary, because the documents in Chase's files proved his case. Only after he prevailed at trial did Winget belatedly decide that there never should have been a trial at all (footnote omitted).

IV. Winget's Precedents

Following the briefing of the Rule 11 motion, the Court requested of each party the citations and copies of the five most relevant cases supportive to their position, with appropriate passages highlighted. The cases cited by Winget (Doc. 463) bear no resemblance to the facts of this case:

• <u>Herron v. Jupiter Transp. Co.</u>, 858 F.2d 332 (6th Cir. 1988). This case involved a situation where the plaintiffs were advised by defendant in response to the filing of the case that the complaint was factually inaccurate, and unsupported in law. Plaintiffs ignored the letter. After deposing plaintiffs, defendant filed a motion to dismiss. At a status conference, plaintiffs acknowledged the case had no merit, but did not immediately dismiss it. The Court eventually dismissed the case, and thereafter the Court awarded defendant attorney fees under Rule 11. The award

was affirmed on appeal.

- Ridder v. City of Springfield, 109 F.3d 288 (6th Cir. 1997) . This case involved a situation where Rule 11 sanctions were denied for failure to follow the "safe harbor" requirement, and sanctions under 18 USC §1927 were awarded. The award was affirmed on appeal because of counsel's persistent assertions of unreasonable and vexatious multiplication of proceedings."

- Runfola & Assocs. v. Spectrum Reporting II, 88 F.3d 368 (6th Cir. 1996). In this case, the Court of Appeals affirmed the award of sanctions under the 1983 rule on the basis that after two and a half years following the defendants' summary judgment motion, there was an "utter failure. . . to unearth any facts whatsoever supporting its claim."

- Albright v. Upjohn Co., 788 F.2d 1217 (6th Cir. 1986). Here, the Court of Appeals directed the district court to impose sanctions, and found that the plaintiff's failed to conduct a reasonable pre-filing investigation, and that failure was insufficient because it failed to disclose that the claim was "well grounded in fact."

- Murray v. Dominick Corp. of Canada, Ltd., 117 F.R.D. 512 (S.D.N.Y. 1987). This case involved a situation where the case was dismissed mid-trial by oral order when it became apparent that plaintiff had failed to comply in full with a discovery order. Rule 11 was cited as a basis for the dismissal because of a "wilful violation of discovery obligations," and as an attendant ground to a dismissal under Rule 37(d).

V. Conclusion

In <u>Bodenhamer Building Corporation v. Architectural Research Corp.</u>, 989 F.2d 213, 218 (6th Cir. 1993) the Sixth Circuit said:

> Rule 11 was not designed to punish defendants for undertaking to defend a lawsuit, and recovery cannot be based merely on a defendant's election to defend a suit, even if the suit is later proved meritorious (rejecting defendant's argument that, "where a plaintiff or his attorney knows that the defendant has a strong, and possibly winning, defense, they will be sanctioned if they file a complaint"). To hold otherwise would be to abandon the American Rule, under which the prevailing party must pay his or her own attorneys' fees. Victorious litigants in this country have been required for almost two centuries to shoulder their own litigation expenses, and the 1983 amendments to Rule 11 were not intended to alter this fundamental truth.

So too here. To impose Rule 11 sanctions would be no more than a reward to Winget for prevailing on its position regarding reformation. This certainly is not grounds for an award of Rule 11 sanctions.

SO ORDERED.

                                               s/Avern Cohn
                                               UNITED STATES DISTRICT JUDGE

Dated: January 9, 2014

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, January 9, 2014, by electronic and/or ordinary mail.

                                             s/Carol Bethel for Sakne Chami
                                             Case Manager, (313) 234-5160