UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JP MORGAN CHASE BANK, NA.,

    Plaintiff/Counter-Defendant,

                                                Case No. 08-13845
-vs-                                            HON. AVERN COHN

LARRY J. WINGET and the
LARRY J. WINGET LIVING TRUST,

    Defendants/Counter-Plaintiffs.
_____/

**MEMORANDUM AND ORDER DENYING DEFENDANTS'/COUNTER-PLAINTIFFS' MOTION FOR SANCTIONS AGAINST ATTORNEY WILLIAM BURGESS PURSUANT TO 28 U.S.C. §1927 (Doc. 380)**[1]

I. Introduction

A.

This case involves a commercial dispute. Chase is the administrative agent for a group of lenders that extended credit to Venture Holdings Company, LLC (Venture), under a credit agreement. In the complaint (Doc. 1), Chase sued Larry J. Winget (Winget) and the Larry J. Winget Living Trust (Trust) to enforce a guaranty and pledge agreement securing the obligations of Venture. The Guaranty was signed by Winget and the Trust.

Before the Court is Larry J. Winget and the Larry J. Winget Living Trust's (collectively, Winget) Motion For Sanctions Against Attorney William Burgess Pursuant

---

[1] At the hearing on December 18, 2013, the Court said that both the Rule 11 motion and the § 1927 motion were "poorly taken" and "frivolous." This memorandum explains the reasons for the statement.

To 28 U.S.C. §1927 (Doc. 380) on the grounds that

> William Burgess filed on a false basis, and improperly persisted in refusing to withdraw, unsubstantiated claims and defenses based on the assertion that J.P. Morgan Chase Bank, N.A. ("Chase") had an unlimited Guaranty with regard to the Larry J. Winget Trust, despite Mr. Burgess' knowledge that these claims and defenses were frivolous.

William T. Burgess (Burgess) is the lead attorney for one of the two law firms representing JP Morgan Chase Bank, NA (Chase) in this case. Burgess' position is that the legal arguments and evidence advanced by Chase were well-grounded, reasonable and represented an effort to enforce unambiguous rights. Additionally, Burgess says that there is "no basis for a finding that he unreasonably and vexatiously multiplied court proceedings," as is required for an award of sanctions under 28 U.S.C. §1927.

B.

The motion is directed at Burgess's pursuit, on behalf of Chase, of the position that the Trust gave an unlimited Guaranty based on the plain language of a section in the Guaranty, although the liability of Winget was limited to $50 Million Dollars. Chase was ultimately not successful it this position. Getting there, however, was a long road. Eventually, Winget and the Trust prevailed at a bench trial and the Court reformed the Guaranty so as to make Winget and the Trust's liability limited to $50 Million Dollars. See Chase v. Winget, 901 F. Supp. 2d 955 (E.D. Mich. 2012) (Decision on Reformation, Doc. 365). For a predicate description leading up to the bench trial on reformation, see Chase v. Winget, 2011 WL 6181438 (E.D. Mich. Dec. 13, 2011) (Memorandum denying Chase's motion for summary judgment on Count I and on Winget's counterclaim, Doc. 214).

2

Following reformation, Chase moved for entry of judgment. Chase prevailed. Chase v. Winget, 2013 WL 6768606 (E.D. Mich. Dec. 20, 2013) (Amended Memorandum and Order granting Chase's Motion for entry of final judgment, Doc. 470). The form of judgment has yet to be entered.

As has been explained in the decision denying Winget's motion for Rule 11 sanctions of even date, the position Chase took is not sanctionable. Why Winget has singled out Burgess as the attorney responsible for the alleges evils Winget sees in Chase's pursuit of its position is not explained. What is clear is that the motion for sanctions under § 1927 has no merit. Accordingly, the motion is DENIED.

II. Background

A.

To understand Burgess' role, it is helpful to set forth how Burgess' signature appears in the case. Pleadings and papers filed by Chase were initially customarily signed by two law firms, with Burgess signing on behalf of one firm, and Melville W. Washburn (Washburn) signing on behalf of a second firm, with additional attorneys listed on behalf of the second firm. For example, the complaint (Doc. 1) was signed as follows:

> By: /s/ William T. Burgess
> (P36922)
> DICKINSON WRIGHT, PLLC
> 500 Woodward Ave., Ste. 4000
> Detroit, MI 48226
> (313) 223-3500
> wburgess@dickinsonwright.com
>
> -and-
>
> Melville W. Washburn

3

> Larry J. Nyhan
> Matthew Clemente
> Kevin C. Pecoraro
> SIDLEY AUSTIN LLP
> One South Dearborn Street
> Chicago, IL 60603

The brief in response to the Trust's motion for summary judgment (Doc. 14), Chase's initial motion for summary judgment (Doc. 23), and the accompanying brief, Chase's response to Winget and the Winget Trust's motion for leave to amend (Doc. 24), and Chase's answer (Doc. 43) to the Winget Trust's counterclaim were all similarly signed.

