UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JP MORGAN CHASE BANK, NA.,

      Plaintiff/Counter-Defendant,

                                  Case No. 08-13845
-vs-                               HON. AVERN COHN

LARRY J. WINGET and the
LARRY J. WINGET LIVING TRUST,

      Defendants/Counter-Plaintiffs.

_____/

## MEMORANDUM REGARDING FINAL JUDGMENT

### I.  Introduction

This is a commercial finance dispute.  Plaintiff/Counter-Defendant JPMorgan Chase Bank, N.A. (Chase) is the Administrative Agent for a group of lenders that extended credit to Venture Holdings Company, LLC (Venture) under a Credit Agreement.  Chase sued defendants/counter-plaintiffs Larry Winget and the Larry Winget Living Trust (collectively, Winget) to enforce a guaranty and two pledge agreements entered into by Winget and the Winget Trust in 2002 in which they guaranteed the obligations of Venture, a company owned and controlled by Winget and/or the Winget Trust. Chase made three claims, as follows:

    Count I - Enforcement of Guaranty Against the Winget Trust

    Count II - Enforcement of Guaranty Against Winget

    Count III - Enforcement of Pledge Agreements Against Winget and the Winget Trust

On October 2012, the Court entered a decision on reformation as to Count I (Doc. 365).

Count I (as reformed) and Count II are effectively the same.  The parties engaged in extended and contentious discovery and disagree over the issues for trial on Chase's complaint.  All of this culminated in Chase filing a motion for summary judgment on Winget's enforceability and delay defenses.  (Doc. 391).  The Court granted the motion. (Doc. 450).  Chase contended that the decision on reformation and the elimination of Winget's defenses resolved all outstanding issues of fact and law and therefore filed a motion for entry of judgment.  (Doc. 454).  The Court agreed and granted Chase's motion.  (Doc. 470).  That left open the matter as to the form of judgment.  The Court gave Winget an opportunity to propose changes to the text but not the substance of Chase's proposed judgment. Winget filed objections and proposed "corrections" to the proposed judgment.  (Doc. 474).  Chase responded.  (Doc. 480).  Winget replied. (Doc. 484).  For the reasons that follow, the Court has entered a judgment in the form attached as Exhibit 1 to Chase's response (the "Final Judgment").  See Doc. 480-2. This memorandum explains the text of the Final Judgment and disposes of Winget's objections.

## II.  Winget's Objections

Winget raises three objections to te Chase's proposed form of judgment: (1) a failure to reflect a distinction between liability and recourse; (2) a failure "to reflect this Court's findings that the parties agreed the Defendants' liability under the guaranty for the Venture debt was limited to $50 million"; and (3) a failure "to incorporate the Guaranty and Pledge Agreements into the Judgment."

Chase says that Winget's first and third criticisms are not substantive and are addressed in the Final Judgment.  Winget does not contest this in its reply brief.  As

such, the Court need not discuss these objections further other than to say that they have been addressed and resolved in the text of the Final Judgment.

Winget's second criticism, however, bears discussion. Winget asks the Court to include in the Final Judgment the statement that "the liability of Winget and the Trust for the Obligations, as awarded herein, shall be deemed fully satisfied and discharged . . . as of the time of payment of $50 million to Chase."[1] Winget says that this language is consistent with the Court's rulings which he says make clear that upon payment of $50 million dollars to Chase, Winget's obligations under the Guaranty and Pledge Agreements are extinguished. Chase says that Winget's suggested change is not supported by the texts of the relevant Guaranty and Pledges. Chase says:

> On the contrary, it would undermine sections of the Guaranty that were in no way affected by this Court's decision on reformation. It is in direct conflict with Winget's insistence in the same memorandum that the final order distinguish "between the Defendants' 'liability' for amounts owed under the Guaranty and the limited 'recourse' available." (Dkt. 474 at 1.) The proposed change seeks to convert a termination provision in the Pledges (Chase's recourse under the reformed Guaranty) into a limitation on the Guarantors' liability. In short, the suggested change is an undisguised attempt to subvert the Court's prior rulings and to lead the Court into reversible error.

Chase is correct. Termination of the Pledges only affects the scope of Chase's recourse, not the extent of Winget's liability. Winget is liable to Chase under the Guaranty in the amount of $425,113,115.59. That liability will not be discharged by the termination of the Pledges. Winget's proposed language as to "satisfaction" and "discharge" of his liabilities is not reflected in any of this Court's holdings and runs contrary to the language of the Guaranty, which states: "Each of the Guarantor's

---

[1]Following the Court's decision granting Chase's motion for entry of a final judgment, Winget wired a $50 million payment to Chase.

obligations hereunder shall remain in full force and effect until all Guaranteed

Obligations shall have been indefeasibly paid in full."

