UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JP MORGAN CHASE BANK, N.A.,

    Plaintiff/Counter-Defendant,

v.                                                   Case No. 08-13845
                                                    HON. AVERN COHN

LARRY WINGET and the LARRY WINGET
LIVING TRUST,

    Defendants/Counter-Plaintiffs.
_____/

## MEMORANDUM AND ORDER DENYING DEFENDANTS' MOTION TO JUDICIALLY ESTOP CHASE FROM SEEKING DAMAGES UNDER COUNT I THAT EXCEED $50 MILLION (Doc. 556)[1]

### I. Introduction

This is a commercial finance dispute which has been litigated for many years. Most recently, following a decision in favor of plaintiff, the case was remanded from the Court of Appeals for the Sixth Circuit for winding up. Three motions are now before the Court:

    Defendants' Motion to Judicially Estop Chase from Seeking Damages under Count I That Exceed $50 Million (Doc. 556)

    Plaintiff's Motion for Entry of Amended Final Judgment (Doc. 557)
    and

    Plaintiff's Motion for Costs and Expenses of Collection (Doc. 563)

    The first two motions are fully briefed. This memorandum addresses only Defendants' motion regarding judicial estoppel. Plaintiff's motion for entry of an

---

[1]Upon review of the parties' papers, the Court deems this matter appropriate for decision without argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

amended judgment is related, and will be disposed of by separate order entered this date.

As will be explained, defendants are attempting to seek relief that is contrary to the Sixth Circuit's decision. The Court at this stage in the case is limited to entering a judgment in plaintiff's favor on Count I. An amended judgment shall enter.

Thus, defendants' motion is DENIED. The reasons follow.

## II.  Background

Plaintiff/Counter-Defendant JPMorgan Chase Bank, N.A. (Chase) was the Administrative Agent for a group of lenders that extended credit to Venture Holdings Company, LLC (Venture) under a Credit Agreement. In 2008, Chase sued defendants/counter-plaintiffs Larry Winget (Winget) and the Larry Winget Living Trust (Winget Trust) to enforce the Guaranty and two Pledge Agreements entered into by Winget and the Winget Trust in 2002 in which they guaranteed the obligations of Venture, a company owned and controlled by Winget and/or the Winget Trust and Winget and the Winget Trust pledged shares of stock in other companies as collateral for the Guaranty.. Chase made three claims, as follows:

> Count I - Enforcement of Guaranty Against the Winget Trust
>
> Count II - Enforcement of Guaranty Against Winget
>
> Count III - Enforcement of Pledge Agreements Against Winget and the Winget Trust

In prior decisions in this case, the parties disputed the amount of liability of the Winget Trust under the Guaranty. The parties have always agreed that Winget's liability under Section 3 of the Guaranty was limited to $50 million. However, Chase maintained

that because Section 3 of the Guaranty only names Winget, and not the Winget Trust, only Winget's liability was so limited, not the Winget Trust's liability. Winget and the Winget Trust maintained that the $50 million limitation applied to both of them and to the extent the language of the Guaranty said otherwise, it was incorrect. The Court ruled that the plain language of the $50 million limitation in Section 3 of the Guaranty applied only to Winget. (Doc. 18).

Winget and the Winget Trust sued for reformation of the Guaranty. The Court, after a bench trial on reformation, found that the Winget Trust's liability under the Guaranty was also capped at $50 million. On October 2012, the Court entered a decision on reformation as to Count I (Doc. 365). Count I (as reformed) and Count II were effectively the same, i.e. with the $50 million limitation for both Winget and the Winget Trust. The Court later entered a final judgment in favor of Chase. (Doc. 487).

