UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JPMORGAN CHASE BANK, N.A.,

      Plaintiff/                                                Case No. 08-13845
      Counter-Defendant,
v.                                                        HON. AVERN COHN

LARRY J. WINGET and the
LARRY J. WINGET LIVING TRUST,

      Defendants/
      Counter-Plaintiffs.

_____/

## MEMORANDUM AND ORDER
## GRANTING IN PART CHASE'S MOTION FOR COSTS AND EXPENSES OF
## COLLECTION PURSUANT TO ORDER OF FINAL JUDGMENT (Doc. 563)[1]

---

[1]Although titled as a motion for "costs and expenses," the Court prefers to use the term expenses, which represents attorney and legal professional fees and out of pocket expenses.

**<u>TABLE OF CONTENTS</u>**

| | | |
|---|---|---|
| I. | Introduction | 1 |
| II. | Background | 2 |
| | A. Prejudgment Proceedings | 2 |
| | B. The Amended Final Judgment | 4 |
| | C. Section 17 | 6 |
| III. | Reasonableness | 7 |
| IV. | The 2005 and 2006 Actions | 8 |
| V. | This Action | 12 |
| | A. Apportionment | 12 |
| | B. Specific Objections | 13 |
| | 1. Overstaffing and Ministerial Tasks | 14 |
| | 2. Attorney Time Spent Preparing as a Witness | 17 |
| | 3. Rule 11 Costs as Duplicative | 17 |
| | 4. Data Storage | 18 |
| VI. | Conclusion | 19 |

I.  Introduction

This case involves a commercial dispute.  J. P. Morgan Chase (Chase) is the administrative agent for a group of lenders that extended credit to Venture Holdings Company, LLC (Venture) under a credit agreement.  In the complaint (Doc. 1), Chase sued Larry J. Winget (Winget) and the Larry J. Winget Living Trust (Trust)[2] to enforce a Guaranty and two (2) Pledge Agreements entered into by Winget and signed by Winget and the Winget Trust in 2002, guaranteeing the obligations of Venture.  As will be explained, the Court entered a judgment in favor of Chase that enforced the Guaranty and Pledge Agreements against Winget and the Trust as co-extensive.

Now before the Court is Chase's Motion for Expenses of Collection Pursuant to Order of Final Judgment.  (Doc. 563).  Chase seeks total expenses in the amount of **$12,688,967.67**[3] which Chase says is the amount of expenses outstanding as of May 31, 2015[4] for which Winget is liable under Section 17 of the Guaranty.

---

[2]The Court will refer to Winget and the Trust collectively as "Winget" where appropriate.

[3]The motion requests $12,693,867.67.  However, upon Winget's initial response, Chase conceded that an entry for attorney Washburn's travel was mistakenly included in Chase's motion.  In Chase's reply brief, it withdrew this request.  With the removal of this cost for $4900.00, Chase seeks $12,688,967.67.

[4]While the case was on appeal, Chase previously submitted a motion for attorney's fees from January 1, 2005 through February 28, 2014, and expenses from January 1, 2005 through January 31, 2014. (Doc. 543.).  The Court deferred consideration of the motion pending the outcome of the appeal.  The Court also directed Chase to resubmit the documentation supporting its request for expenses, which it did. See Doc. 543.  Chase separated its documentation as follows:  (1) expenses incurred in JPMorgan Chase v. Winget, No. 05-74141 (E.D. Mich.) (the "2005 Action") (Exhibit C); (2) expenses incurred in Winget v. JPMorgan Chase, 06-13490 (E.D. Mich.) (the "2006 Action") (Exhibit D); and (3) expenses incurred in this case, JPMorgan Chase v. Winget, 08-cv-13845 (E.D. Mich.) (attached as Exhibit E).  Chase's current motion also removed some prior expense requests.

The motion papers are complete and voluminous.  They comprise the following:

Chase's motion, brief, and exhibits.  Doc. 563.

Winget's response, brief, and exhibits.  Doc. 569.

Chase's reply and exhibits.  Doc. 573.

Winget's surreply.  Doc. 603.

Winget's supplemental response following hearing.  Doc. 665.

Chase's supplemental brief following hearing.  Doc. 669.

