UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JPMORGAN CHASE BANK, N.A.,

    Plaintiff/Counter-Defendant,

v.

LARRY J. WINGET and the
LARRY J. WINGET LIVING TRUST,

    Defendants/Counter-Plaintiffs.
_____/

Case No. 08-13845

HON. AVERN COHN

### MEMORANDUM AND ORDER DENYING LARRY J. WINGET'S' MOTION FOR PARTIAL SATISFACTION OF JUDGMENT (Doc. 672)[1]

I.

This is a longstanding commercial dispute. J. P. Morgan Chase (Chase) is the administrative agent for a group of lenders that extended credit to Venture Holdings Company, LLC (Venture) under a credit agreement. In the complaint (Doc. 1), Chase sued Larry J. Winget (Winget) and the Larry J. Winget Living Trust (Winget Trust) to enforce a Guaranty and two (2) Pledge Agreements entered into by Winget and signed by Winget and the Winget Trust in 2002, guaranteeing the obligations of Venture.

After years of litigation including appeals, the Court entered an Amended Final Judgment, Doc. 568, against Winget and the Winget Trust in the amount of $425,113,115.59 and limiting Chase's recourse as to Winget as to $50 million as provided for in the Guaranty. After entry, Chase began collection efforts, including issuing writs of garnishment and serving discovery on Winget and the Winget Trust.

---

[1] Upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

This effort is ongoing. The Court also issued an order awarding Chase $11,154,874.65 in attorney fees and expenses (Fee Order) associated with its efforts to enforce the Guaranty and Pledge Agreements. (Doc. 671).

Before the Court is Winget's motion for partial satisfaction of the judgment, asking that the Court declare the Fee Order "and that portion of the Amended Final Judgment (Doc. 568) which the [Fee] Order animates, satisfied." (Doc. 672).[2] As will be explained, Winget's motion is based on an interpretation of Section 10 of the Guarantee regarding Application of Payments. For the reasons that follow, the motion will be denied.[3]

II.

Fed. R. Civ. P. 60(b) provides in relevant part:

**(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered Evidence; Fraud, Etc.** On motion and upon such terms as are just, the court may relieve a party or a party's legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (4) the judgment is void; (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application; or (6) any other

---

[2]Previously, Winget filed a motion to stay enforcement of the Fee Order until three (3) business days after the Court resolves Winget's motion for partial satisfaction of the judgment. (Doc. 675). The Court denied the motion, finding no grounds to issue a stay. (Doc. 679).

[3]Also before the Court is a related case, Winget v. Chase, 15-13469, in which Winget seeks declaratory relief regarding his revocation of the Winget Trust. Chase has counterclaimed, asserting that Winget's revocation of the Winget Trust was fraudulent. Winget's motion to dismiss Chase's counterclaims (Doc. 15) is pending and is scheduled for hearing. See Doc. 22.

2

reason justifying relief from the operation of the judgment

### III.

Winget's motion will be denied for the simple reason that he is attempting to use Rule 60(b) as a vehicle for reconsideration of an issue that has already been considered by the Court. This is improper. See Muhammad v. Orta, 19 F. App'x 370, 370 (6th Cir. 2001) ("A Rule 60(b) motion must be denied if, as here, it is merely an attempt to relitigate the case."). See also Lacey v. Robertson, 11 F. App'x 481, 481 (6th Cir. 2001) (affirming district court's denial of motion for Rule 60(b) relief where the request was "simply an attempt to relitigate the underlying action which is prohibited under Rule 60(b)") and Compass Homes, Inc. v. Heritage Custom Homes, LLC, 2015 WL 4639654, *3 (S.D. Ohio Aug. 3, 2015) (recognizing "it is well-established in the Sixth Circuit that a … Rule 60(b) motion … does not allow the unhappy litigant to reargue the case."). However, explaining why this is so in this case is somwhat complicated.

