UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JPMORGAN CHASE BANK,

    Plaintiff,

vs.                                                  Case No. 08-13845

LARRY J. WINGET and                        HON. AVERN COHN
the LARRY J. WINGET
LIVING TRUST,

    Defendant.
_____/

**MEMORANDUM AND ORDER**
**GRANTING CHASE'S MOTION TO COMPEL (Doc. 692)**
**AND**
**DENYING WINGET'S MOTION TO COMPEL (Doc. 695)**[1]

I. Introduction

This is another chapter in the longstanding commercial dispute between Larry Winget (Winget) and JPMorgan Chase Bank, NA (Chase) regarding the obligations of Winget and the Larry J. Winget Living Trust (Winget Trust).[2] As will be explained, the dispute culminated in the entry of a $400 million dollar judgment against Winget and the Winget Trust. Chase is pursuing post-judgment collection efforts on the judgment which

---

[1] Upon review of the parties' papers, the Court deems these matters appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

[2] The dispute traces back to 2005 and has spawned multiple appeals, two of which are currently pending in the Court of Appeals for the Sixth Circuit. See Chase v. Winget, 15-1934 (appeal from order rejecting Winget's judicial estoppel defense and the amended judgment); Chase v. Winget, 16-2130 (appeal from order granting Chase's interim motion for attorney fees and expenses).

have met with resistance from Winget.

Before the Court is Chase's motion to compel (Doc. 692) and Winget's motion to compel. (Doc. 695). For the reasons that follow, Chase's motion is GRANTED and Winget's motion is DENIED. Chase shall submit a proposed order detailing precisely the discovery requested of Winget.

## II. Background

In 2008, Chase sued Winget and the Winget Trust to enforce a Guaranty and two (2) Pledge Agreements entered into by Winget and signed by Winget and the Winget Trust in 2002, guaranteeing the obligations of Venture Holdings Company, LLC. After years of litigation including appeals, the Court entered an Amended Final Judgment against Winget and the Winget Trust in the amount of $425,113,115.59 and limiting Chase's recourse as to Winget as to $50 million as provided for in the Guaranty. After entry, Chase began collection efforts under Michigan law,[3] including issuing writs of garnishment and serving discovery on Winget and the Winget Trust. During these post-judgment proceedings, Chase learned that in January of 2014, Winget revoked the Winget Trust, a fact Winget kept in pectore until Chase began collection efforts on the judgment.

Winget then filed an action for declaratory relief, seeking a declaration that Chase has no further recourse against Winget, including assets that were once part of

---

[3] See M.C.L. § 600.6001, et seq. This statute sets forth the rules and procedures for enforcement of judgments. Included in such post-judgment proceedings is the creditor's ability, through garnishments, examinations, etc., to essentially engage in wide ranging discovery in aid of execution on the judgment. A discussion of post-judgment remedies in Michigan can be found in Steven A. Harms, Handling the Collection Case in Michigan: A Creditor's Guide (ICLE 2014).

the Winget Trust. Winget v. Chase, 15-13469. Chase filed a counterclaim, asserting several claims which essentially boil down to the contention that Winget's revocation of the Winget Trust was fraudulent. In other words, Chase's counterclaim[4] is the functional equivalent of post-judgment proceedings in the 2008 case. The declaratory action and the 2008 action have been consolidated with all documents filed under the 2008 case. See Doc. 686.

### III. Legal Standard

The scope of discovery under the Federal Rules of Civil Procedure is traditionally quite broad. Lewis v. ACB Bus. Servs., 135 F.3d 389, 402 (6th Cir.1998). Parties may obtain discovery on any matter that is not privileged and is relevant to any party's claim or defense if it is reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1). "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401. Rule 33 allows a party to serve requests for production of documents on an opposing party. Fed. R. Civ. P. 33. A party receiving these types of discovery requests has 30 days to respond with answers or objections. If the receiving party fails to respond, Rule 37 provides the party who sent the discovery the means to file a motion to compel. Fed. R. Civ. P. 37(a)(3)(B)(iii) and (iv). If a court grants a Rule 37 motion to compel, then the court must award reasonable expenses and attorney's fees to the successful party, unless the successful party did not confer in good faith before the motion, the opposing

---

[4] Chase recently filed a motion for judgment on the pleadings as to Count II of its counterclaim. (Doc. 699).

3

party's position was substantially justified, or other circumstances would make an award unjust. Fed. R. Civ. P. 37(A)(5)(a).

## IV. Chase's Motion to Compel

Chase, in seeking to collect on a judgment against the Winget Trust, is entitled to discovery in aid of execution on the judgment. See n. 3., supra. As noted above, Winget has alleged that effective January 1, 2014, the Winget Trust was revoked and all of its holdings transferred, apparently for no consideration, to Winget—conduct that would support recovery of these assets as a fraudulent conveyance, among other claims.

