UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JPMORGAN CHASE BANK, N.A.,

    Plaintiff/Counter-Defendant,

v.

LARRY J. WINGET and the
LARRY J. WINGET LIVING TRUST,

    Defendants/Counter-Plaintiffs.
_____/

Case No. 08-13845

HON. AVERN COHN

# MEMORANDUM AND ORDER
# DENYING WINGET'S MOTION FOR RECONSIDERATION (Doc. 734)[1]

I.

This is a commercial dispute. J. P. Morgan Chase (Chase) is the administrative agent for a group of lenders that extended credit to Venture Holdings Company, LLC (Venture) under a credit agreement. In 2008, Chase sued Larry J. Winget (Winget) and the Larry J. Winget Living Trust (Winget Trust) to enforce a Guaranty and two (2) Pledge Agreements entered into by Winget and signed by Winget and the Winget Trust in 2002, guaranteeing the obligations of Venture. After years of litigation and mutliple appeals, on July 28, 2015, the Court entered an Amended Judgment in favor of Chase and against Winget and the Winget Trust that enforced the Guaranty and Pledge Agreements against Winget and the Winget Trust. Specifically, the judgment against the Winget Trust was in the amount of $425,113.115.59. The judgment against against Winget was limited to $50 million. (Doc. 568). Because Winget later satisfied his

---

[1]Upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

portion of the judgment, Chase began collection efforts against the Winget Trust. Following being informed that Winget transferred all of the Winget Trust's assets to himself without prior notice, Chase claimed that the transfer was fraudulent particularly because a judgment remained against the Winget Trust.

Chase then filed a motion for partial judgment on the pleadings (Doc. 699), on the grounds that the transfer amounted to constructive fraud. The Court agreed. (Doc. 732). Before the Court is Winget's motion for reconsideration. (Doc. 734). For the reasons that follow, the motion will be denied.

II.

E.D. Mich LR 7.1(h) governs motions for reconsideration, providing in relevant part:

> Generally, and without restricting the court's discretion, the court will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by implication. The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case.

E.D. Mich. LR 7.1(h)(3).

III.

The primary thrust of the motion for reconsideration is the Court of Appeals for the Sixth Circuit's decision in Meoli v. Huntington National Bank, 848 F.3d 716 (6th Cir. 2017). Chase contends Meoli is inapplicable to its fraudulent transfer claim. The Court agrees. Meoli involved a bankruptcy trustee's efforts to recover from a bank amounts the debtor company had deposited to the accounts of related company. The Sixth Circuit rejected the argument that the bank was a transferee under the Bankruptcy

Code, finding that the bank did not gain dominion and control over the deposits, which the account holder remained free to withdraw.

Winget points to the statement in Meoli that "[t]he account holder's right to withdraw the deposits keeps the bank from obtaining dominion and control," and seems to suggest that Winget had a similar relationship with the Winget Trust. Not so. In Meoli the Court of Appeals said that a depositary bank "never has actual control of the funds" it receives for deposit because "it has no discretion over the uses to which the depositor's money is to be put." Meoli, 848 F.3d at 725 (quoting Nordberg v. Societe Generale, 848 F.2d 1196, 1200 (11th Cir. 1988); Universal Serv. Admin. Co. v. Post-Confirmation Comm. of Unsecured Creditors of Incomnet Commc'ns Corp., 463 F.3d 1064, 1074 (9th Cir. 2006).) Indeed, a bank does not have the right to dispose of or encumber monies in an account. This case, however, is not about the relationship between a bank and an account holder. Rather, it is the relationship between a trust and the trustee of the trust. Here, the trustee had broad authority to manage the property of the trust; he had the power to buy, sell, encumber, and otherwise deal with trust property. This includes entering into a contract like the Guaranty involved in this case.

Again, Winget's misreading of Meoli is simply a repetition of his argument that conflates the distinction between the personal and individual debts of an agent/trustee and the debts of the trust itself, which is a separate legal entity. Meoli does nothing to change the Court's analysis.

None of Winget's other arguments for reconsideration have merit. Winget continues to maintain, via varied arguments, that because Larry Winget had a

pre-existing right to revoke the Winget Trust and used the Winget Trust as a will substitute, the transfer of the Winget Trust's assets could not have been a fraudulent conveyance, ignoring the third party claim of Chase as a creditor of the Winget Trust as distinguished from any obligation to Winget individually. The Court has repeatedly explained that neither a settlor's right to revoke nor the fact that a trust may serve as a will substitute erases the trust's contractual obligations.

Finally, the Court is constrained to observe that Winget's arguments have created an aura of complexity to inter vivos trusts such as the Winget Trust that simply does not exist. The concept of a living or revocable trust created during the life of the settlor (sometimes referred to as a living trust) is neither new nor novel, tracing back to the Middle Ages in England. See https://en.wikipedia.org/wiki/English_trust_law (Last visited Sept. 12, 2017); see also E. William Carr, <u>Revocable Trusts</u> (1980).

## IV.

For the reasons stated above, Winget's motion for reconsideration is DENIED.

SO ORDERED.

<u>S/Avern Cohn</u><br>
AVERN COHN<br>
UNITED STATES DISTRICT JUDGE

Dated: September 13, 2017
      Detroit, Michigan

4