UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JPMORGAN CHASE BANK, N.A.,

    Plaintiff/Counter-Defendant,

v.

LARRY J. WINGET and the
LARRY J. WINGET LIVING TRUST,

    Defendants/Counter-Plaintiffs.
_____/

Case No. 08-13845

HON. AVERN COHN

## ORDER GRANTING CHASE'S MOTION TO STRIKE JURY DEMAND (Doc. 755)[1]

### I. Introduction

This is a commercial dispute. J. P. Morgan Chase (Chase) is the administrative agent for a group of lenders that extended credit to Venture Holdings Company, LLC (Venture) under a credit agreement. In 2008, Chase sued Larry J. Winget (Winget) and the Larry J. Winget Living Trust (Winget Trust) to enforce a Guaranty and two Pledge Agreements entered into by Winget and signed by Winget and the Winget Trust in 2002, guaranteeing the obligations of Venture. After years of litigation and multiple appeals, on July 28, 2015, the Court entered an Amended Judgment in favor of Chase and against Winget and the Winget Trust that enforced the Guaranty and Pledge Agreements against Winget and the Winget Trust. Specifically, the judgment against the Winget Trust was in the amount of $425,113.115.59. The judgment against against Winget was limited to $50 million. (Doc. 568).

---

[1] Upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

Before the Court is Chase's motion to strike jury demand. The motion was the subject of a phone conference on November 21, 2017 during which the Court permitted the parties to file additional papers. Chase filed a reply brief (Doc. 767) and Winget filed a Supplemental Submission (Doc. 768). The matter is ready for decision. For the reasons that follow, the motion is GRANTED.

## II. Background

### A.

Following entry of the Amended Judgment, and after Winget satisfied his portion of the judgment, Chase began collection efforts against the Winget Trust. This included including issuing writs of garnishment and serving discovery on the Winget Trust. During these post-judgment proceedings, Chase learned that in January of 2014, Winget revoked the Winget Trust.

Following the revocation, in early 2015, Winget filed an action for declaratory relief, 15-13469, seeking a declaration that Chase has no further recourse against Winget, including assets that were once part of the Winget Trust. Chase filed a counterclaim, asserting several claims which essentially boil down to the contention that Winget's revocation of the Winget Trust was a fraudulent transfer or conveyance. Because Chase's counterclaim was the functional equivalent of post-judgment proceedings in the 2008 case, the Court consolidated the 2015 and 2008 cases and directed all filings under the 2008 case. (Doc. 686). In response to Chase's counterclaims, Winget demanded a jury. (Doc. 691).

### B.

The Guaranty contains an explicit jury waiver:

SECTION 19. GOVERNING LAW; SUBMISSION TO JURISDICTION; WAIVER OF JURY TRIAL. … THE GUARANTOR, AND THE ADMINISTRATIVE AGENT AND THE LENDERS ACCEPTING THIS GUARANTY, HEREBY IRREVOCABLY WAIVES ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THE GUARANTY OR THE TRANSACTIONS CONTEMPLATED HEREBY.

In 2009, Winget and Winget Trust demanded a jury on Chase's claims to enforce the Guaranty. (Doc. 41 at 30.) Chase moved to strike the jury demand based on the unambiguous waiver. (Doc. 44.) Winget responded that the jury waiver was unenforceable, relying in part on Winget's position that the Winget Trust and Winget had coextensive liability under Section 3 of the Guaranty. (Doc. 45 at 4–6.) The Court rejected this argument, recognizing that "[b]y virtue of [S]ection 19 of the Guaranty, Defendants clearly, knowingly, and voluntarily waived their right to a jury trial." (Doc. 48 at p. 10.[2]

In the present posture of the case, noted above, Chase is pursuing claims against Winget due to Winget's revocation of the Winget Trust, an action which has prevented Chase from collecting on the judgment against the Winget Trust.

### III.  Discussion

#### A.

Chase says that the Court's 2009 decision upholding the waiver still applies. All the factors supporting enforcement of a jury waiver are present here. Winget—an experienced businessman who was represented by counsel in arm's-length negotiations—was presented with an explicit waiver (set out in capital letters) for

---

[2]Winget did not seek review by the Sixth Circuit of this issue in connection with his cross-appeal related to the enforcement of the Guaranty.

valuable consideration (the amendment to the credit agreement that allowed a half billion dollar credit facility to remain in place). Chase also says that its counterclaim arise out of and relate to the Guaranty and are therefore subject to the valid waiver.

Winget says that Chase's claims have nothing to do with the Guaranty because they do not depend on any term in the Guaranty and can be resolved without reference to the Guaranty.

B.

The Guaranty includes a broad jury waiver under which the parties irrevocably waived "any and all right to trial by jury in any legal proceeding arising out of or relating to this Guaranty or the transactions contemplated hereby." (Doc. 1-3 at 9.) Winget's argument that Chase's counterclaims do not encompass the waiver because the claims "are statutory and [tortious] in nature" and do not depend on the Guaranty rings hollow.

