UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JPMORGAN CHASE BANK, N.A.,

    Plaintiff/Counter-Defendant,

v.

LARRY J. WINGET and the
LARRY J. WINGET LIVING TRUST,

    Defendants/Counter-Plaintiffs.
_____/

Case No. 08-13845

HON. AVERN COHN

## MEMORANDUM AND ORDER GRANTING CHASE'S MOTION FOR COSTS AND EXPENSES[1] (Doc. 709)[2]

### I. Introduction

This is a commercial dispute. J. P. Morgan Chase (Chase) is the administrative agent for a group of lenders that extended credit to Venture Holdings Company, LLC (Venture) under a credit agreement. In 2008, Chase sued Larry J. Winget (Winget) and the Larry J. Winget Living Trust (Winget Trust) to enforce a Guaranty and two Pledge Agreements entered into by Winget and signed by Winget and the Winget Trust in 2002, guaranteeing the obligations of Venture. After years of litigation and multiple appeals, on July 28, 2015, the Court entered an Amended Judgment in favor of Chase and against Winget and the Winget Trust that enforced the Guaranty and Pledge Agreements against Winget and the Winget Trust. Specifically, the judgment against

---

[1] Although titled as a motion for "costs and expenses," the Court prefers to use the term expenses, which represents attorney and legal professional fees and out of pocket expenses.

[2] Upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

the Winget Trust was in the amount of $425,113.115.59. The judgment against against Winget was limited to $50 million. (Doc. 568). The Court also issued an order awarding Chase $11,154,874.65 in attorney fees and expenses (Fee Order) associated with its efforts to enforce the Guaranty and Pledge Agreements through May 31, 2015. (Doc. 671). As will be explained, Winget and the Winget Trust appealed the Amended Judgment and Fee Order. The appeals were resolved in Chase's favor.

Before the Court is Chase's second motion for expenses incurred since the issuance of the Fee Order in the amount of $2,000,316.24. Chase says that this amount represents the services of Sidley Austin LLP and Dickinson Wright PLLC between June 1, 2015 and November 30, 2016. For the reasons that follow, the motion is GRANTED.

## II. Background

In the Amended Judgment, the Court determined that Winget and the Trust are liable to Chase for the attorneys' fees and related expenses incurred in pursuing Chase's rights under the Guaranty signed by Winget and the Trust. (Doc. 568 at 3; see also Doc. 487-1 at 8–9 (Guaranty).)

Chase previously moved for an award of expenses under Section 17 of the Guaranty incurred through May 31, 2015. (Doc. 563). The Court granted the motion in part and awarded Chase $11,154,874.65 in expenses (Fee Order) associated with its efforts to enforce the Guaranty and Pledge Agreements through May 31, 2015. (Doc. 671). Winget and the Winget Trust appealed the Fee Order.

Winget then moved for partial satisfaction of the Amended Judgment, contending that his payment of $50 million satisfied the Fee Order (Doc. 672). The

2

Court denied the motion (Satisfaction Order). (Doc. 683). Winget and the Winget Trust appealed both the Satisfaction Order and the Fee Order. The Court stayed proceedings on Chase's motion for expenses pending the outcome of the appeal. (Doc. 732).

The Sixth Circuit affirmed, finding that the Court had properly interpreted the language of the Guaranty to hold both Winget and the Winget Trust responsible for the full payment of costs and expenses correctly held there had been no "partial satisfaction" of the award of costs and expenses, and properly determined that the doctrine of res judicata did not apply. Chase v. Winget, No. 16-2130 (6th Cir. Jul. 21, 2017) (Doc. 735) In light of the Sixth Circuit's ruling and mandate, on Chase's motion, the Court lifted the stay. (Doc. 752).

### III. Parties' Arguments

Winget contends:

1. Chase should not be awarded expenses related to the prosecution of its fraudulent transfer claim

2. Chase's attorneys' hourly rates grossly exceed the prevailing market rate and should be significantly reduced

3. Chase's attorneys' hours are excessive and reflect duplicative work and over-staffing

4. Chase's attorney and paralegal rates are excessive and inappropriate to the extent they charge professional rates for administrative tasks

5. Chase's fees should further be reduced to exclude excessive, inappropriate or otherwise unrecoverable "expenses," including research fees, travel costs, fees associated with inappropriate collection actions taken by Chase, vague entries, redacted invoices

Chase contends:

1. It is entitled to expenses incurred in collecting the guaranteed obligations from the Winget Trust, including the fraudulent transfer claim

3

2. The Court has already determined that the rates incurred and paid by Chase are reasonable

3. Winget and the Winget Trust's argument that Chase's attorneys' hours reflect duplicative work and overstaffing is unsupported

4. Chase is entitled to recover the time spent by paralegals

5. Winget's other proposed reductions are without merit

IV. Discussion

A. Expenses Related to the Fraudulent Transfer Action

Section 17 of the Guaranty and the Amended Final Judgment entitle Chase to recover the expenses it incurred in connection with the fraudulent conveyance counterclaims Chase filed in response to Winget's 2015 declaratory judgment action. Winget claims that the fraudulent transfer action is "not an attempt to collect any part of the 'Guaranteed Obligations' from Winget under the Guaranty." (Doc. 713 at 4.) Winget argues that because Larry Winget is purportedly a "non-debtor" in the context of Chase's fraudulent transfer claim, "Chase has no right under § 17 of the Guaranty to recover from Winget personally." Id.

