UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JPMORGAN CHASE BANK, N.A.,

    Plaintiff/Counter-Defendant,

v.

LARRY J. WINGET and the
LARRY J. WINGET LIVING TRUST,

    Defendants/Counter-Plaintiffs.
_____/

Case No. 08-13845

HON. AVERN COHN

## MEMORANDUM AND ORDER
## GRANTING CHASE'S MOTION TO STRIKE JURY DEMAND (Doc. 782)[1]

I.

This is a commercial dispute. J. P. Morgan Chase (Chase) is the administrative agent for a group of lenders that extended credit to Venture Holdings Company, LLC (Venture) under a credit agreement. In 2008, Chase sued Larry J. Winget (Winget) and the Larry J. Winget Living Trust (Winget Trust) to enforce a Guaranty and two (2) Pledge Agreements entered into by Winget and signed by Winget and the Winget Trust in 2002, guaranteeing the obligations of Venture. After years of litigation and multiple appeals, on July 28, 2015, the Court entered an Amended Judgment in favor of Chase and against Winget and the Winget Trust that enforced the Guaranty and Pledge Agreements against Winget and the Winget Trust. Specifically, the judgment against the Winget Trust was in the amount of $425,113.115.59. The judgment against against Winget was limited to $50 million. (Doc. 568). Because Winget later satisfied his

---

[1]Upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

portion of the judgment, Chase began collection efforts against the Winget Trust. As will be explained, Winget revoked the Winget Trust and then filed a separate action seeking a declaration that the Winget Trust had no remaining obligations to Chase. See Case No. 15-13469. Chase filed counterclaims, essentially asserting that the revocation was fraudulent. The Court consolidated the declaratory action and Chase's counterclaims with this case. (Doc. 686). Winget then demanded a jury on Chase's counterclaims. (Doc. 691 at p. 26). Chase moved to strike Winget's jury demand based on a jury waiver in the Guaranty. The Court agreed with Chase and struck the jury demand. (Doc. 770). Chase then filed amended counterclaims to clarify the remedies it seeks. (Doc. 771). Winget filed an amended answer and again demanded a jury. (Doc. 772).

Before the Court is Chase's motion to strike the jury demand on the grounds that the waiver still controls.[2] (Doc. 785). For the reasons that follow, the motion will be granted.

II.

In October 2002, Winget and the Winget Trust executed the Guaranty which contained an explicit provision in which they "IRREVOCABLY WAIVE[D] ANY AND ALL RIGHT TO TRIAL BY JURY IN ANY LEGAL PROCEEDING ARISING OUT OF OR RELATING TO THE GUARANTY." (Dkt. 1-3 at 9 (capitalization in original).)

---

[2]This is Winget's third time demanding a jury and Chase's third motion to strike. In 2009, Winget demanded a jury on Chase's claims to enforce the Guaranty. See Doc. 41 at p. 30. Chase moved to strike the demand based on the waiver. (Doc. 44). Winget argued the jury waiver was unenforceable. The Court rejected Winget's argument and struck the demand. (Doc. 48).

The Court has already found this waiver valid and applicable to Chase's counterclaims. Indeed, this Court has said that "Chase's [fraudulent transfer] counterclaims unequivocally arise out of and relate to the Guaranty" and are therefore subject to this waiver. (Doc. 770 at p. 4.) This is so because "Chase's counterclaims stem directly from its status as a creditor of the Winget Trust, a status that was created by and that would not exist without the Guaranty." Id. at p. 7.

Winget, however, says that its jury demand is valid because of recent events in the case which now provide Winget with the right to a jury trial. Chase says that the recent developments do not affects the Court's original conclusion that its fraudulent transfer claims are subject to the Guaranty's jury waiver. The Court agrees with Chase.

First, Winget says that the "reinstatement" of the Winget Trust more than four years after the initial revocation changes the nature of Chase's counterclaims. (Doc. 784 at p. 3; see also Doc. 777 (explaining that the reinstatement is "[i]n compliance" with the Court's order granting Chase's Motion for Judgment on the Pleadings).). This argument does not carry the day.

As Chase points out, it does not concede that Winget's attempt to "resurrect" a trust several years after its revocation was either legally effective or permissible. It also notes that "[m]uch has occurred between the initial revocation on January 1, 2014 and the supposed 'reinstatement' of the dissolved Trust on February 26, 2018. Assets have been transferred. Businesses have been reorganized. Millions of dollars in distributions have been made to Mr. Winget." (Doc. 782 at p. 2-3). Thus, Winget's contention that he has returned the Winget Trust to the status as of January 2014 does not necessarily absolve Winget of any responsibility for fraudulently transferring the assets in the first

3

instance.

Further, Winget's argument that the reinstatement would negate the jury waiver is based upon a misreading of the law that the Court has already considered and rejected. Winget cites <u>Foodland Distributors v. Al-Naimi</u>, 220 Mich. App. 453 (1996) for the proposition that money damages against the first transferee are not available when the property is returned to the judgment debtor in toto except to the extent the assets have been diminished in value. Putting aside that the portion Winget relies on is in a concurring opinion, <u>Foodland</u> is distinguishable. In <u>Foodland,</u> the Michigan Court of Appeals was evaluating a different statute—the Michigan Uniform Fraudulent Conveyance Act—which did not include the remedial provisions set forth in the Michigan Uniform Fraudulent Transfer Act (MUFTA). Unlike the remedial provisions of the version of the statute at issue in <u>Foodland</u>, section 8 of the MUFTA permits a creditor to "recover a judgment for the value of the asset transferred . . . or the amount necessary to satisfy the creditor's claim, whichever is less" against "[t]he first transferee of the asset or the person for whose benefit the transfer was made." M.C.L. § 566.38. In granting Chase's motion to amend its counterclaims, the Court has acknowledged that the statute allows a request for monetary relief.

Winget also argues, without citation to any authority, that any claim against Winget for diminution in the value of assets "should be tried to a jury." (Doc. 784 at p. 5.). This contention lacks merit. The availability of certain remedies does not change the fact that Chase is pursuing fraudulent transfer claims based on "its status as a creditor of the Winget Trust, a status that was created by and that would not exist without the Guaranty." (Dkt. 770 at 7.). Chase's fraudulent transfer claims clearly arise

4

out of and relate to the Guaranty.

Winget also argues that Chase's amendment to explicitly seek all remedies available under MUFTA—including a money judgment against the first transferee as permitted by statute—somehow changed the fundamental nature of its counterclaims. The Court disagrees. Although Chase's amended counterclaims identified specific forms of relief sought under MUFTA, the substantive allegations of the counterclaims are the same. The original counterclaims and the amended counterclaims share the same parties, the same factual bases, and the same legal theories. The Court has already determined that the original counterclaims are subject to the Guaranty's unambiguous jury waiver. So too are the amended counterclaims.

In sum, Chase's amendment did not change the landscape of the dispute. Chase only clarified the remedies it is seeking. The amended counterclaims, like the original counterclaims, "arise out of and are related to the Guaranty and the transactions contemplated by the Guaranty." (Doc. 770 at p. 6). As such, the waiver continues to apply.

III.

For the reasons stated above, Chase's motion to strike jury demand is GRANTED.

SO ORDERED.

                                            S/Avern Cohn
                                            AVERN COHN
                                            UNITED STATES DISTRICT JUDGE

Dated: 5/18/2018
      Detroit, Michigan