UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JPMORGAN CHASE BANK, N.A.,

    Plaintiff/Counter-Defendant,                                Case No. 08-13845

v.

                                                          HON. AVERN COHN

LARRY J. WINGET and the
LARRY J. WINGET LIVING TRUST,

    Defendants/Counter-Plaintiffs.

_____/

## ORDER DENYING WINGET'S MOTION TO COMPEL (Doc. 827)[1]

I.

This is a commercial dispute which resists closure. J. P. Morgan Chase (Chase) is the administrative agent for a group of lenders that extended credit to Venture Holdings Company, LLC (Venture) under a credit agreement. In 2008, Chase sued Larry J. Winget (Winget) and the Larry J. Winget Living Trust (Winget Trust) to enforce a Guaranty and two Pledge Agreements entered into by Winget and signed by Winget and the Winget Trust in 2002, guaranteeing the obligations of Venture. After years of litigation and multiple appeals, on July 28, 2015, the Court entered an Amended Judgment in favor of Chase and against Winget and the Winget Trust that enforced the Guaranty and Pledge Agreements against Winget and the Winget Trust. Specifically, the judgment against the Winget Trust was in the amount of $425,113.115.59. The judgment against against Winget was limited to $50 million. (Doc. 568). Because Winget later satisfied his portion of the judgment, Chase began collection efforts against the Winget Trust. Winget then

---

[1]Upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

revoked the Winget Trust and then filed a separate action seeking a declaration that the Winget Trust had no remaining obligations to Chase. Chase filed several counterclaims, asserting that the revocation was fraudulent. Winget demanded a jury on the counterclaims. The Court later consolidated the declaratory action and Chase's counterclaims with this case. The Court has ruled that the transfer amounted to constructive fraud. (Doc. 732). Since that time, Chase has been pursuing collection efforts against the Winget Trust and discovery as to the assets in the Winget Trust.

Before the Court is Winget's Motion to Compel the deposition of Phillip Martin. (Doc. 827). For the reasons that follow, the motion will be denied.

II.

Under Federal Rule of Civil Procedure 26(b)(1), discovery is permitted of "any nonprivileged matter that is relevant to any party's claim or defense." Rule 26(b) is to be liberally interpreted to permit wide-ranging discovery of information, even if that information is not ultimately admitted at trial. See also Fed. R. Civ. P. 26(b)(1) ("[r]elevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."). To determine the proper scope of discovery, a district court should balance a party's "right to discovery with the need to prevent 'fishing expeditions.' " Conti v. Am. Axle & Mfg., 326 F. App'x 900, at *907 (6th Cir. May 22, 2009 (quoting Bush v. Dictaphone Corp., 161 F.3d 363, 367 (6th Cir. 1998)).

III.

Winget seeks to compel the deposition of Phillip Martin, the Chase employee who is responsible for the defaulted loan which was the subject of the Guaranty.

2

Chase says that despite the fact that Martin has already been deposed twice in the case and fact discovery is closed, it does not oppose making Martin available for a third deposition regarding relevant topics. To that end, Chase agreed to make Martin available for deposition should Winget seek discovery on the interest calculations underlying Chase's Motion to Amend Judgment because the issue has a bearing on the amount of damages Chase may seek at trial. Chase remains willing to have Martin testify on this topic.

Winget, however, asserts that Martin could provide testimony "potentially relevant to both Winget's mindset when he revoked his trust, and to the balancing of the equities with regard to the alleged harm caused to Chase by that revocation." (Doc. 827 at 6.) Winget says that there is "a strong possibility" that Martin has information relevant to determining "whether ... Winget acted with the intent to defraud Chase when he revoked his Trust." (Doc. 827 at 8.)

IV.

Winget's motion lacks merit. First, the Court has already determined that Winget is liable for constructive fraudulent transfer, as to which intent is not an element. Thus, the question at trial will be the amount of damages Chase suffered due to the fraudulent transfer. Winget's state of mind is irrelevant.

Second, even if Winget's intent were relevant, Martin's work on a credit file does not provide Martin with information as to Winget's thinking in revoking the Trust in 2014. Winget's description of Martin as the "point man" in Chase's relationship to the Winget Trust does not give Martin knowledge of Winget's state of mind when he engaged in the 2014 transactions. Indeed, Martin (and the Court) did not even learn of Winget's 2014

3

revocation until a year and half later, in July 2015, and only then through counsel. Martin has had no direct interaction or contact with Winget relating to those issues or anything else. To the extent the issue of Winget's "intent" is pertinent, the appropriate witness is Winget.

Winget also appears to contend that Martin may have information that would support an equitable adjustment to any potential damages award against Winget. Winget suggests this information might relate to the "actions or inactions of Chase and the lending group" (Doc. 827 at 10). Winget, however, has not identified what "actions or inactions" might support such equitable adjustments. Winget's conclusory assertions fail to show that such information is relevant to any defense Winget may seek to assert, much less whether Martin might possess that information

V.

For the reasons stated above, Winget's motion is DENIED.

SO ORDERED.

<u>S/Avern Cohn</u>
AVERN COHN
UNITED STATES DISTRICT JUDGE

Dated: 7/26/2018
    Detroit, Michigan