However, Chase's second summary judgment motion (Doc. 191), and Chase's brief in response to Winget and the Winget Trust's motion for summary judgment (Doc. 195), were signed as follows:

> By: /s/ Melville W. Washburn
> Melville W. Washburn
> Kevin C. Pecoraro
> John M. Skakun III
> SIDLEY AUSTIN LLP
> 1 South Dearborn Street
> Chicago, IL 60603
>
> Attorneys for Plaintiff
> JPMorgan Chase Bank, N.A.

Lastly, at the bench trial on reformation, Washburn was lead counsel for Chase. Burgess was a witness.[2]

B.

---

[2] Burgess has not argued that Washburn, not he, was in charge of Chase's case and its position regarding the liability of the Trust. However, the record strongly suggests that this was the case.

4

In addition to the present case, there were two prior cases between the parties in which Burgess was listed as an attorney of record. The first case was filed in 2005 by Chase against Winget and the Winget Trust seeking specific performance of certain audit and inspection rights under the Guaranty. Chase also sought declaratory relief. Chase v. Winget, 05-74141. Chase prevailed on its request for specific performance; the Court declined to award declaratory relief. See Doc. 50 in case no. 05-74141. Winget and the Trust appealed. The Sixth Circuit affirmed. Chase v. Winget, 510 F3d 577 (6th Cir. 2007). Notably, the docket of the Sixth Circuit shows that Chase's brief was filed by Washburn, and that he argued the cause. Also, it was in Chase's brief on appeal, filed on June 22, 2007, that its position as to the unlimited liability of the Trust was first articulated.

In a second case filed in 2006, Winget and Trust sued Chase in a declaratory judgment action. Winget v. Chase, 06-13490. The Court dismissed the complaint. See Doc. 28 in case no. 06-13490. Winget and the Trust appealed. The Sixth Circuit affirmed. Winget v. Chase, 537 F3d 565 (6th Cir. 2008). Again, the docket of the Sixth Circuit shows that Washburn filed Chase's brief and that he argued the cause for Chase.

### III. Legal Standard

28 U.S.C. §1927 reads:

> An attorney. . .who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses and attorneys' fees reasonably incurred because of such conduct.

The law on §1927 is well-known, and needs no extended discussion. The Court,

twice in recent months, has opined on the law.

In <u>Chrimar Systems, Inc. v. Foundry Networks, Inc</u>., ___ F. Supp. 2d ___, 2013 WL 5526332 (E.D. Mich.) *3, it said:

> An award is appropriate under §1927 when conduct by an attorney falls short of his or her obligations as an attorney, which results or causes additional expense to the opposite party. The claim is directed to an attorney's conduct and the claim must be made against a specific attorney. <u>BDT Products, Inc. v. Lexmark Intern., Inc.</u>, 602 F.3d 742, 751 (6th Cir. 2010).

In <u>Meathe, et al. v. Ret, et al.</u>, 2013 WL 6160034 *3 (E.D. Mich. Nov. 25, 2013), the Court said:

> The statute requires "a showing of something less than subjective bad faith, but something more than negligence or incompetence." <u>Hall v. Liberty Life Assurance Co. of Boston</u>, 595 F.3d 270, 274 (6th Cir. 2010). As the Sixth Circuit has explained, "[s]imple inadvertence or negligence that frustrates the trial judge will not support a sanction under §1927." <u>Riddle v. Egensperger</u>, 266 F.3d 542, 553 (6th Cir. 2001) (citation omitted). Indeed:
>
>> There must be some conduct on the part of the subject attorney that trial judges, applying the collective wisdom of their experience on the bench, could agree falls short of the obligations owed by a member of the bar to the court and which, as a result, causes additional expense to the opposing party.
>
> <u>Id.</u>. (internal citations omitted).

The Sixth Circuit has explained that "§1927 does not authorize the imposition of sanctions on a represented party, nor does it authorize the imposition of sanctions on a law firm." <u>BDT Prods., Inc. v. Lexmark Int'l, Inc</u>., 602 F.3d 742, 750 (6th Cir. 2010) (quoting <u>Rentz v. Dynasty Apparel Indus., Inc.</u>, 556 F.3d 389, 396 n. 6 (6th Cir. 2009) (internal quotation marks omitted)).

Finally, as the Federal Circuit has observed, there should be an effort to apportion the attorney fees and expenses it claims to the degree of the misconduct it asserts. See Special Devices, Inc. v. OEA, Inc., 269 F.3d 1340, 1343 (Fed. Cir.2001) (noting that the "fee award "must bear some relation to the extent of the misconduct," quoting Read Corp. v. Portec, Inc., 970 F.2d 816, 831 (Fed. Cir.1992)); Beckman Instruments, Inc. v. LKB Produkter, AB, 892 F.2d 1547, 1553 (Fed. Cir.1989) ("the penalty imposed must in some way be related to bad faith and misconduct" and compensate a party for the " extra legal effort to counteract the [ ] misconduct")[3]

IV. Discussion

A.