Winget, however, contends that the Court found, in granting reformation of the

Guaranty, that "Chase's recourse under the Guaranty was limited to $50 million." (Doc.

474 at 4.)  This characterization of the decision on reformation distorts the Court's

actual finding.  The paragraph on which Winget relies reads as follows:

> From the onset of the negotiations for the Eighth Amendment, Winget insisted
> that any additional support by him would be limited to the pledge of certain
> identified assets, and among those assets was his ownership of certain assets
> he owned in South Africa and Australia, PIM Management Company (PIM), a
> Michigan corporation and Venco #1, LLC (Venco), a Michigan limited liability
> company. As to these assets, Winget's liability was limited to a cap of $50 million
> Dollars.

(Doc. 365 at p. 12).  Although the Court used the word "liability," it speaks of liability "as

to" the pledged stock, not as to the amount of the debt.  The "as to" language, as well as

the entire thrust of Winget's counterclaim, makes clear that this finding speaks of

Chase's recourse, not Winget's overall liability.  Further, this particular discussion by the

Court concerns the negotiation of the Eighth Amendment, not the legal interplay

between the Guaranty and the Pledges.  In other words, Winget's reliance on the

Court's statement is misplaced.

Moreover, Winget's proposed change is contrary to the terms of the Guaranty

and the Pledge Agreements.  Winget says that if Chase's recourse is limited to $50

million, Winget's liability is "fully satisfied and discharged" upon payment of $50 million.

Winget argues that if the Pledges are terminated, his liabilities are terminated.  Not so.

Winget misses the distinction between liability and recourse.

The Court's decision on reformation resulted in the addition of text to Section 3 of

the Guaranty such that the limitations on recourse against Larry Winget were made applicable to the Winget Trust.  However, Section 3 of the Guaranty does not limit Winget's liability to $50 million dollars; rather, it ties Chase's recourse to the Pledges. The $50 million figure exists only in the Pledges.  The rights of Chase and the Pledgors under those Pledges were not a subject of, and were not affected by, the reformation decision.  The Pledges grant the Pledgors an optional right of terminating the Pledges. That termination right concerns only the obligations of the Pledgors under the Pledges. It says nothing about Winget's liability under the Guaranty.

Winget also points to the Court's statement in its decision granting summary judgment to Chase, which the Court said that "the Winget-PIM Pledge is effective and enforceable unless Winget pays Chase $50 million."  (Doc. 450 at p. 11).  Winget argues that because the Pledge is not enforceable upon payment of $50 million, and Winget's liability is, he says, limited to the Pledge, then paying $50 million must eliminate his liability.  This backward reasoning is not supported by the Guaranty or Pledge Agreements.  To the contrary, accepting Winget's position could undermine other provisions of the Guaranty that have never been in dispute.  For example, Section 3's limitation on recourse is qualified with the statement that "the Guarantor shall be fully and personally liable for any damages arising from any violations of any of the agreements of the Guarantor herein in favor of the Lenders."  That is, the recourse limitation Chase granted to Winget (and, through reformation, to the Winget Trust) is contingent on Winget's complying with all the agreements he made in negotiating the Eighth Amendment.  If is were adjudged that Winget's liabilities would be "fully satisfied" upon payment of $50 million, Chase arguably would lose the protections inherent in this

contingency.

In addition, Winget's suggested language directly contradicts the holding, elsewhere in his proposed final judgment, that Chase's recourse under Section 17 for costs of collection "is not limited by Section 3 of the Guaranty." Winget's liability under this section of the Guaranty cannot be discharged when the Pledges are cancelled, since Chase still has full recourse to the Guarantors' other assets for recovering these costs.

In short, Winget's attempt to insert a provision in the judgment which says that his liabilities are "fully satisfied" by payment of $50 million termination is not sustainable or supportable. As the Court stated in granting Chase's Motion for Entry of Final Judgment, "Winget is liable for the Venture debt under Section 3 of the Guaranty. Liability for a debt must be reflected in a money judgment for the amount of the debt." (Doc. 470 at p. 6-7). The judgment simply cannot provide that a payment of $50 million satisfies a liability for a debt of over $450 million. Rather, the Final Judgment accurately reflects Winget's liability for the debt.

　s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: January 29, 2014

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, January 29, 2014, by electronic and/or ordinary mail.

　s/Carol Bethel for Sakne Chami
Case Manager, (313) 234-5160