Chase appealed the reformation decision. Winget and the Winget Trust cross appealed various rulings of the Court, including rejecting their "enforceability" and "delay" defenses, denying their motions for sanctions, and rejecting their challenges to entry of a final judgment. On February 20, 2015, the Sixth Circuit issued an opinion on the parties' cross appeals, affirming the rulings Winget and the Winget Trust challenged and reversing the Court's reformation decision. The Sixth Circuit remanded the case to this Court "with instructions to enter judgment in favor of Chase on Count I of Chase's complaint." JPMorgan Chase Bank, N.A. v. Winget, 602 F. App'x 246, 266 (6th Cir. 2015). After a series of unsuccessful motions and petitions by Winget and the Winget Trust in the Sixth Circuit, the mandate issued on June 18, 2015. Hours later, Winget and the Winget Trust filed the instant motion seeking to judicially estop Chase from

seeking damages under Count I that exceed $50 million. (Doc. 556.)

### III. Discussion

It is well established that "on a mandate from an appellate court containing a directive to the lower court to enter a specific judgment, the latter court has no authority to do anything but execute the mandate." Blair v. Durham, 139 F.2d 260, 261 (6th Cir. 1943); see also Taylor v. U.S. Patent & Trademark Office, 385 F. App'x 980, 983 (Fed. Cir. 2010) (affirming district court's refusal to analyze merits of plaintiff's claims on remand, where remand was "for the purpose of entering judgment, not for reconsideration of the complaint or for additional proceedings on [the plaintiff's] claims"). Here, the Sixth Circuit's mandate is limited to an instruction that judgment be entered "in favor of Chase on Count I of Chase's complaint." 602 F. App'x at 266. It does not provide for further proceedings or for consideration of additional issues on remand.

Count I of Chase's complaint sought to enforce the Guaranty against the Trust "in the *full amount* of the Guaranteed Obligations that remain unpaid as of the date of judgment," with no limitation as to enforcement. (Doc. 1 at 12 (emphasis added); *contrast with* Doc. 1 at 13 (Count II of Chase's complaint, seeking judgment against Mr. Winget to be enforced only with respect to the stock pledged in accordance with the pledge agreements.) Chase's complaint also stated that the Guaranteed Obligations that remained due and owing at the time of filing were substantially in excess of $50 million. (Doc. 1 ¶¶ 30-31.) Under Count I, therefore, Chase sought damages in excess of $50 million from the Winget Trust. Thus, the mandate's instruction that the Court enter judgment for Chase on Count I allows Chase to seek its full damages. Chase has done so in its motion for entry of an amended judgment. (Doc. 557). Chase has also

moved for costs and expenses of collection as provided for the Guaranty. (Doc. 563).

Winget and the Winget Trust, however, request that the Court enter "a final judgment in Chase's favor as to Count I in an amount no greater than $50 million" or for "a trial on the defense of judicial estoppel" (Doc. 556 at 16-17). Winget and the Winget Trust contend that a judgment limited to $50 million "is consistent with the Sixth Circuit's mandate" because "the Sixth Circuit gave no instruction regarding the amount of the judgment to be entered." (Doc 556 at 1, 4.) Although the Sixth Circuit's instruction did not specify an amount, it was not necessary to do so in order to resolve the issue of reformation. The Sixth Circuit recognized that its decision allowed for recovery to the full extent of the Guaranteed Obligations—*i.e.*, more than $50 million—against the Winget Trust. 602 F. App'x at 259 (explaining "the plain text of Section 3 names Winget, and only Winget, as having limited exposure").

Had the Sixth Circuit intended the result that Winget and the Winget Trust seek–consideration of its judicial estoppel defense–it could have included it in its decision. See, e.g., RL BB Acquisition, LLC v. Bridgemill Commons Dev. Grp., LLC, 754 F.3d 380, 388 (6th Cir. 2014) (remanding "for further proceedings consistent with this opinion," and explaining that remand was "to allow that court to consider the merits of Starr's affirmative defense."); Employers' Fire Ins. Co. v. ProMedica Health Sys., Inc., 524 F. App'x 241, 254 (6th Cir. 2013) ("We remand this case to the district court for further proceedings, including consideration of OneBeacon's known loss and equitable estoppel coverage defenses."). The Sixth Circuit's order is clear. The Court is obligated to follow it.