The matter is now ready for decision.  For the reasons that follow, the motion is GRANTED IN PART.  The Court, in its discretion, will award Chase **$11,154,874.65**. This amount represents (1) a reduction of $64,807.00 for attorney time in preparing to be witnesses at trial, (2) a reduction of $229,855.50 for data storage and, (3) an across the board overall reduction of ten (10) percent to account for excessiveness in the manner in which the litigation has been prosecuted.[5]

## II.  Background

### A.  Prejudgment Proceedings

The Guaranty and Pledge Agreements were part of the Eighth Amendment To Credit Agreement and form the basis for liability.  Chase made three (3) claims:

Count I          Enforcement of Guaranty Against the Trust

Count II         Enforcement of Guaranty Against Winget

---

[5]In addition to the multitude of decisions the Court has issued in this action and in the prior actions between the parties, it is the subject of the following decisions by the Court of Appeals for the Sixth Circuit:  JP Morgan Chase v. Winget, 602 F. App'x 246 (6th Cir. 2015); Winget v. JP Morgan Chase, 537 F.3d 565 (6th Cir. 2008); JP Morgan Chase v. Winget, 510 F.3d 577 (6th Cir. 2007).

Count III          Enforcement of Pledge Agreements Against Winget and
the Winget Trust

The parties disputed the amount of liability of the Trust under the Guaranty. The parties

have always agreed that Chase's recourse against Winget was limited to $50 million.

However, Chase maintained that because Section 3 of the Guaranty only named

Winget, and not the Trust, only Winget's liability was so limited, not the Winget Trust's

liability. Winget and the Trust maintained that the $50 million limitation applied to both

of them and to the extent the language of the Guaranty said otherwise, it was a mistake.

The Court ruled that the plain language of the $50 million limitation in Section 3 of the

Guaranty applied only to Winget. (Doc. 18). Winget and the Trust sued for reformation

of the Guaranty. The Court, after a bench trial on reformation, found that the Trust's

liability, i.e. Chase's recourse, under the Guaranty was also capped at $50 million.

On October 2012, the Court entered a decision on reformation as to Count I

(Doc. 365). Count I (as reformed) and Count II were effectively the same, i.e. with the

$50 million limitation for both Winget and the Trust.

The parties then moved toward entry of a final judgment. They engaged in

extended and contentious discovery and disagreed over the issues for trial on Chase's

complaint. This culminated in Chase filing a motion for summary judgment on Winget's

enforceability and delay defenses. (Doc. 391). The Court granted the motion. (Doc.

450). Chase contended that the decision on reformation and the elimination of Winget's

defenses resolved all outstanding issues of fact and law and therefore filed a motion for

entry of judgment. (Doc. 454). The Court agreed and granted Chase's motion. (Doc.

470). This left open the matter as to the form of judgment. The Court gave Winget an

opportunity to propose changes to the text but not the substance of Chase's proposed

3

judgment.  Winget filed objections and proposed "corrections" to the proposed

judgment. (Doc. 474).  Chase responded. (Doc. 480).  Winget replied.  (Doc. 484).  The

Court eventually entered a Final Judgment in the form requested by Chase.  (Doc. 487)

and a Memorandum stating the reasons for entry of the judgment.  (Doc. 488).

Chase appealed the reformation decision.  (Doc. 489).  Winget cross appealed

the Final Judgment as well as several orders, including the orders denying Rule 11 and

§ 1927 sanctions and the rejection of their "enforceability" and "delay" defenses,

denying their motions for sanctions, and rejecting their challenges to entry of a final

judgment.

On February 20, 2015, the Sixth Circuit issued an opinion on the parties' cross

appeals, affirming the rulings Winget and the Trust challenged and reversing the Court's

reformation decision.  The Sixth Circuit remanded the case to

this Court "with instructions to enter judgment in favor of Chase on Count I of Chase's

complaint."  JPMorgan Chase v. Winget, 602 F. App'x 246, 266 (6th Cir. 2015).  Simply

put, the Sixth Circuit took a divergent view of Michigan's jurisprudence on reformation.

After a series of unsuccessful motions and petitions for rehearing by Winget and the

Trust in the Sixth Circuit, the mandate issued on June 18, 2015.