Winget has already presented an argument regarding the application of payments provision of Section 10 to the Court. In their July 30, 2015 Response to Chase's Motion for Costs and Expenses of Collection, Winget argued that "Section 10 of the Guaranty reflects the parties' agreement that monies received by Chase for application on the Guaranteed Obligations would be first applied to any fees and costs incurred by Chase in connection with enforcement of the Guaranty." (Doc. 569 at 17.1) Winget contended that because $50 million had been tendered to Chase "in satisfaction of his obligations under the Guaranty and pledge agreements," "any judgment awarding fees and costs to

3

Chase pursuant to Section 17 must state that Section 10 of the Guaranty governs how that award is to be satisfied." (Id. at 17-18.)  In reply, Chase explained that Section 10 did not limit Chase's ability to recover its expenses of collection. (Doc. 573 at 13-15.) Winget filed a sur-reply, again advancing the position that any expenses Chase may be awarded had already been paid. (Doc. 603 at 2-3.)

Following this briefing, the Court entered an order on January 13, 2016 determining that $11,154,874.65 in expenses were "recoverable by Chase." (Doc. 671 at 19.)  Winget now asks the Court to alter its decision on the grounds that the award was preemptively satisfied by Winget's payment of $50 million two years earlier. Winget styles this request as a motion for relief from order under Rule 60(b)(5).  Winget's motion is simply a repeat of the reply and sur-reply Winget filed prior to entry of the order awarding fees to Chase; the Court rejected these arguments. Because Rule 60(b) is not intended as a vehicle for a dissatisfied party to relitigate arguments already presented and decided.  This ends the matter.

Moreover, even if it was not procedurally barred, Winget is wrong on the merits. Essentially, Winget contends that his single payment satisfied two separate and distinct obligations.  This is sophistry.  Winget cannot use the same money twice.  Winget's obligation for attorney fees are independent of the order in which Chase must apply the payments it receives.  Winget's reading of Section 10 would render Section 17 of the Guaranty largely meaningless.  Section 17 of the Guaranty, titled "Costs of Enforcement," provides:

> The Guarantor agrees to pay all costs and expenses including, without limitation, all court costs and attorneys' fees and expenses paid or incurred by [Chase] in endeavoring to collect all or any part of the Guaranteed Obligations from, or in

4

prosecuting any action against, the Guarantor with respect to his obligations hereunder.

(Guaranty, Doc. 1-3 at 8-9.) The purpose of Section 17 is to discourage Winget from evading liability, and to minimize the cost to Chase of pursuing recovery should Winget do so.

Section 10 of the Guaranty is titled "Application of Payments." (Guaranty, Doc. 1-3 at 5.). This section describes how Chase applies payments it receives in connection with the Guaranteed Obligations. The full text of Section 10 is as follows:

> Section 10. Application of Payments. All payments received by the Administrative Agent hereunder shall be applied by the Administrative Agent to payment of the Guaranteed Obligations in the following order unless a court of competent jurisdiction shall otherwise direct:
> (a) FIRST, to payment of all costs and expenses of the Administrative Agent incurred in connection with the collection and enforcement of the Guaranteed Obligations or of any security interest granted to the Administrative Agent in connection with any collateral securing the Guaranteed Obligations;
> (b) SECOND, to payment of that portion of the Guaranteed Obligations constituting accrued and unpaid interest and fees, pro rata among the Lenders and their Affiliates in accordance with the amount of such accrued and unpaid interest and fees owing to each of them;
> (c) THIRD, to payment of the principal of the Guaranteed Obligations and the net early termination payments and any other Rate Hedging Obligations then due and unpaid from the Borrower to any of the Lenders or their Affiliates, pro rata among the Lenders and their Affiliates in accordance with the amount of such principal and such net early termination payments and other Rate Hedging Obligations then due and unpaid owing to each of them; and
> (d) FOURTH, to payment of any Guaranteed Obligations (other than those listed above) pro rata among those parties to whom such Guaranteed Obligations are due in accordance with the amounts owing to each of them.

(Id.)