The information Chase seeks is relevant to its collection efforts. Chase requested that Winget produce documents relating to the Winget's Trust's assets and transfers. These documents are relevant to Chase's post-judgment efforts to learn what was held through the Trust and what has happened to those assets. Chase's theory, advanced in the counterclaims to the declaratory judgment action that has been consolidated with this case, is that the revocation of the Trust was a fraudulent conveyance. That is, rather than being transferred for a legitimate business purpose, the Trust was stripped of its assets in order to thwart enforcement of a judgment against the Trust. Chase's counterclaims survived a motion to dismiss.

Indeed, this Court has expressly recognized, Chase is entitled to discovery regarding what was in the Trust during the relevant period, what was transferred out of the Trust during the relevant period, and to whom those transfers were made. See Ex. A to Chase's motion, July 27, 2016 Hrg. Tr. at 9:15-23, 11:6-9 (Chase is "saying that you revoked it, and they want to know the circumstances. They are entitled to discovery.

They are entitled to know what went on.")

Further, none of Winget's objections to producing the requested documents have merit. Winget argues both that Chase cannot seek discovery from Winget about the Winget Trust because Winget is not a judgment debtor, and cannot seek discovery from the Trust "[b]ecause the Trust never owned the property owned by Larry Winget." Neither contention has merit.

First, Winget's objection that the Winget Trust never "owned" anything—and therefore there is nothing to discover regarding assets it held—is off the mark. Information regarding assets held through the Winget Trust and the disposition of those assets is the basis for Chase's fraudulent conveyance claim. Documents showing assets titled in the name of the Winget Trust are necessary for Chase to make out its claims either at summary judgment or at trial.

Second, Winget asserts that Chase has no right to discovery regarding any assets that were not in the Winget Trust at the time the Guaranty was signed. This argument lacks merit. Chase is entitled to know what was in the Winget Trust throughout the relevant period (i.e., from the time Chase's claims arose to the time of revocation) and what was conveyed, transferred, or retitled out of the Winget Trust during that time. Under the law of fraudulent conveyance, a creditor can recover assets conveyed at any point after the creditor relationship has been established, if the conveyance otherwise meets the test for a fraudulent conveyance—i.e., it was done for the purposes of hindering creditors (actual fraud) or is made for inadequate value at a time when or has the effect of rendering the party insolvent (constructive fraud). See M.C.L. § 566.34; M.C.L. § 566.35.

Further, Winget refuses to produce documents on the grounds that Chase seeks to directly execute on property previously held by the Winget Trust. This objection is unfounded. At this point, Chase simply wants to know what assets were held by the Trust, and when and how they were transferred, in order to develop its fraudulent conveyance claims. Whether it prevails on its claims and is later to execute based on them is for another day.

Winget says that it has produced all documents necessary and relevant to Chase. The documents Winget refers to is the "proffer" of documents made to Chase on November 9, 2015. This is wholly insufficient. First, the proffer documents given to Chase were heavily redacted, i.e. names of companies held by the Winget Trust were redacted, making it impossible for Chase to conduct any investigation and pursue appropriate discovery regarding the disposition of these assets. Moreover, Winget's willingness to make himself available for a deposition does not relieve him of his obligation to produce documents responsive to Chase's requests. Chase has a right to depose Winget, but also has the right to obtain all relevant documents—in unredacted form—in advance of the deposition.

Finally, Winget, in his capacity as trustee of the Winget Trust, has objected to discovery served on the Trust "on grounds that it has not been served on a proper judgment debtor." It appears to be Winget's position that although the judgment is against the Winget Trust, the Winget Trust does not exist apart from its trustee, Winget, and that "Chase does not have a judgment against Larry Winget as trustee." This assertion lacks merit. A juridical entity like a trust can act only through natural persons. Therefore, discovery served on the Winget Trust must be answered by the natural

person who has authority to act on the trust's behalf—in this case, the trustee. Winget has acknowledged that, as trustee, he "possesses the sole authority to act with respect to property held in the trust." Therefore, Winget as trustee—as the Winget Trust's natural person representative—can (and must) respond to discovery served on the judgment debtor of the Winget Trust.

In addition to objections about whether Winget as trustee is a "party" to the litigation, the Winget Trust also objects to producing documents on the ground that "[a]s a matter of law a revocable living trust has no 'interest in property.'" This objection goes to Winget's argument that the Winget Trust was and is an "empty vessel." As Chase points out, Winget's "empty vessel" theory is a merits issue and not grounds for opposing discovery.

In short, Chase is entitled to the discovery it seeks.

## V. Winget's Motion to Compel

While Chase's motion to compel has been pending, Winget served a deposition notice on Chase under Federal Rule of Civil Procedure 30(b)(6). The notice requests that Chase designate a corporate representative to testify on five topics. Each of these topics—drawn nearly verbatim from Chase's answer and affirmative defenses to Winget's declaratory judgment action—essentially seek testimony "related to" Chase's legal theories and conclusions. Chase objected to the deposition notice but agreed to consider an alternative discovery method for obtaining the type of information Winget was seeking, such as contention interrogatories. Apparently not satisfied, Winget filed a motion to compel Chase to produce a witness for a Rule 30(b)(6) deposition.