By contrast, Chase's position is well taken. Chase's counterclaims unequivocally arise out of and relate to the Guaranty. The allegations in Chase's counterclaims detail this. Specifically, Chase alleged that "Winget and the Trust entered into [the Guaranty]" (Doc. 688 at ¶ 12), and that "[t]he transfer of assets out of the Trust … impaired the collateral that was the subject of the Guaranty." Id. at ¶¶ 12, 30. Chase specifically referred to this action as underlying the counterclaims, explaining that Chase had "commenced proceedings to enforce the Guaranty," and referring to the ruling that "Winget and the Trust are liable to Chase … under the terms of the Credit Agreement and the Guaranty" and that "Chase's recourse against the Trust is not limited by Section 3 of the Guaranty." Id. at ¶¶ 20, 22

Moreover, after denying Winget's motion to dismiss Chase's counterclaims, the

4

Court consolidated the counterclaims into this action on the basis that they are "the functional equivalent of post-judgment proceedings." (Doc. 686 at 2). As such, the Court has already indicated that Chase's counterclaims are part of the litigation over the Guaranty.

C.

The finding that the jury waiver extends to Chase's counterclaims is not novel. Courts have held that contractual jury waivers extend to statutory and tort claims that, like those here, would not exist were it not for the contractual relationship between the parties. For example, in Raceday Center, LLC v. RL BB Financial, LLC, 2012 WL 12810505 (E.D. Tenn. Aug. 16, 2012), a group of loan guarantors argued that their tort claims against the lending bank did not "arise out of" the note and associated loan documents, and were therefore not within the scope of the documents' jury waiver clauses. This district court rejected this argument as "flatly wrong" because "[a]bsent the notes and loan documents, the torts as described … would not —could not—have occurred." Id. Notably, the lending bank asserted fraudulent conveyance claims against the guarantor and the guarantor's spouse. The guarantor and spouse contended that the claims did not arise out of the loan documents. The district court disagreed as to the guarantor, explaining:

> Unlike [the spouse], the [guarantor] was a signatory to a continuing guaranty. Taking as true [the lending bank's] allegations . . . he conveyed his interest in the real property in an effort to hinder or defeat [the lending bank's] efforts to collect on any judgment it might obtain against him on his guaranty. To that extent, his fraudulent transfer arose out of the guaranty.[3]

---

[3]The district court ultimately did not enforce the jury trial waiver against the guarantor because it held the waiver could not be enforced against the non-signatory

5

Raceday Center, 2016 WL at * 4.

The same reasoning applies here. The fact that, as a result of Winget's actions, Chase has been forced to seek collection of the Winget Trust's obligations under the Guaranty through fraudulent conveyance and other counterclaims does not change the nature of this litigation. Chase's claims plainly arise out of and are related to the Guaranty and the transactions contemplated by the Guaranty, including the possibility that Winget might default on his obligation. Were it not for the Guaranty, Chase would have had no claim against the Winget Trust, no resulting money judgment, and no counterclaims to pursue in aid of execution. In short, the jury waiver applies to Chase's counterclaims.

In addition to the court in Raceday Center, other courts have held that "[j]ury trial waivers in a contract are to be construed broadly to encompass both contract claims and related tort claims where the 'causes of action would not exist were it not for the relationship between the parties.'" Webster Chrysler Jeep, Inc. v. Chrysler Holding LLC, 2012 WL 1113684, at *6 (W.D.N.Y. Mar. 30, 2012) (quoting In re Actrade Fin. Techs. Ltd., 2007 WL 1791687 (Bankr. S.D.N.Y. June 20, 2007)) (franchisee's claims of racially discriminatory and retaliatory conduct in violation of Equal Credit Opportunity Act and state common law governed by jury waiver provision in franchise agreement). In SBAV LP v. Porter Bancorp, Inc., 2014 WL 1922874, at *2 (W.D. Ky. May 14, 2014), for example, the district court recognized that "a broad waiver of trial by jury applies to

---

spouse. The district court made clear that it was not enforcing the waiver for the sole reason of avoiding any possibility of inconsistent verdicts. That concern is not present here because Winget signed the Guaranty.

non-contractual claims" in determining that an investor's statutory and tort claims were within the scope of a contractual jury waiver. The district court explained that the waiver provision's use of the phrase "arising out of or relating to" applied to both claims involving the investment contract itself as well as statutory claims concerning the investment more generally. Id. The district court also said that "had the parties intended to include only breach of contract claims in the waiver, they could have used express language to that effect." Id. Imposing a more narrow reading would have "ignore[d] the extent of the waiver as agreed to by the parties and articulated in the contract." Id.

While Winget is correct that Chase's counterclaims are of a type for which a jury is available, all of Chase's counterclaims stem directly from its status as a creditor of the Winget Trust, a status that was created by and that would not exist without the Guaranty. As such, the jury waiver contained in the Guaranty applies to Chase's

counterclaims.

SO ORDERED.

                                                                     S/Avern Cohn  
                                                                     AVERN COHN  
                                                                     UNITED STATES DISTRICT JUDGE

Dated: December 7, 2017  
       Detroit, Michigan