This Court has already said that the fraudulent transfer action is "the functional equivalent of post-judgment proceedings in the 2008 case," and has consolidated the proceedings. (Order Consolidating Cases at 2, Winget v. JPMorgan Chase Bank, No. 15-cv-13469 (E.D. Mich. Aug. 1, 2016), Doc. 24.). The Court reaffirmed this ruling when it granted Chase's motion to strike Winget's jury demand on Chase's counterclaims. (Doc. 770). No further discussion is necessary.

To the extent Winget suggests that any award of expenses related to the fraudulent transfer claims is "premature" because "Chase has not yet prevailed," he is

4

mistaken. Chase has prevailed in obtaining a $425 million judgment against the Winget Trust, and Chase's claims are the necessary consequence of Winget's efforts to cause the Winget Trust to evade its obligations under the Amended Judgment. Moreover, Chase filed these claims as compulsory counterclaims in Larry Winget's 2015 declaratory judgment action. (Answer and Counterclaims, Winget, 15-cv-13469, Doc. 11.) Winget cannot now balk at paying expenses that were necessitated by his own filings.

B. The Court Has Already Determined that the Rates are Reasonable

Winget previously scrutinized every line of Chase's initial petition for expenses and put forward multiple objections over the course of extensive briefing. See generally, Doc. 535; Doc. 540; Doc. 548; Doc. 569; Doc. 603; Doc. 665. Notably, Winget made no mention of the reasonableness of the rates charged by Chase's attorneys. Indeed, more than a year before it awarded Chase its fees, the Court stated on the record, "I don't think [Winget] is challenging, or intends to challenge, the hourly rates." (Doc. 541, Tr. of Sept. 10, 2014 Hrg. at 32:21–22.) Winget's counsel did not dispute the Court's statement at the time or anytime thereafter, and it raised no challenge to the hourly rates in any of its four subsequent briefs in opposition to Chase's petition. See Docs. 548, 569, 603, 665. As such, the Court's Fee Order was based on hourly rates which the Court found reasonable. See Doc. 671 at 6–11 (discussing the reasonableness of Chase's expenses of collection). This holding is the law of the case. Moreover, the Court has again reviewed the rates and continues to find them reasonable as explained in Chase's reply.

C. Chase's Expenses Do Not Reflect Duplicative Work or Overstaffing

5

In support of the argument that Chase's expenses are excessive, Winget provides only a single example of purported "excessive" billing in this case, and it reveals nothing of the sort. Specifically, Winget points the expenses incurred in preparing Chase's initial motion for expenses and the supporting brief. (Doc. 713 at 11.) Winget complains that drafting this motion and brief took a total of 31.50 hours, remarking that the motion was only three pages long and the brief was only five pages long. Id. But Winget ignores the fact that the motion was accompanied by more than 700 pages of billing records that had to be reviewed and incorporated into Chase's written motion. See generally Doc. 593 and exhibits. Chase's initial motion requested more than $12 million in fees. Given the amount at issue, it was not unreasonable for Chase to have expended 31.50 hours in preparing its initial motion.

### D. Chase Is Entitled to Recover the Time Spent by Paralegals

It is well established that Chase may recover paralegal time. See, e.g., Fharmacy Records v. Nassar, 729 F. Supp. 2d 865, 884 (E.D. Mich. 2010) ("A reasonable attorney fee also includes reasonable compensation for paralegals and law clerks."). Winget says that Chase billed for "purely clerical and secretarial tasks being performed by paralegals and associates." Winget's examples primarily involve courtesy copies. The Court's standing orders require these copies include key cases with the relevant portions highlighted and notes about their holdings. This is legal work.

### E. Winget's Other Proposed Reductions Are Without Merit

Winget also seeks a multitude of reductions to the expenses Chase incurred in attempting to collect on the guaranteed obligations. None of the proposed reductions are warranted. First, as to time spent on research, which Winget did not challenge

6

before, Winget cites an unpublished decision issued more than a year before the Court's prior Fee Order, Smith v. Service Master Corp., 592 F. App'x 363 (6th Cir. 2014). In Smith, the panel considered whether a law firm seeking a statutory fee award was entitled to fees for electronic research. The panel determined that in that context, a court should consider whether the firm seeking statutory fees pays a bulk rate for research or charges its client for the costs of research actually incurred. Here, Chase explained that its research expenses were passed directly to Chase. As such, Chase is entitled to recover them.