There is no good reason for a detailed discussion of the motion papers. Suffice it to say that as observed above, there is no support in the record for saying that Burgess was the controlling attorney regarding Chase's claim that the liability of the Winget Trust was unlimited. Indeed, as stated above, that position by Chase was first asserted in Chase's appellate brief in the Sixth Circuit in the inspection case in 2007. In that brief, Chase says:

> In other words, the Agent's recourse against Larry Winget for payment on the Winget Guaranty is limited to foreclosure on certain pledged stock -- including the stock of PIM and Venco. Any such foreclosure must occur pursuant to the terms of the Pledge Agreement.[6]

Footnote 6 reads:

---

[3] Winget and the Trust's request for over $4 Million Dollars in attorney fees and costs made no attempt to show a relationship between the amount of the award and the level of litigation misconduct.

7

> No such limitations apply to the agent's right to recover on
> the Guaranty from the Trust.

As noted above, the brief was signed and filed by Washburn, and he argued the case on behalf of Chase.

B.

As to the claim of misconduct on the part of Burgess, aside from the fact that he personally cannot be said to be the originator of Chase's claim of unlimited liability on the part of the Winget Trust, the assertion of the claim by an attorney nowhere comes close to sanctionable conduct. This is clear when the relevant event regarding the liability of the Trust are examined, as it done below.

Winget and the Trust began the case after service of the complaint, with a motion for judgment on the pleadings to limit the Trust's liability to that of Winget. (Docs. 11, 12). The Court denied the motion. (Doc. 18). Winget and the Trust moved to amend their answer and their affirmative defenses, as well as for permission to file a counterclaim (Docs. 20, 21). Chase in turn moved for summary judgment as to the liability of the Trust. (Doc. 23). The Court granted Winget and the Trust's motion and denied Chase's motion. (Doc. 40). After that, the parties spent over two years of contentious pretrial activity regarding discovery matters before filing motions for summary judgment on their positions as to the intent of the parties in establishing the liability of the Trust.

Chase's motion for summary judgment (Doc. 191) was denied (Doc. 214). Winget and the Trust's motion for summary judgment (Doc. 186) was withdrawn (Doc. 212). The trial on reformation extending over ten days followed. Winget and the Trust

prevailed, as noted above.

Winget and the Winget Trust's view that what it faced was a "perfidious claim" is belied by the record, which shows that the issue of the parties intent - necessary for reformation - required factual development through a bench trial.

## V. Winget's Precedents

At the Court's request for precedent, Winget submitted four cases. (Doc. 462). These cases are described below:

- Ridder v. City of Springfield, 109 F.3d 288 (6th Cir. 1997). This was a civil rights action. Sanctions under Rule 11 were denied for failure to follow the "safe harbor" procedure of the rule. Section 1927 sanctions were upheld against plaintiff's counsel for filing a third amended complaint after being cautioned that he had crossed the line into "unreasonable and vexatious multiplication of proceedings" with the filing of a second amended complaint.

- Moore v. Lafayette Life Insurance Co., 458 F.3d 416 (6th Cir. 2006). This was an ERISA case. The district court awarded sanctions under §1927 because it found that "plaintiff's course of litigation tactics, mischaracterizations and meritless pursuit of untenable claims and positions satisfies §1927." The Court of Appeals, on review of the record, "was not left with a definite and firm conviction that the district court made a clear error of judgment" (citations omitted).

- Finance Inv. Co. (Bermuda) v. Geberit AG, 165 F.3d 526 (7th Cir. 1998). This was a trademark infringement case. Plaintiff filed a substantially

9

    identical complaint against a defendant in the Northern District of Indiana to a complaint against the same defendant which had been dismissed on summary judgment in the Southern District of Florida. The Seventh Circuit made clear that it was deferring in substantial part to the discretionary decision of the district court.

- <u>Chambers v. NASCO, Inc.</u>, 501 U.S. 32 (1991). This was a business case. The Supreme Court, in a split decision, upheld the decision of the district court imposing sanctions "for the manner in which the proceedings were conducted" under its inherent power. The district court found that plaintiff devised a scheme "first to deprive [the court] of jurisdiction, and second [devising] a plan of obstruction, delay, harassment and expense sufficient to reduce [defendant] to a condition of exhausted compliance."

None of these cases come close to supporting sanctions under §1927 in this case. Winget and the Trust have failed to establish any misconduct on the part of Burgess. Rather, Winget seeks sanctions against Burgess for a litigation position, which was not frivolous, taken by Chase where Burgess's role in asserting that position is minor at best. Section 1927 simply does not allow for sanctions under these circumstances.

### VI. Conclusion

Under the American Rule, each party ordinarily must bear its own attorney fees, <u>BDT Prods.</u>, 602 F.3d at 752. Section 1927 is an exception to the rule. "An attorney who so multiplies the proceedings in any case unreasonably and vexatiously" may be called to account personally. That did not happen here. The lawyers for Chase,

individually or collectively, in asserting the unlimited liability claim of the Trust and in vigorously defending against reformation, were neither unreasonable or vexatious. Thus, there is no basis for awarding sanctions under § 1927.

    SO ORDERED.

                                           s/Avern Cohn  
                                           UNITED STATES DISTRICT JUDGE

Dated: January 9, 2014

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, January 9, 2014, by electronic and/or ordinary mail.

                                           s/Carol Bethel for Sakne Chami  
                                           Case Manager, (313) 234-5160