Moreover, following oral argument on the cross appeals, Winget sought leave to

5

file a supplemental brief on the issue of judicial estoppel. (Court of Appeals Doc. 46-1 at 2 n.2) The panel granted the motion on December 19, 2014. (Court of Appeals App. Doc. 48-2.) Two months later, the panel issued its opinion. Although the Sixth Circuit did not mention judicial estoppel in its opinion, the issue of judicial estoppel had been raised in a supplemental brief and, by implication, rejected. Indeed, in Winget and the Winget Trust's subsequent petition for en banc rehearing, they asked the Sixth Circuit to rehear the case on the grounds that the panel's remand instruction had "effectively resolved the Trust's judicial estoppel defense." (Court of Appeals Doc. 56-1 at 13.). The Sixth Circuit denied rehearing.

Given the above, it is not tenable to say that the Court can now consider the defense of judicial estoppel where the defense was raised and rejected in the Sixth Circuit. Nothing in the Sixth Circuit's opinion can be read to permit the Court to consider a judicial estoppel defense or any other issues.

Winget and the Winget Trust cite Exxon Chemical Patents v. Lubrizol Corp., 137 F.3d 1475 (Fed. Cir. 1998). This case is distinguishable. Exxon involved a patent dispute in which the district court made a claim construction. Prior to the claim construction ruling, Exxon had two theories of patent infringement, one for "literal infringement," and one under the "doctrine of equivalents." Id. Upon adopting Exxon's proposed claim construction, the doctrine of equivalents theory was no longer relevant because Exxon's construction was consistent with a literal infringement claim. The case then proceeded to a jury trial at which Exxon prevailed. Lubrizol appealed. The Federal Circuit concluded that the district court's claim construction was erroneous and that literal infringement was not possible under the proper construction. In ordering remand,

the Court of Appeals for the Federal Circuit explicitly stated that "the judgment under review was 'limited to literal infringement,'" and further stated that the court "express[ed] no view" on the question of the doctrine of equivalents. Id. at 1478. After another round of appeal, the Federal Circuit ruled that Exxon could pursue its doctrine of equivalents claim before the district court, citing the specific language regarding the limited scope of its opinion as pertaining only to literal infringement. Id. at 1484.

This case is not like Exxon. Exxon pursued both its literal infringement and doctrine of equivalents theories until the district court made a ruling on Exxon's proposed claim construction which rendered its doctrine of equivalents theory irrelevant. In contrast, Winget and the Winget Trust never pursued a judicial estoppel defense before the Court. Although Winget and the Winget Trust listed judicial estoppel as a defense in their answer, Doc. 41 at ¶ 6, they did not litigate the defense before the Court. While Winget and the Winget Trust say it was not necessary to raise the defense of judicial estoppel because they were litigating reformation, nothing prevented them from raising the defense.

Winget and the Winget Trust also reply on DeMarco v. Ohio Decorative Prods. Inc., 1994 WL 59009, at *8 n.5 (6th Cir. 1994) to argue that judicial estoppel "may be invoked … sua sponte by the Court, at any time." (Doc. 556 at 2.) DeMarco does not support Winget or the Winget Trust's request that the Court can avoid the Sixth Circuit's decision and take up a judicial estoppel defense. In DeMarco, the Sixth Circuit observed that it could consider judicial estoppel sua sponte on appeal if it so chose. That is precisely what Winget and the Winget Trust sought to do here, as explained above. The Sixth Circuit declined to consider the defense. That ended the matter.

In the end, the Court is obligated to enter a judgment in Chase's favor on Count I. Such a judgment will enter.

SO ORDERED.

s/Avern Cohn<br>
AVERN COHN<br>
UNITED STATES DISTRICT JUDGE

Dated: July 28, 2015
      Detroit, Michigan