### B.  The Amended Final Judgment

Thereafter, following motion practice, the Court entered an Amended Final

Judgment which provides in pertinent part:

> IT IS HEREBY ORDERED AND ADJUDGED that, for the reasons stated in the
> Memorandum and Order Denying Defendants' Motion to Judicially Estop Chase
> from Seeking Damages under Count I that Exceed $50 Million (Doc. 566)
> (Estoppel Order) and the Court's Memorandum and Order Granting Chase's
> Motion for Entry of Amended Final Judgment (Doc. 567) (Final Judgment Order),
> judgment is entered in favor of Chase and against the Larry J. Winget Living

4

Trust (the "Winget Trust") on Count I of Chase's Complaint. The Winget Trust is liable to Chase in the amount of $425,113,115.59, which is the unpaid principal amount owed by Venture Holdings Company LLC under the Credit Agreement dated May 27, 1999, as amended (the "Credit Agreement"), plus all interest, fees, and costs that are due under the Credit Agreement and the Guaranty, dated October 21, 2002, executed by Winget and the Winget Trust in favor of Bank One, N.A., for the benefit of itself and the Lenders under the Credit Agreement (the "Guaranty") in amounts to be determined at a later date.
Chase's recourse for collection and payment of these amounts against the Winget Trust is not limited by Section 3 of the Guaranty.

IT IS FURTHER ORDERED AND ADJUDGED that, for the reasons stated in the Estoppel Order and the Final Judgment Order, judgment is entered in favor of Chase and against Larry J. Winget ("Winget") on Count II of Chase's Complaint. Winget is liable to Chase in the amount of $425,113,115.59, which is the unpaid principal amount owed by Venture Holdings Company LLC under the Credit Agreement, plus all interest, fees, and costs that are due under the Credit Agreement and the Guaranty in amounts to be determined at a later date. Chase's recourse for collection and payment of these amounts against Winget is subject to the terms of Section 3 of the Guaranty.

IT IS FURTHER ORDERED AND ADJUDGED that, for the reasons stated in the Final Judgment Order, judgment is entered in favor of Chase and against Winget and the Winget Trust on Count III of Chase's Complaint. Chase has satisfied its obligations under Section 5.2 of those certain pledges of interests in P.I.M. Management Co. and in Venco #1, L.L.C. dated as of October 21, 2002 and executed by Winget and the Winget Trust ("the Pledges"). Chase is entitled to enforce all rights granted to it in the Pledges, subject to the Pledgors' right under Section 10 of the Pledges to terminate the Pledges.

**IT IS FURTHER ORDERED AND ADJUDGED that, pursuant to Section 17 of the Guaranty, Winget and the Winget Trust are liable to Chase for all costs and expenses including, without limitation, all court costs and attorneys' fees and expenses paid or incurred by Chase in endeavoring to collect the Guaranteed Obligations from, or in prosecuting this and any related or future actions against, Winget and the Winget Trust with respect to their obligations under the Guaranty, such costs and expenses to be proven at a later date. Notwithstanding anything elsewhere in this Order, Chase's recourse against Winget and the Winget Trust for collection and payment of such costs and expenses is not limited by Section 3 of the Guaranty.**

IT IS FURTHER ORDERED AND ADJUDGED that the Court will retain jurisdiction for the purposes of supervising enforcement of this Judgment pursuant to the terms of the Guaranty and Pledges, which are incorporated herein and attached as Exhibit A, including without limitation any disposition of

the stock of P.I.M. Management Company and membership certificates of Venco #1, L.L.C., and including the proof at a later date of certain above-referenced amounts.

(Doc. 568) (emphasis added).