As stated in subparagraph 10(a), Section 10 instructs that monies received will be applied first "to payment of all costs and expenses" incurred by Chase "in connection with the collection and enforcement of the Guaranteed Obligations." (Id.) Only after covering its own collection costs will Chase distribute payments to other members of the

5

lending group in the order described in subparagraphs (b)-(d). (Id.) This section addresses the way funds are dispersed among the lenders. Section 10 says nothing about how the guarantors (Winget and the Winget Trust) may satisfy their obligations to Chase under the Guaranty.

Finally, Section 3 of the Guaranty provides that Chase's recourse against Winget for principal and interest was to pledges of the stock of companies in South Africa and Australia that could be terminated through a payment of $50 million. (Doc. 1-4 at 10; Doc. 1-5 at 10.) The Court has held the pledge agreements were "effective and enforceable unless Winget pays Chase $50 million." (Doc. 450 at 11.) On December 20, 2013, the Court granted Chase's motion for final judgment, following which Winget wired Chase $50 million "[p]ursuant to Paragraph 10 of the Pledge Agreements." (T. Hubbard Jan. 7, 2014 Ltr. Doc. 475-4.) At that time, Winget took the position that the "$50 million payment terminated the Pledge Agreements" and said nothing about costs of enforcement under Section 17. (Doc. 475 at 2.) Chase then delivered the original stock and membership interests and stock powers to Winget, specifying that delivery was "[i]n consideration of [the Pledgors'] delivery to the Agent … of $50 million." (M. Washburn Jan. 24, 2014 Ltr., Ex. A. To Chase's Response.)

After Winget made the $50 million payment and Chase returned the stock pledges, the Court entered the Final Judgment which states in part:

> [P]ursuant to Section 17 of the Guaranty, Winget and the Winget Trust are liable to Chase for all costs and expenses including, without limitation, all court costs and attorneys' fees and expenses paid or incurred by Chase in endeavoring to collect the Guaranteed Obligations from, or in prosecuting this and any related or future actions against, Winget and the Winget Trust with respect to their obligations under the Guaranty, such costs and expenses to be proven at a later date.

(Doc. 487 at 3.)  Winget has never asserted or suggested that Section 10 of the Guaranty meant that these costs had already been satisfied by his prior payment of the $50 million.  (Doc. 474.)  The Final Judgment further provides that "[n]otwithstanding anything elsewhere in this Order, Chase's recourse against Winget and the Winget Trust for collection and payment of such costs and expenses is not limited by Section 3 of the Guaranty," (Doc. 487 at 3.).  This further confirms that the obligations under Section 17 are separate and distinct from any limitation on recourse set forth in Section 3.  On January 13, 2016, the Court entered an order on Chase's interim fee petition, holding that Chase was entitled to recover $11,154,874.65 in expenses pursuant to Section 17.  This petition was "interim" because Chase continues to incur costs in pursuing collection.

     Against the backdrop described above, it defies logic to say that Winget's prior $50 million payment could satisfy both obligations under Section 3 and Section 17.  Winget's interpretation of Section 10(a) would read Section 17 out of the Guaranty.  Under Winget's reasoning, the $50 million payment made in January 2014, would satisfy not only the $11.1 million of expenses Chase has already been awarded, but any additional expenses of collection continues to incur.  Under Winget's scenario, Chase would recover less of what it actually loaned to Winget the more Winget attempted to evade collection of its loan.  This result is inconsistent with the Guaranty's overall purpose of providing security to the lenders and is otherwise nonsensical. (Guaranty, Doc. 1-3 at 1 (stating that Winget made the Guaranty "in favor of [Chase] … for the benefit of [Chase] and the Lenders").)

     Finally, even if Winget is correct that Section 10 has some bearing upon

7

satisfaction of Winget's obligations, it does not follow that Winget's payment of $50 million satisfies over $61 million of total obligations under both Section 3 and Section 17. The Court has already held that the obligation to pay costs and expenses under Section 17 is not limited by the limited recourse provided by Section 3.

Winget's motion is DENIED; it lacks merit.

SO ORDERED.

S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: June 28, 2016
      Detroit, Michigan