As Winget frames the request, he seeks "to explore through discovery whether

Chase, as contingent trustee, was privy to information relating to Mr. Winget's purpose behind forming, maintaining and managing the assets within the Trust." (Doc. 695 at p. 3.) Winget says that this information is "relevant to the central question here," which he claims is "[w]hether [he] managed the assets within the Trust with the exclusive intent of estate planning or, as Chase alleges, with the 'actual intent to defraud Chase.'" (Id. at 3–4).

Winget's request turns fraudulent transfer law on its head. Under the Act, a transfer that occurs after the creditor's claim arose is fraudulent when the transfer was made for less than reasonably equivalent value and renders the transferring party insolvent. M.C.L. § 566.35(1). This is known as a constructive fraudulent conveyance. Alternatively, a transfer violates the Act if made with "actual intent to hinder, delay, or defraud any creditor of the debtor." M.C.L. § 566.34(1)(a). This is known as an actual fraudulent conveyance. Chase has plead that Winget violated both provisions of the Act. (See Doc 688 ¶¶ 26–37.). Putting aside that the issue of "intent" is only pertinent to Chase's actual fraudulent transfer claim, the relevant intent is whether Winget revoked the Trust for purposes of hindering or delaying the Trust's creditors. Winget's intent in forming, maintaining, and managing the property prior to the relevant transfer, which is the purported focus of his discovery, is not relevant. Any information that Winget seeks through his 30(b)(6) deposition notice about what Chase may or may not have known about the original purposes of the Winget Trust is simply not relevant to Chase's claims and defenses

Additionally, Winget's deposition notice is also improperly directed at Chase's legal theories and conclusions. For example, Winget seeks testimony related to the

8

following:

> 3. Chase's assertion that Winget is estopped from asserting his claim because Chase relied on statements made or actions taken by Winget and was prejudiced thereby. . . .
>
> 4. Chase's assertion that by revoking the Trust, Winget wrongfully assumed dominion and control of the property that was held in the Larry J. Winget Living Trust. . . .
>
> 5. Chase's assertion that Winget has thus been unjustly enriched, and to allow Winget to retain this benefit will result in an inequity to Chase.

(Doc. 695-3 at 3–4.) Each of these topics is aimed at the legal theories, strategies, and conclusions of Chase and its counsel. This is not a proper discovery request. "Depositions, including 30(b)(6) depositions, are designed to discover facts, not contentions or legal theories." JPMorgan Chase Bank v. Liberty Mut. Ins. Co., 209 F.R.D. 361, 362 (S.D.N.Y. 2002).

Moreover, Chase says he has provided Winget with the current factual basis of its legal positions. In Chase's Response to Winget's Requests for Production of Documents, Chase listed the Eighth Amendment to the Credit Agreement, the Winget Trust Instrument, the Winget Trust's numerous court filings, and certain stock certificates titled in the name of the Winget Trust as documents supporting its claims. Chase has therefore identified the documents constitute the factual bases underlying Chase's legal theories. Moreover, the deposition would be unduly burdensome. Courts have recognized that preparing a corporate representative for a 30(b)(6) deposition, particularly when the information requested is uniquely within the knowledge of party's lawyers, requires "numerous hours and dollars." See Integra Bank Corp. v. Fidelity and Deposit Co. Of Maryland, 2014 WL 109105, at *3 (S.D. Ind. Jan. 10, 2014); see also

Baklid-Kunz v. Halifax Hosp. Med. Ctr., 2012 WL 3537070, at *5 (M.D. Fla. Aug. 14, 2012)(recognizing "[i]t would be difficult and time consuming . . . to prepare a non-lawyer witness to testify on [noticed topics] and the preparation of that witness would almost certainly result in the disclosure of work product privileged information."); Indep. Serv. Orgs. Antitrust Litg., 168 F.R.D. at 654 (D. Kan. 1996) (concluding that a 30(b)(6) deposition into the facts underlying legal theories is "overbroad, inefficient, and unreasonable," particularly "where the information appears to be discoverable by other means").

In short, Winget is not entitled to an order compelling a Rule 30(b)(6) deposition of Chase.

SO ORDERED.

## CODA

"At some point, litigation must come to an end." Consol. Television Cable Serv., Inc. v. City of Frankfort, 857 F.2d 354, 358 (6th Cir. 1988). Unfortunately, the parties both appear to have inexhaustible resources to continue this litigation. Winget in particular is cautioned that the Court's patience is eroding. While Winget is entitled to defend the legitimacy of the dissolution of the Winget Trust, he is not entitled to do so with frivolous arguments.

S/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: December 15, 2016
       Detroit, Michigan