Winget next asks the Court to exclude modest travel and lodging expenses. (Doc. 713 at p. 17) These expenses were for travel to and from four hearings total approximately $5,500 of the more than $2 million in requested costs and expenses. See Doc. 709-4 at 7–8, 13–14, 22, 25–27. Winget recognizes that travel time is compensable, and does not suggest that the expense of the attorneys' flights or lodging was unreasonable. Instead, Winget says that Chase should not have sent lead counsel to these hearings and instead relied on local counsel.

Winget's argument lacks merit. The travel expenses of counsel are reasonable and compensable. Chase is entitled to its choice of attorney. Robert Bosch LLC v. A.B.S. Power Brake, Inc., 2011 WL 3758577, at *4 (E.D. Mich. Aug. 25, 2011) (citing Hensley v. Eckerhart, 461 U.S. 424, 434 n.9 (1983)) (awarding travel expenses for out-of-town counsel). Attorney Ducayet, who attended the hearings in question, is primarily responsible for Chase's litigation strategy, and Sidley has been involved in Venture-related matters for more than fifteen years. Moreover, attorneys Ducayet and Stead were responsible for drafting the papers at issue in the October 1, 2015 and July

7

27, 2016 hearings. It was reasonable for Chase to send the attorneys who drafted key briefs to argue before the Court.

Winget also argues that Chase is not entitled to seek expenses incurred in connection with garnishments and judgment liens against the Winget Trust in August 2015. Winget objected to Chase's garnishments and judgment liens, and filed motions seeking to have them removed or retracted. Eventually, the objections were resolved when agreed to send letters to each of the garnishee institutions restating that the garnishments sought to garnish only accounts held in the name of the Winget Trust, and not of Larry Winget. See Doc. 623. With respect to the judgment liens, Chase agreed that it would have the last four digits of the taxpayer identification number on each notice of judgment lien against the Winget Trust that has been recorded with each register of deeds redacted so that no portion of the tax identification number appears on each recorded instrument.

The fact that Chase agreed to these accommodations in order to allow the parties and the Court to focus on other aspects of the litigation does not excuse Winget from its obligations under Section 17 does not make the liens or garnishments themselves improper or the expenses associated with them unrecoverable. Chase is entitled to these expenses.

Finally, Winget identifies several entries that he says are insufficiently detailed. As in its initial petition, Chase's billing entries identify the date the time was billed, the timekeeper, the hours billed, and the specific task completed. This is in accordance with Sixth Circuit law. See Imwalle v. Reliance Med. Prods., Inc., 515 F.3d 531, 553–54 (6th Cir. 2008). Winget also says that Chase has waived attorney-client and

8

work-product privilege over protected material in its billing records. As Winget acknowledges, the Sixth Circuit has not addressed waiver of privilege in the context of redacted fee petitions. Courts in this Circuit often allow redaction of privileged material in fee petitions provided one is able assess the reasonableness of the requested fees. See, e.g., Compass Homes, Inc. v. Heritage Custom Homes, LLC, 2015 WL 4639654, at *9 (S.D. Ohio Aug. 3, 2015) ("Most of the redacted entries are still sufficiently detailed and of probative value."). Although Chase has redacted certain time entries to protect privileged material, those redacted entries still provide a sufficient description of the tasks completed.

## V. Conclusion

In the end, Exhibit A to Chase's motion is a sworn declaration with supporting tables showing costs and expenses billed to Chase by the law firm of Sidley Austin LLP related to efforts to collect the Guaranteed Obligations from Winget and the Winget Trust and in prosecuting any action against Winget and the Winget Trust with respect to their obligations under the Guaranty between June 1, 2015 and November 30, 2016. (See Ex. A, Decl. of James W. Ducayet.) The total amount billed to Chase by Sidley Austin LLP is $1,848,771.25 in attorney fees and $37,821.25 in expenses, for a total of $1,886,592.50.

Exhibit B to Chase's motion is a sworn declaration with supporting tables showing expenses billed to Chase by the law firm of Dickinson Wright PLLC related to efforts to collect the Guaranteed Obligations from Winget and the Winget Trust and in prosecuting an action against Winget and the Winget Trust with respect to their obligations under the Guaranty between June 1, 2015 and November 30, 2016. (See

Ex. B, Decl. of William T. Burgess.)  The total amount billed to Chase by Dickinson Wright PLLC is $103,807.00 in attorney fees and $9,916.74 in expenses, for a total of $113,723.74.

The total amount of recoverable expenses based on Exhibits A and B combined is $2,000,316.24.  Chase is awarded this amount.[3]

SO ORDERED.

                                                S/Avern Cohn
                                                AVERN COHN
                                                UNITED STATES DISTRICT JUDGE

Dated: January 9, 2018
     Detroit, Michigan

---

[3]The Court recognizes that Chase's efforts to collect the Guaranteed Obligations are ongoing.