## C.  Section 17

Chase's request for expenses is found in the language of the Amended Final Judgment and Section 17 of the Guaranty.  As noted above, the Amended Final Judgment provides that **Winget and the Winget Trust are liable to Chase for "all costs and expenses including, without limitation, all court costs and attorneys' fees and expenses paid or incurred by Chase in endeavoring to collect the Guaranteed Obligations from, or in prosecuting this and any related or future actions against, Winget and the Winget Trust with respect to their obligations under the Guaranty. . . . Notwithstanding anything elsewhere in this Order, Chase's recourse against Winget and the Winget Trust for collection and payment of such costs and expenses is not limited by Section 3 of the Guaranty."**

Section 17 of the Guaranty provides:

SECTION 17. Costs of Enforcement. The Guarantor agrees to pay all costs and expenses including, without limitation, **all court costs and attorneys' fees and expenses paid or incurred** by the Administrative Agent or any Lender or any Affiliate of any Lender **in endeavoring to collect all or any part of the Guaranteed Obligations from, or in prosecuting any action against, the Guarantor with respect to his obligations hereunder**.

(Guaranty, Doc. 487-1, at 8-9.) (emphasis added).

## III.  Reasonableness

Winget raises an overall objection to Chase's motion, contending that Chase has

not met its burden of proving the reasonableness of its expenses. (See Doc. 569 at 5-7.) The Sixth Circuit has explained, in diversity cases, "the type and amount of documentation needed to support a request for attorney's fees" pursuant to a contract is "procedural . . . and should be analyzed using Sixth Circuit law." Gen. Elec. Co. v. Latin Am. Import, 127 F. App'x 157, 159 (6th Cir. 2005) (provision for fees and costs in a guaranty governed by federal law notwithstanding contractual choice-of-law clause.) Thus, the Michigan cases cited discussing what evidence is required to support a fees petition are inapposite. (See Doc. 569 at 6.)

Chase's motion and supplemental filings satisfies the Sixth Circuit's requirements: it is supported by affidavits of litigation counsel from the two firms that represented Chase. (See Doc. 563-2, 563-3.) These attorneys state that they reviewed invoices sent to Chase containing itemized accounts of hours and expenses billed. The documents attached to these affidavits comply with the Sixth Circuit's requirements by providing specific detail as to the date, the timekeeper, the hours billed, the hourly rate, and the description of the task completed. See Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 553-54 (6th Cir. 2008) (finding counsel had satisfied its burden by providing billing records showing "the date that the time was billed, the individual who billed the time, the fractional hours billed . . ., and the specific task completed"); Siddle v. Crants, Nos. 3:09–cv–00175, 3:09–cv– 01137, 2013 WL 1245678, at *13 (M.D. Tenn. Mar. 26, 2013) (collecting cases).

That said, it does not necessarily follow that Chase is entitled to all of the expenses it seeks. Although the Court will not nit pick the literally thousands of billable

7

entries and documented expenses, it is possible to identify some categories of expenses that requires further analysis to determine whether the amount requested is reasonable.  These categories will be discussed below.

## IV.  The 2005 and 2006 Actions

As noted above, see n. 4, supra, Chase seeks expenses incurred in this case but also expenses incurred in two prior actions between the parties: (1) JP Morgan Chase v. Winget, case no. 05-74141 (the 2005 action) and (2) Winget v. JP Morgan Chase, 06-13490 (the 2006 action).  Chase contends that the language of the Final Judgment and Section 17 is broad enough to permit them to recover these monies because the language plainly extends to all Guaranty-related litigation which includes the 2005 and 2006 action.  Winget says Chase cannot recover expenses related to the 2005 and 2006 actions because judgments in these cases were entered long ago and res judicata bars Chase from seeking monies at this time.

Chase has the better view.  Chase's Complaint and proposed form of final judgment in this case made explicit that Chase intended to collect on all litigation expenses related to enforcing Winget's obligations under the Guaranty.

First, Winget contractually waived res judicata objection to Chase's current motion in the Guaranty and the Credit Agreement.  In particular, Section 13 of the Guaranty states:

> No failure or delay by the Administrative Agent or any Lenders in exercising any right, power or privilege hereunder shall operate as a waiver thereof nor shall any single or partial exercise thereof preclude any other or further exercise thereof or the exercise of any other right, power or privilege.  The rights and remedies provided in this Guaranty, the Credit Agreement, any Note, any Rate Hedging Agreement and the other Loan Documents shall be cumulative and not exclusive of any rights or remedies provided by law.

8

(Guaranty, Doc. 1-3.)  Section 8.3 of the Credit Agreement similarly provides:

> No delay or omission of the Lenders or the Administrative Agent to
> exercise any right under the Loan documents shall impair such right
> or be construed to be a waiver of any Default or an acquiescence
> therein … Any single or partial exercise of any such right shall not
> preclude other or further exercise thereof or the exercise of any other
> right … All remedies contained in the Loan Documents or by law
> afforded shall be cumulative and all shall be available … until the
> Obligations have been paid in full.

(Ex. B to Doc. 537, Credit Agreement Excerpts.)  Winget's argument that Chase had to exercise its right to collect the expenses it incurred in the 2005 and 2006 actions at the time of those actions plainly conflicts with these provisions.

Moreover, other provisions of the Guaranty further demonstrate that Winget contractually agreed not to assert that Chase is barred by res judicata from enforcing its right to payment of any expenses.  (See, e.g. Doc.1-3, § 3 (stating that Defendants' obligations are "absolute[] and unconditional[]"), § 4 (stating that the "unconditional and absolute" obligations "shall not be released, discharged or otherwise affected by," inter alia, any action or omission by Chase that might otherwise prevent enforcement of the obligations on any legal or equitable grounds), § 5 (providing that the obligations shall be effective until the Venture debt is repaid in full), § 6 (waiving any requirement that Chase take any particular action at any time in enforcing its rights), § 18 (allowing Chase to enforce its rights in any order or any combination, as Chase chooses).)  These provisions preclude Winget's res judicata arguments.

Additionally, the Court has previously recognized that Winget contractually waived objections to enforcement of the Guaranty based on "any action or failure to act by [Chase] … or any other circumstance whatsoever which might, but for the provisions of [Section 4], constitute a legal or equitable discharge [of Winget's obligations]." (Doc.

9

450 at 15, quoting Guaranty § 4.)  The same reasoning applies to Winget and the Trust's current argument, which is likewise foreclosed by the Guaranty.

Finally, Winget's argument regarding Chase's right to collect the expenses incurred in the 2005 and 2006 actions comes only after a final judgment awarding these expenses to Chase. Chase's Complaint plainly sought the expenses incurred in "any action against [Defendants] with respect to [their] obligations under the Guaranty." (Doc. 1 at ¶¶ 28, 34.)  Likewise, the Amended Final Judgment awards Chase its "attorneys' fees and expenses" incurred in "this and any related or future actions." (Doc. 487 at 3.) The language of the Amended Final Judgment extends to all Guaranty-related litigation. Winget's after-the-fact attempt to rewrite that judgment falls short.

Regarding to the 2006 action, Winget also argues that this action did not trigger Chase's rights under Section 17 of the Guaranty because Winget, rather than Chase, initiated that action. (Doc. 535 at 11 n.9.)  Winget contends that Chase cannot collect its expenses in defending against the 2006 action because the action was not "against Winget."  This argument lacks merit.  Winget initiated the 2006 action in an effort to avoid his obligations under the Guaranty and associated Pledges.  Chase had to defend against the action in order to protect its rights under the Guaranty, and is therefore entitled to recover the expenses it incurred in the defense.  See Graceland Fruit, Inc. v. KIC Chems., Inc., 320 F. App'x 323, 327-28 (6th Cir. 2008).  In the 2006 action, Winget sought declarations "that the Agent breached the Guaranty, the Guaranty Documents and the Guaranty-Related Pledge Agreements" and "that the Guaranty, the Guaranty Documents and the Guaranty-Related Pledge Agreements are therefore not enforceable." (Ex. C to Doc. 537, Complaint from Winget, Case No. 06-cv-13490 (E.D.

10

Mich.) at ¶ 56.)  Because Winget asserted that Chase had breached the Guaranty and therefore could not enforce its rights under it, Chase had to defend that suit in order to preserve its claim for enforcement of the Guaranty.

In Graceland, the Sixth Circuit recognized that where a party such as Chase must defend against a suit in order to preserve its rights under a contract, the contract's attorney's fees provision extends to that defense.  Graceland, 320 F. App'x at 327-28. In Graceland, the parties entered a contract that provided Graceland was liable to KIC for all costs "arising out of [its] breach."  Id. at 327.  Graceland initiated suit against KIC alleging that KIC had provided Graceland with a defective product.  KIC raised affirmative defenses and filed a counterclaim for breach of contract.  After KIC prevailed, it sought reimbursement for expenses incurred on its breach of contract claim as well as expenses incurred in defending against Graceland's defective product claims. Graceland argued that KIC should not be able to recover for its costs in defending against the defective product suit.  Id. at 326.  The Sixth Circuit rejected the argument, recognizing that if KIC had not prevailed on Graceland's principal claims, it could not have succeeded on its breach of contract claim against Graceland.  Id. at 327-28. Applying the "must prevail" test, the Sixth Circuit found that KIC was entitled to the costs of defending against Graceland's claims.  As in Graceland, Chase had to prevail in the 2006 action in order to preserve its right to enforce the Guaranty.

In short, Chase is entitled to the expenses of defending against the 2005 and 2006 action, as limited below.

## V.  This Action

11

A.  Apportionment

As an initial matter, in light of the Sixth Circuit's decision, any argument that Chase should not recover its expenses in defending against Winget's counterclaim for reformation is no longer viable.

Winget's opposition to Chase recovering expenses related to this action is now primarily based on the argument that because of the Sixth Circuit's ruling on reformation, Chase must separate and apportion expenses incurred in attempting to enforce the Trust's unlimited Guaranty from expenses incurred in seeking to enforce Counts II and III against Winget.  The premise of Winget's argument is that the Sixth Circuit "creates two separate and distinct guaranties" as between Winget and the Trust and that as a consequence, there must be a "separation of obligations." (Doc. 569 at 9.)

The argument lacks merit.  First, it fails to recognize the distinction between liability and recourse.  (See, e.g., Doc. 469 at 7.)  The Sixth Circuit's decision addressed whether Chase's <u>recourse</u> against the Trust was limited by Section 3 of the Guaranty to $50 million—it said nothing about Winget's or the Trust's ultimate liability to Chase and it did not establish two "separate guarantees."  Winget claims that Chase is "operating under the assumption that the liability of Winget and the Trust are 'singular' under the Guaranty." (Doc. 569 at 10.)  This is not an "assumption;" it is what the documents expressly provide and a fact that the Court has twice determined.  (Doc. 487; Doc. 568.)

The Amended Final Judgment plainly states:  "The <u>Winget Trust</u> is liable to Chase in the amount of $425,113,115.59" and "<u>Winget</u> is liable to Chase in the amount of $425,113,115.59." (Doc. 568 at 2.)  Winget's liability is coextensive with that of the

12

Trust.  Accordingly, there is no basis under the Guaranty—or anything else—to require Chase to "segregate" the expenses of enforcing the contractual obligations of Winget versus the expenses of enforcing the contractual obligations of the Trust.

Second, the Court's original judgment held that Winget's obligations for expenses under Section 17 are independent of Chase's recourse under Section 3.  This aspect of the Court's judgment was affirmed by the Sixth Circuit. (App. Dkt. 50-2 at 31-32.)  The Sixth Circuit's decision has no effect on either Winget's or the Trust's liability for <u>expenses</u>, and certainly nothing in the Sixth Circuit's decision requires apportioning the expenses between them.

Finally, the Amended Final Judgment provides that "pursuant to Section 17 of the guaranty, **Winget and the Winget Trust are liable to Chase for all costs and expenses . . . paid or incurred by Chase in endeavoring to collect the Guaranteed Obligations**." (Doc. 568 at 3 (emphasis added).)  The Amended Final Judgment further states that "Chase's recourse against Winget and the Trust for collection and payment of such costs and expenses is not limited by Section 3 of the Guaranty." (Id.).

B.  Specific Objections

Winget also raises a host of objections to Chase's requested expenses on the grounds they are excessive and unreasonable.  The objections can be divided into the following categories:

1.    $2,212,458.00 - overstaffing

2.    $245,062.50 - ministerial tasks

3.    $64,807.00 - attorney time spent preparing as witnesses

13

4.    $92,112.25 - Rule 11 costs duplicative

5.    $229,855.50 - data storage

In sum, this represents $2,844,295.25 in alleged unreasonable or otherwise

unrecoverable expenses.

Each objection is addressed in turn below.

### 1.  Overstaffing and Ministerial Tasks

Winget contends that significant attorney and legal professional time spent

litigating this case was the result of unnecessary overstaffing.  Winget points out that

ninety-nine (99) different attorneys and paralegals billed over 21,000 in hours, totaling

over $9.6 million expenses.  Winget says that at most only three (3) paralegals' time

and ten (10) attorneys' time is recoverable.  Winget also contends that the billing

records show a multitude of tasks that are ministerial in nature, such as updating files,

reviewing boxes, and gathering materials.

Winget has identified specific attorneys and paralegals whose expenses he

agrees may be recoverable and contends that the expenses related to all other

attorneys and legal staff should be excluded wholesale.  See Doc. 569 at 11-13.

However, Winget offers no support—in the case law or otherwise—for this arbitrary

identification of attorneys and paralegals to which it claims reimbursement should be

limited.  (Doc. 569 at 13-14.)  The cases relied on do not involve this sort of selective

reimbursement on an individual by individual basis.  For example, in Auto Alliance Int'l v.

U.S. Customs Serv., 155 Fed. App'x 226 (6th Cir. 2005), the Court of Appeals for the

Sixth Circuit upheld the "across the board reduction" of 25% because there was

"unnecessary duplication of effort" and the case did not involve "any complex or novel

legal issues." Id. at 228.

At the hearing on Chase's motion, the Court indicated that a sampling of over staffing in Chase's records would be an appropriate way for Winget to support its arguments as to overstaffing and ministerial tasks.  The Court directed the parties, and provided them with an excerpt from Awarding Attorneys' Fees and Managing Fee Litigation by Alan Hirsch and Diane Sheehey.

It appeared that the parties were going to work together on a sampling methodology prior to submission of supplemental papers.  Apparently, this did not occur.  Instead, Winget filed a supplemental paper (Doc. 655) in which he presented a sampling method without prior discussion with Chase.[6]  Be that as it may, Winget sampled "every twentieth page," resulting in a total of randomly sampled pages from the entire billing record for this action.  Winget then examined those pages and pointed out select entries which he says demonstrate overstaffing and charges for ministerial tasks.

Chase objects to this sampling method.  Chase says that Winget should have looked at every twentieth page, identified the total attorney and/or paralegal time listed on these pages, and then argued as to what fraction of that time was—in Winget's view—from overstaffing or ministerial tasks.  Winget could then argue that the total attorney and/or paralegal expenses sought in the petition should be reduced by that fraction.  Winget did not do that.  Instead, Winget pointed to a subset on the randomly selected pages to argue that all of the entries its says represent overstaffing or ministerial tasks warrant reduction.

_____

[6]This does not surprise the Court in light of the way this litigation has been managed by the parties.

Under Winget's methodology, Winget says that all of the entries previously identified as representing overstaffing and ministerial tasks are again inappropriate because every selection taken from the set that they previously claimed was part of the set.

Putting aside any infirmities in Winget's sampling, the Court is able to make an overall determination as to the claimed excessiveness for alleged ministerial tasks and overstaffing.  While Chase may be correct that not all of the claimed entries are clearly considered ministerial or reflect overstaffing but instead are necessary and reasonable expenses, the Court does not have to accept Chase's representations whole cloth. Based on a review of Winget's sampling as well as the Court's review, there is a level of excessiveness in the billing records, whether from time spent for ministerial tasks or from overstaffing.  Because it is not feasible to pour over the multitude of billing records and subtract specific entries,[7] the Court in its discretion finds that an across the board ten (10) percentage reduction is appropriate.  This reduction applies to the total amount of Chase's request, which includes the expenses incurred in the 2005 and 2006 actions. This is appropriate because the parties themselves disagree on the total amount of expenses incurred in the 2005 and 2006 actions and because the billing records from the 2005 and 2006 actions reveal the same infirmities in terms of excessiveness.

### 2.  Attorney Time Spent Preparing as a Witness

Winget argues that Chase is not entitled to recover expenses associated with certain attorneys' time spent preparing for and giving testimony at the trial on

---

[7]The electronic nature of record keeping for expenses results in a level of detail and preciseness in billable records that, if nothing else, generates literally hundreds of pages of records.

16

2:08-cv-13845-AC-MJH   Doc # 671   Filed 01/13/16   Pg 19 of 21   Pg ID 24921

reformation. (Doc. 569 at 14-15.)  Winget calculates this amount as $64,807.00.

However, Chase argues that under Section 17 it is entitled to not just the expenses of the attorneys who testified because these attorneys did so at the cost to their respective law firms of the time they would otherwise have billed for legal work.

Winget has the better view.  Although courts have recognized that fact witnesses may even be directly compensated for the reasonable value of time lost in preparing for and giving testimony, see, e.g., Consol. Rail Corp. v. CSX Transp., Inc., No. 09–cv–10179, 2012 WL 511572, at *8 (E.D. Mich. Feb. 16, 2012 (recognizing such compensation is available under Michigan Rule of Professional Conduct 3.4(b)), the Court does not find it appropriate for the attorney witnesses in this case–who testified in the reformation action–to be entitled to be compensated for their time preparing for testifying at trial, particularly in light of their testimony.

### 3.  Rule 11 Costs as Duplicative

Winget also objects to Chase seeking any uncollected expenses related to the Rule 11 motion which he says amounts to $92,112.25.

Resolution of this issue requires some background elaboration.  Following the trial on reformation, Winget filed a motion for sanctions against Chase under Rule 11. (Doc. 355.)  The Court denied the motion and granted Chase leave to seek its costs in defending against the motion, as permitted under Rule 11.  (Doc. 469 at 10; Doc. 477.) Chase submitted a motion for expenses incurred in opposing the Rule 11 motion.  (Doc. 473.)  The Court eventually granted the motion and awarded Chase $33,037.50 in expenses.  (Doc. 511).

Winget now contends that Chase may not seek any expenses that it incurred

17

responding to Winget's Rule 11 motion.

This objection does not carry the day.  Winget does not cite any authority for the proposition that a party who recovers expenses under the high standards of Rule 11 cannot also seek related <u>non-duplicative expenses</u> under a contract after prevailing on the entire action.  Chase has made clear that it is not seeking expenses it already recovered.  A review of Chase's Rule 11 fee petition (Doc. 473-2 at 4) alongside Exhibit 6 of Winget's opposition (Doc. 569-6) demonstrates that Chase is not seeking a double recovery.

Moreover, Chase explains why the expenses Winget has argued are inappropriate were not sought in the Rule 11 fee petition:

> • Some were part of billing entries that covered matters other than the Rule 11 brief (see, e.g. Doc. 569-6, M. Washburn Entry of 9/30/2013).
>
> • Some were expenses that had not yet been billed as of the date the Rule 11 fee petition was filed with the Court in January 2014 (see, e.g. Doc. 569-6, M. Washburn Entry of 12/11/2013).
>
> • Some expenses were incurred by Chase's local counsel, Dickinson Wright, in responding to the motion.  Chase opted not to seek expenses incurred by local counsel until the matter was finalized.

### 4.  Data Storage

Winget also objects to Chase recovering expenses related to "data storage" in the amount of $229,855.50.  Winget argues that Chase is not entitled to recover this expense.  Although the language regarding Chase's right to recover "all" costs of collection is broad, the Court concludes it is not so broad as to encompass the expenses Chase incurred for data storage.  Storing case files, data, and materials, whether electronically or otherwise, is a generic expense of a law firm.  Neither party cites direct authority for the recovery, or non recovery, of such an expense in

18

connection with a contractual provision.  Having considered the matter, and in light of the magnitude of the overall award of expenses, the Court in its discretion finds that Chase is not entitled to recover the expenses for data storage.

VI.  Conclusion

For the reasons stated above, Chase's motion is GRANTED IN PART.  Chase's requested amount of **$12,688,967.67 is reduced as follows:**

**$64,807.00** for attorney time in preparing to be a witness

**$229,855.50** for data storage

This results in a sum of **$12,394,305.17**.  Applying 10% across the board reduction of **$1,239,430.52**, results in the amount of **$11,154,874.65** in expenses recoverable by Chase against Winget and the Winget Trust.

SO ORDERED.

S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: January 13, 2016
      Detroit, Michigan