UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALTER DOMUS, LLC,

                Plaintiff/Counter-Defendant,           Case Number 08-13845

v.                                                  Honorable David M. Lawson

LARRY J. WINGET and the LARRY J.
WINGET LIVING TRUST,

                Defendants/Counter-Plaintiffs.

_____/

## OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTIONS TO HOLD DEFENDANT LARRY J. WINGET IN CIVIL CONTEMPT OF COURT

Plaintiff Alter Domus, LLC (the Agent), an agent for a group of creditors seeking to collect an unsatisfied judgment against defendant Larry J. Winget Living Trust, has filed a motion asking the Court to hold defendant Larry J. Winget in contempt for filing a probate petition in state court. Winget purportedly filed the petition to seek clarification on certain trust administration issues allegedly created by the Sixth Circuit's July 1, 2022 opinion filed in this case. However, in the petition, Winget also asks the probate court to enter an order nullifying 19 years of contributions he made to the Winget Trust. The Agent argues that, by filing the petition, Winget violated a September 2019 order issued by the Court that enjoined Winget from disposing of or transferring property out of the Trust (the Status Quo Order). The Court agrees with the plaintiff in one respect: by asking the probate court to nullify the contributions to the Trust, Winget violated the Court's Status Quo Order, which prevented Winget from "selling, transferring, assigning, encumbering, destroying, concealing, or otherwise disposing of the assets owned, titled in the name of, or otherwise held by the Trust or its trustee." He did not violate that order, however, by seeking clarification of certain trust administration issues from the probate court. As a contempt sanction, the plaintiff asks for fines, an additional injunction, and attorney's fees. The Court does not believe

all those remedies are appropriate.  Winget is in contempt of the Status Quo Order, and he may purge that contempt by withdrawing the appeal of the probate court's order dismissing his petition. The plaintiff will be awarded attorney's fees for having to bring this contempt motion.

## I.

The parties are familiar with the long and complex history of this litigation.  A brief summary may be helpful here, however, to provide context for the entry of the Status Quo Order that defendant Winget is accused of violating.  For more details, read *JPMorgan Chase Bank, N.A. v. Winget*, No. 08-13845, 2021 WL 37479 (E.D. Mich. Jan. 5, 2021), *aff'd in part, rev'd in part*, No. 21-1568, 2022 WL 2389287 (6th Cir. July 1, 2022), *cert. denied sub nom. Winget v. Alter Domus, LLC*, 143 S. Ct. 748 (Mem) (U.S. Jan. 23, 2023).

Larry Winget's holding company, Venture, obtained a loan from various lenders, which both he and his trust, defendant Larry J. Winget Living Trust, guaranteed.  Venture filed for bankruptcy, eventually triggering the guarantors' obligation to pay.

The administrative agent for the lenders — then JPMorgan Chase (the "Agent") — sued both Winget and the Trust to recover.  (In early 2021, Chase entered an Agency Transfer Agreement with Alter Domus, LLC, that made Alter Domus the successor administrative agent for the lenders in this case.  *See* ECF Nos. 989-90.)  Winget paid $50 million and no longer owes the bank any money in his personal capacity.  But the Trust is liable for the rest of the debt, which now has swelled to more than $775 million.

In 2014, nearly six years after the Agent sued to recover the debt, Winget revoked the Trust and removed all trust assets.  According to Winget, the trust instrument that created the Trust gave him the right to revoke or amend the Trust by his act alone.  Winget did not disclose the revocation for more than a year.  During this time, the Court entered an amended final judgment establishing

that the Trust owed the Agent nearly half-a-billion dollars under the guaranty agreement.  And the parties actively were litigating whether the Agent could attach the trust assets — which, unbeknownst to the Agent, no longer existed — to satisfy that debt.

Winget revealed the revocation when he sought a declaratory judgment that would establish that, given the revocation, the Agent had no further recourse against him or the assets that were once held in the Trust.  The Agent counter-claimed, arguing that the revocation was a constructively fraudulent transfer under the Michigan Uniform Fraudulent Transfer Act (MUFTA).  The Court agreed with the Agent and granted its motion for judgment on the pleadings.  Winget did not appeal that ruling.  Rather, he rescinded his revocation, retitling to the Trust all property that it held at the time of the revocation.

After Winget reinstated the Winget Trust, the Agent requested entry of Charging Orders with respect to membership interests in certain limited liability companies (LLCs) held by the Trust.  Winget and the Winget Trust responded, arguing among other things, that the Agent could not execute on the property held in the Trust because the Trust did not own the membership interests; rather, Winget actually owned them as settlor of the Trust.  The Court disagreed with Winget's argument, granted the motions, and entered the requested Charging Orders on August 15, 2019.  In connection with entry of the Charging Orders, the Court directed the Agent to focus its collection efforts on the assets held in the Winget Trust.  ECF No. 855.

Winget appealed entry of the Charging Orders.  He argued that because Winget "owned" all of the Winget Trust property, the Guaranty did not allow the Agent to attach that property through charging liens or otherwise.  That reasoning did not take root.  On November 7, 2019, the Sixth Circuit affirmed entry of the Charging Orders and rejected Winget's argument, explaining that "it doesn't matter who 'owns' the trust property," because "a party who has a contract with a

trust can recover from the property held by the trust." *JPMorgan Chase Bank, N.A. v. Winget*, 942 F.3d 748, 750 (6th Cir. 2019).  Thus, the Sixth Circuit held that Chase could recover against the Winget Trust from the property held by the Winget Trust.

After Winget reinstated the Trust, the Agent moved for a writ of execution on the corporate stock owned by the Trust and for an order preventing the transfer or dissipation of Trust assets. *See* ECF No. 863.  The motion requested entry of an order allowing the Agent to execute on the corporate stock owned by the Winget Trust in the following entities: Golf Course Corporation 1, Golf Course Development Co., Oakland Land Company, PIM Management Company, Venture Sales & Engineering Corp., and VIMCO Corporation (the "Trust corporations").  The motion further requested that the injunction prohibit Winget, the Trust, and their agents from "engaging in any non-ordinary course transfer, dissipation, encumbrance, or modification of Trust assets," including the "transfer of significant assets held by companies of which the Trust is a stockholder or member" or "any other action the effect of which would be to materially encumber or impact the value of the assets held by the Trust." *See* ECF No. 863, PageID.28733.  The Court's predecessor, the Honorable Avern Cohn, referred the motion to a Special Master, who determined that the Agent was entitled to a writ of execution and injunction.  Winget objected to the entry of an injunction, arguing among other reasons that Michigan's Limited Liability Company Act barred the Court from restricting any LLC activity.

Judge Cohn adopted the Special Master's Report and Recommendation and ordered the trustee of the Trust to "deliver to the District Court all stock certificates titled in the name of the Trust or its trustee" of the Trust corporations.  *See* ECF No. 915, PageID.29784 (the "Status Quo Order").  The Court ordered the Agent to submit to the Court, after considering the Trust's

reasonable objections, a proposed form of judicial sale. *Ibid.* Finally, the Court restrained Winget from transferring the Trust's assets, directing that:

> Larry J. Winget and the Larry J. Winget Living Trust, and anyone acting as their agents or on their behalf, are enjoined from selling, transferring, assigning, encumbering, destroying, concealing, or otherwise disposing of the assets owned, titled in the name of, or otherwise held by the Trust or its trustee outside of the ordinary course of business. For avoidance of doubt, this Order allows Larry J. Winget and the Larry J. Winget Living Trust to take such actions as are reasonable and necessary to the ongoing and continued operations of their businesses.

*Id.* at PageID.29784-85.

Winget appealed the injunction, but not the writ of execution. *See JPMorgan Chase Bank, N.A. v. Winget*, 801 F. App'x 962, 962 (6th Cir. 2020). Noting the "extremely broad authority" of Michigan courts to enforce their judgments, the Sixth Circuit concluded that the Court was well within its discretion to "enjoin actions contrary to its collection orders" in this matter. *Id.* at 963. The injunction remains in place today.

Meanwhile, the Agent sued Winget for unjust enrichment arising from his revocation of the Winget Trust. The Agent had learned that, before Winget rescinded his revocation of the Trust, the LLCs that had been held in the Trust distributed hundreds of millions of dollars in cash and promissory notes to Winget. Winget received the distributions and used a portion — $79 million — to pay taxes on the LLCs' income. *See* Special Master R&R, ECF No. 986, PageID.31893. The Agent moved for summary judgment and sought a constructive trust over all of the distributions. The Court granted the motion and imposed a constructive trust on the distributions — including $104,775,478 in cash and $150 million in promissory notes. On June 1, 2021, the Court entered a final judgment on the fraudulent-transfer claim and the unjust-enrichment claim. ECF No. 1017. Winget placed the cash distributions and promissory notes in escrow while he appealed both rulings.

On July 1, 2022, the Sixth Circuit issued an opinion affirming the Court's fraudulent transfer ruling and affirming its unjust enrichment ruling in part. Significantly, the court of appeals reasoned that Winget's right to revoke the Trust was not unlimited.

> As we explained in our prior opinion, trusts — both revocable and irrevocable — can enter binding contracts. A necessary consequence is that a trust's contractual obligation may affect the rights of third parties, like beneficiaries and settlors, even if they are not themselves parties to the contract. Here, the Trust guaranteed Venture's loan. So when Venture defaulted, the Trust had to pay Chase and could do so with the trust assets. That's when Chase's claim to the assets arose. At that time, Winget no longer had an unfettered right to the trust assets — at least not until Chase was repaid. And Winget could no longer revoke the Trust since doing so after Chase's claim arose would (and did) deplete the trust assets, preventing the Trust from fulfilling its obligation to Chase. In this way, Winget's right to revoke was limited by the Trust's obligation to Chase — an obligation Winget himself assumed as trustee.

*Winget*, 2022 WL 2389287, at *4. The court of appeals therefore agreed that Winget's revocation of the Trust constituted a fraudulent transfer executed to put the Trust's assets beyond the reach of the Agent. The Sixth Circuit likewise agreed that Winget was unjustly enriched by the LLC distributions he received during the revocation period, after he revoked the Trust but before he rescinded the revocation. *Id.* at *9. "This litigation may feel like the story that never ends," the court of appeals wrote in the conclusion of its July 1, 2022 opinion. "But for the sake of finality and the swift adjudication of justice — two bedrock principles of our judicial system — we hope this marks the final chapter." *Id.* at 11. Hope springs eternal in the human breast, but it sometimes is unrequited.

On September 29, 2022, Winget filed an action in Oakland County, Michigan probate court seeking "equitable relief to nullify contributions of new assets [Winget] made to the Trust years after 2003." Probate Pet., ECF No. 1032-3, PageID.32590. In the petition, Winget represents that the Sixth Circuit's July 2022 decision "retroactively converted the otherwise express revocable trust into an irrevocable one as of 2003 . . . when the Chase loan went into default." *Ibid.* He says

that he would not have placed new assets in the Trust if he had known that the Trust was irrevocable, explaining that he "never intended to transfer any property beyond his recall to the Trust or create even the potential of millions of dollars in federal gift tax on the property he never intended to gift." *Id.* at PageID.32591. Winget asked the probate court to do two things:

(1) "remedy the inequity" arising from his "contributing new assets into the Trust after the Chase loan but before the Sixth Circuit's 2022 opinion" by "nullify[ing] these post-2003 contributions to the Trust through trust reformation, modification, imposition of a constructive trust, and/or confirmation that Larry did not make an effective gift to the Trust," *ibid.*; and

(2) provide "instruction and construction of what the Sixth Circuit has deemed an irrevocable Trust which will impact his administration of the Trust," including clarifying (a) the extent to which his power of administration over the Trust is limited by the court of appeals' July 1, 2022 opinion, (b) his duty to communicate with qualified trust beneficiaries, (c) whether Winget remains "a Trust beneficiary holding the equitable interest in the Trust's assets and the Trustee holds only legal title," and (d) whether the Trust would be subject to creditors at Winget's death, *id.* at PageID.32607.

On October 20, 2022, Winget filed an amended probate petition in response to the Agent's present contempt motion. The amended petition includes significant revisions that focus on Winget's alleged need for

> instruction of important administration issues in light of the Sixth Circuit's 2022 ruling retroactively replacing (effective as of 2003) Larry's revocable will substitute Trust [*sic*] with an irrevocable Trust, including the fiduciary rights and obligations of: (1) Larry as Settlor; (2) the Trustee with respect to the administration of the Trust res as to the ten beneficiaries of the Trust; and (3) the beneficiaries' interest in the Trust res.

Am. Probate Pet., ECF No. 1052-1, PageID.33038-40. And it states that Winget does not seek "to set aside any orders duly entered by the federal district court with respect to any of the trust res."

- 7 -

*Id.* at PageID.33010.  However, the amended petition also includes a request that the probate court, "subject to the Charging Orders,"

> enter an Order nullifying the LLC contributions Larry made to the Trust when Larry believed it remained revocable from 2003 until the Sixth Circuit's 2022 opinion making the Trust irrevocable so that the assets belong to Larry, by reforming or modifying the Trust, declaring that Larry did not make effective gifts of the LLC interests to the Trust, and/or imposing a constructive trust over the LLC interests for the benefit of Larry individually.

*Id.* at PageID.33040.

The Agent filed the present motion asking the Court to hold Winget and his counsel in contempt for filing the state probate petition and require Winget to withdraw the petition. Contending that the petition violates the Status Quo Order, the Agent asks that the Court fine Winget $5,000 per day until he withdraws the petition or, alternatively, to enjoin the state probate proceeding.  It also asks the Court to award it attorney's fees and expenses for preparing and litigating its contempt motion.

Winget filed two responses to the Agent's contempt motion: a response opposing a contempt finding, filed October 18, 2022, and a separate response opposing the Agent's request that the Court enjoin the probate proceeding.  As noted above, he also filed an amended probate petition in an apparent effort to address some of the deficiencies raised in the Agent's contempt motion.  Alter Domus filed a reply brief in support of its motion for contempt and a sur-reply responding to Winget's injunction arguments.

The Court heard arguments on the motion on May 23, 2023 and learned that on April 17, 2023, Oakland County, Michigan Probate Judge Linda S. Hallmark issued an opinion and order denying Winget's amended petition for reformation of the Larry J. Winget Living Trust.  *See* Probate Order, ECF No. 1093-2, PageID.33492.  Judge Hallmark rejected all of Winget's arguments for nullifying his contributions to the Trust.  First, she concluded that the probate

- 8 -

petition was an improper attempt retroactively to invalidate Winget's transfers of assets to the Trust. Second, she concluded that Winget validly transferred his interests in certain limited liability companies to the Trust and did not retain the power to recall them. Third, she found that it would be an improper exercise of the probate court's equitable power to impose a constructive trust over the assets of the Winget Trust. Fourth, she found the tax and trust administration questions enumerated in the petition to be speculative and relate to possible future events and thus to be improperly before the probate court. And finally, she found that the probate petition was barred by *res judicata* because the issue of removal of the LLC interests from the Trust already was litigated before the Sixth Circuit.

On May 8, 2023, Winget appealed Judge Hallmark's order denying his probate petition.

## II.

The Agent contends that, by seeking relief in state probate court, Winget is violating the Court's Status Quo Order enjoining him from seeking to remove property from the Trust and, thus, from its own reach. It construes Winget's probate petition as asking the probate court to do what the Court unambiguously has said cannot be done: nullify contributions Winget made to the Trust so that he can reclaim those assets.

A party may seek to enforce a court order through a contempt petition. *See Shillitani v. United States*, 384 U.S. 364, 370 (1966) ("There can be no question that courts have inherent power to enforce compliance with their lawful orders through civil contempt."); *Elec. Workers Pension Tr. Fund of Local Union #58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 378 (6th Cir. 2003) ("Contempt proceedings enforce the message that court orders and judgments are to be complied with in a prompt manner."). To succeed, the plaintiff must prove "by clear and convincing evidence" that the defendant violated the Court's prior order. *Glover v. Johnson*, 934

F.2d 703, 707 (6th Cir. 1991).  The order violated must be "definite and specific" and must require the defendant "to perform or refrain from performing a particular act or acts." *Rolex Watch U.S.A., Inc. v. Crowley*, 74 F.3d 716, 720 (6th Cir. 1996) (quoting *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987)).  The plaintiff also must show that the defendant had "knowledge of the court's order." *Ibid*.  However, since civil contempt is remedial in nature, the charging party need not establish willfulness; "intent in disobeying [an] order . . .  is irrelevant to the validity of the contempt finding." *In re Jaques*, 761 F.2d 302, 306 (6th Cir. 1985) (citation omitted).

"Clear and convincing evidence is . . . not a light burden and should not be confused with the less stringent, proof by a preponderance of the evidence." *Elec. Workers*, 340 F.3d at 379 (citation omitted).  But "[o]nce the movant establishes his prima facie case, the burden shifts to the contemnor who may defend by coming forward with evidence showing that he is presently unable to comply with the court's order." *Ibid*. (citing *United States v. Rylander*, 460 U.S. 752, 757 (1983)).  "To meet this production burden in this circuit 'a defendant must show categorically and in detail why he or she is unable to comply with the court's order.'" *Ibid*. (quoting *Rolex Watch*, 74 F.3d at 720.)

It has been said that "a defendant that 'hew[s] to the narrow letter of the injunction while simultaneously ignoring its spirit' charts such a course at its peril." *CFE Racing Prod., Inc. v. BMF Wheels, Inc.*, No. 11-13744, 2015 WL 13022178, at *5 (E.D. Mich. Feb. 20, 2015) (quoting *Inst. of Cetacean Rsch. v. Sea Shepherd Conservation Soc'y*, 774 F.3d 935, 954 (9th Cir. 2014)).  Defendants act "at their own risk by failing to seek the court's interpretation of the injunction if they had any good faith doubt as to its meaning." *Polo Fashions, Inc. v. Stock Buyers Int'l, Inc.*, 760 F.2d 698, 700 (6th Cir. 1985).

Winget maintains that, because the Status Quo order does not specifically prohibit him from seeking a judicial ruling from the probate court, the Agent has not shown that he clearly and unequivocally violated a Court command. Winget is both right and wrong. As noted above, Winget asks for two forms of relief in his probate petition: (1) instruction on trust administration issues, and (2) the nullification of contributions he made to the Trust. The first request cannot be viewed fairly as "selling, transferring, assigning, encumbering, destroying, concealing, or otherwise disposing of [Trust] assets." Reversing Winget's contributions to the Trust, however, is precisely the type of asset dissipation endeavor that the Status Quo Order specifically prohibits.

## A.

Among other things, Winget's probate petition asks that court to clarify his fiduciary rights and obligations in light of the Sixth Circuit's July 2022 opinion. He posits the proposition that the federal court of appeals effectively converted his Trust from a revocable trust to an irrevocable trust, and he purportedly wants guidance on how to deal with that. Of course, the court of appeals did nothing of the sort. It did affirm this Court's orders that prevented Winget from removing trust assets, but that pronouncement was based on the unremarkable reality that as long as a creditor has a judgment against trust assets, the trustee cannot dissipate those assets until the judgment is satisfied. Once the judgment has been paid in full, the trustee can deal with the assets in whatever manner the trust instrument allows.

Whether Winget genuinely is confused on that point need not be determined here. Asking for guidance, though, does not clearly violate a definite and specific order of the Court. The Status Quo Order enjoins Winget from transferring or disposing of the Trust's assets, but it does not prohibit him from continuing to administer the Trust. To the contrary, the order specifically permits Winget and the Trust "to take such actions as are reasonable and necessary to the ongoing

and continued operations of their businesses."  Status Quo Order, ECF No. 915, PageID.29784-85.  Winget contends that instruction from the probate court on his fiduciary duties and tax obligations is necessary for him to continue administering the Trust.  That effort may also be part of a broader "program of experimentation" in protest of the court of appeals' opinion and the various orders and opinions entered by this Court.  *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 192 (1949).  Nevertheless, the act of seeking legal guidance on issues of trust administration does not itself violate the injunction promulgated in the Court's Status Quo Order.

B.

Winget's request that the probate court nullify 19 years of LLC contributions he made to the Trust and impose a constructive trust over those interests for his own benefit plainly violates the injunction issued in the Status Quo Order.  An order from the probate court granting Winget his requested relief would result in a transfer of assets out of the Winget Trust, the precise outcome the Court sought to prevent when it entered the Status Quo Order broadly enjoining Winget from disposing of assets held by the Trust.

Winget contends that the injunction does not sweep so broadly, arguing that, both by its terms and as a matter of law, the injunction applies only to the transfer or disposal of the Trust corporations' stock and not to the limited liability companies also held in the Trust.  Winget's argument on that point is specious.  The Status Quo Order granted the Agent both a writ of execution and an injunction, and although the writ of execution applied only to the Trust's corporate stock, the injunction contained no such limitation.  The mandatory language unambiguously enjoined Winget "from selling, transferring, assigning, encumbering, concealing, or otherwise disposing *of the assets owned, titled in the name of, or otherwise held by the Trust or its trustee.*"  Status Quo Order, ECF No. 915, PageID.29784 (emphasis added).  Moreover, the

- 12 -

Status Quo Order granted the Agent's motion for an injunction, which sought to prevent Winget from taking "any" action that would "materially encumber or impact the value of the assets held by the Trust."  Mot. for Writ of Execution, ECF No. 863, PageID.28733.  Winget opposed that motion and sought unsuccessfully to cabin the reach of the injunction; invoking the Michigan Limited Liability Company Act, he suggested instead that it should apply only to the Trust's corporate stock.  *See* Prop. Inj. Order, ECF No. 908-1, PageID.29746; Obj. to Prop. Order, ECF No. 889, PageID.29322-23.  He also complained about the scope of the injunction after the fact, without ever suggesting that the injunction applied only to the corporate stock.  *See, e.g.*, Brief of the Appellant, *JPMorgan Chase Bank, N.A. v. Winget*, 801 F. App'x 962 (6th Cir. 2020) (No. 19-2194).  Winget's own actions evince his understanding that the Status Quo Order broadly enjoins him from taking actions that interfere with the property held in the Trust, including both the corporate stock and LLCs held in the Trust.

Winget's argument that he cannot be enjoined from interfering with the limited liability companies as a matter of law similarly is meritless.  In support, he cites Section 507 of the Michigan Limited Liability Company Act, which is inapplicable to this dispute.  *See* Mich. Comp. Laws § 450.4507(6).  The section that "applies to satisfaction of a judgment against a member of an LLC."  *JPMorgan Chase Bank, N.A. v. Winget*, No. 08-13845, 2017 WL 2868538, at *11 (E.D. Mich. July 5, 2017), *aff'd*, No. 21-1568, 2022 WL 2389287 (6th Cir. July 1, 2022).  Here, the Agent has a judgment against the Trust, which is not an LLC, for a fraudulent transfer claim against Winget, who also is not an LLC.  *Ibid.*  And the Agent "has not asked the court to 'charge [any] membership interest of [Winget] with payment,' order 'any distribution or distributions to which [Winget] is entitled' be paid to [the Agent], or foreclose on any membership interest."  *Ibid.* Instead, the Status Quo Order merely requires that Winget, whose trust is a judgment debtor to the

lenders, maintain the status quo, including by not altering Trust assets to avoid the Agent's enforcement efforts. Such an order is within the Court's broad authority to effectuate its judgments and does not conflict with Michigan law.

Winget contends that the Court lacked the authority to enter the Status Quo Order because it is a "remedial order" that is not a charging order and thus is barred by the terms of Section 507. His argument is illogical. The Status Quo Order was entered to enforce the charging orders, which the Court entered to ensure that the Agent received all distributions arising from the Trust's membership interest in the limited liability companies held in the Trust. *See Winget*, 2022 WL 2389287 at *6. When Winget revoked the Trust and retitled the Trust property in his name, he received the distributions that would have otherwise gone to the Agent under the charging orders. *Ibid.* Winget unjustly was enriched by the cash distributions. *Id.* at *9. Nevertheless, because Winget continued to argue that he lawfully could remove assets from the Trust, the Court enjoined him from transferring or disposing of the Trust property during the collection proceedings. The injunction does not charge the Trust, whose membership interests are at issue, with doing anything; rather, it prevents Winget from taking further action that violates the charging orders he now invokes in an effort to avoid complying with the injunction.

As the Sixth Circuit repeatedly has noted during this litigation, "Michigan law gives courts 'extremely broad authority' to enforce their judgments." *Winget*, 801 F. App'x at 963 (quoting *JPMorgan Chase Bank, N.A. v. Winget*, 942 F.3d 748, 751-52 (6th Cir. 2019)). That includes the authority to "[m]ake any order" within the Court's discretion "to subject any nonexempt assets of any judgment debtor to the satisfaction of any judgment against the judgment debtor." Mich. Comp. Laws § 600.6104(5). The Court may also "restrain[] the judgment debtor from making or suffering any transfer or other disposition of, or interference with any of his property then held or

thereafter acquired."  Mich. Comp. Laws § 600.6116(1).  Post-judgment orders restraining the transfer of assets routinely are entered by courts to enforce judgments under Michigan law.  *See, e.g.*, *Laborers' Pension Tr. Fund – Detroit & Vicinity v. Telegraph Paving Co.*, 2012 WL 2018054, at *1-3 (E.D. Mich. 2012) (Lawson, J.) (entering post-judgment order restraining the transfer of certain property); *Comerica Bank v. Esshaki*, 314 F. Supp. 3d 832, 836 (E.D. Mich. 2018) (Whalen, M.J.) (same); *Arbor Farms, LLC v. GeoStar Corp.*, 305 Mich. App. 374, 378, 853 N.W.2d 421, 424 (2014) (discussing post-judgment status quo order entered to restrain defendant from transferring assets); *Hooper Hathaway, PC v. Atlas Techs., LLC*, No. 357185, 2022 WL 4281557, at *6 (Mich. Ct. App. Sept. 15, 2022) (same).  That is all that the Court did here.

Winget nevertheless insists that he did not knowingly violate a "definite and specific" order of the Court.  *See Gascho v. Glob. Fitness Holdings, LLC*, 875 F.3d 795, 800 (6th Cir. 2017) (quoting *NLRB v. Cincinnati Bronze, Inc.*, 829 F.2d 585, 591 (6th Cir. 1987)).  He says that because the Status Quo Order did not specifically bar him from filing probate petitions, he may continue to seek relief in probate court that would nullify his contributions to the Trust.  This, too, is a specious argument.  Winget does not actually contend that the Status Quo Order was so vague or ambiguous that he was "unable to comply" with it.  *Gascho*, 875 F.3d at 800 (citing *Gary's Elec.*, 340 F.3d at 379).  Rather, he effectively suggests that he has "an immunity from civil contempt because the plan or scheme" he adopted by filing the probate petition "was not specifically enjoined."  *McComb*, 336 U.S. at 192.  That is not the law.  "The schemes available to those determined to evade injunctions are many and varied, and no injunction can explicitly prohibit every conceivable plan designed to defeat it."  *Inst. of Cetacean Rsch.*, 774 F.3d at 954.  Courts therefore may issue orders categorically prohibiting conduct without violating the rule that an injunction must be definite and specific.  *Ibid.*  If it were otherwise, litigants like Winget could

prevent accountability through "persistent contumacy," effectively nullifying injunctions through a "program of experimentation with disobedience." *McComb*, 336 U.S. at 192.

Contempt "is reserved for those who 'fully understand[]' the meaning of a court order and yet 'choose[] to ignore its mandate.'" *Gascho*, 875 F.3d at 800 (quoting *Int'l Longshoremen's Ass'n, Loc. 1291 v. Philadelphia Marine Trade Ass'n*, 389 U.S. 64, 76 (1967)). As described above, there is ample evidence that Winget fits neatly into that category. The injunction was necessitated in the first instance by Winget's secret revocation of the Trust. Winget then proceeded to ask the probate court to nullify Trust contributions without informing the Agent or the Court that he had filed a petition seeking that relief. He never sought any clarification from the Court regarding the propriety of his probate petition or indicated that he was in any way unclear as to the scope of the injunction. *See Polo Fashions*, 760 F.2d at 700. Instead, Winget claimed to assume — wrongly — that the petition to nullify his Trust contributions was allowed, simply because the Status Quo Order did not include the phrase "probate petition." By construing his obligations "narrowly to include only refraining from acts specifically enumerated in the injunction, and not acts likely to nullify the injunction," Winget assumed the risk that his "attempts at technical compliance would prove wanting." *Inst. of Cetacean Rsch.*, 774 F.3d at 954-55.

Because Agent has produced clear and convincing evidence demonstrating that Winget willfully violated the definite and specific provisions of the injunctive terms of the Status Quo Order, the burden shifts to Winget to demonstrate that he presently is unable to comply with the Court's injunction. *Elec. Workers*, 340 F.3d at 379. Winget has not made that showing. He has not even attempted to demonstrate that he "took all reasonable steps within [his] power to comply with" the Court's Status Quo Order, *Gary's Elec.*, 340 F.3d at 379 (quoting *Peppers v. Barry*, 873 F.2d 967, 969 (6th Cir. 1989)), let alone that he made a diligent effort toward compliance, *see*

*Glover*, 934 F.2d at 708 (noting that "diligence alone does not satisfy" a contemnor's burden of production). Nor would it even be possible for Winget to meet that burden when he willfully and voluntarily submitted the probate petition. Logically, it was not "impossibl[e]" for him to act otherwise. *Ibid.* (quoting *Fortin v. Comm'r of Mass. Dep't of Pub. Welfare*, 692 F.2d 790, 796–97 (1st Cir. 1982)).

The amended probate petition does not change this analysis. In that amendment, Winget still asks the probate court to nullify the LLC contributions Winget made to the Trust. By asking the probate court to nullify his contributions to the Trust, Winget is in contempt of the Court's Status Quo Order enjoining him from transferring or disposing of the assets (or attempting to do so) held in the Trust.

## C.

The Agent insists that the attorneys representing Winget in this case also should be held in contempt, even though they are not representing Winget in his probate proceedings. The Agent cites no legal authority in support of this extraordinary request, which, if granted, effectively would bar Winget from responding to the Agent's contempt motion or presenting related arguments before this Court. Nor has the Agent pointed to any definite and specific provisions of any Court order barring Winget's counsel from doing anything in this case. The Agent's request to sanction Winget's counsel for contempt will be denied.

## D.

Courts fashioning a remedy against a civil contemnor must be mindful that coercion — not punishment — is the main objective. The "objective of any contempt determination is to enforce the message that court orders and judgments are to be taken seriously." *Elec. Workers Pension Tr. Fund of Local Union #58, IBEW v. Gary's Elec. Serv. Co.*, 340 F.3d 373, 385 (6th Cir. 2003)

(citing *Cincinnati Bronze*, 829 F.2d at 590).  Nonetheless, "judicial sanctions can be used not only to coerce compliance, but also to compensate the complainant."  *Ibid.* (quoting *United Mine Workers*, 330 U.S. at 303-04); *see also United States v. Work Wear Corp.*, 602 F.2d 110, 115 (6th Cir. 1979) ("Civil contempt is meant to be remedial and to benefit the complainant either by coercing the defendant to comply with the Court's order via a conditional fine or sentence or by compensating the complainant for any injury caused by the defendant's disobedience.").  Although framing the sanction to "fit the violation" is a matter of the Court's discretion, 11A Wright, Miller, & Kane, *Fed. Prac. & Proc. Civ.* § 2960 (3d ed.), the Court is obliged to employ "the least possible power adequate to the end proposed," *Shillitani v. United States*, 384 U.S. 364, 371 (1966) (citation omitted).

The Court need not impose monetary sanctions to coerce Winget's compliance with the Status Quo Order here.  The probate court already denied the petition.  Of course, Winget filed an appeal from the dismissal, but the Court may enforce its Status Quo Order simply by ordering Winget to withdraw the appeal, or to limit the appeal expressly to the issue of trust administration and disavow any effort in the state courts to reverse or challenge in any way the contributions to the Trust.  There is little reason to doubt that Winget would comply with such a sanction:  Winget volunteered that he would withdraw his probate petition upon an order from the Court, and it is likely that he would follow form with the appeal.  And it is within the Court's discretion to order nonmonetary sanctions it believes are necessary to bring about compliance with the injunction. *See, e.g.*, *Reed v. Rhodes*, 635 F.2d 556, 558 (6th Cir. 1980) (ordering school board to appoint a desegregation administrator); *Lance v. Plummer*, 353 F.2d 585, 592 (5th Cir. 1965) (ordering sheriff to give up badge and cease functions as a peace officer until he demonstrated compliance with court orders); *Nabkey v. Hoffius*, 827 F. Supp. 450, 455 (W.D. Mich. 1993) (barring plaintiff

from filing further court papers until she had met certain requirements), *aff'd sub nom. Nabkey v. 61st Dist. Ct.*, 79 F.3d 1148 (6th Cir. 1996).

The Agent alternatively asks the Court to enjoin the probate court proceedings (and presumably the ensuing appeal to the Michigan Court of Appeals) to protect or effectuate its judgments in this case.  The Anti-Injunction Act "generally prohibits the federal courts from interfering with proceedings in the state courts." *Chick Kam Choo v. Exxon Corp.*, 486 U.S. 140, 145 (1988).  The Court "may not grant an injunction to stay proceedings in a State Court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments." *Id.* (quoting 28 U.S.C. § 2283).  The last clause — the so-called relitigation exception — is tightly circumscribed by the overriding tenets of federalism and may be applied only in the narrowest of circumstances where claims or issues actually have been decided by a federal court.  *Smith v. Bayer Corp.*, 564 U.S. 299, 306-07 (2011); *Chick Kam Choo*, 486 U.S. at 148.

The Court's order here will not be directed to any state court.  But it could be argued that ordering Winget to withdraw or amend his appeal has the same effect as enjoining his state appellate proceedings.  That is because under the Anti-Injunction Act, enjoining a party from pursuing state-court litigation has the same practical effect as enjoining the state court directly. *See* 20 Fed. Prac. & Proc. Deskbook § 49 (2d ed.) ("It is accepted that the prohibition against enjoining state-court proceedings cannot be avoided by framing an injunction as a restraint on a party rather than directly on the state court." (citing *Imperial Cnty., Cal. v. Munoz*, 449 U.S. 54, 58-59 (1980); *Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co.*, 309 U.S. 4, 9 (1940)); *Tropf v. Fid. Nat. Title Ins. Co.*, 289 F.3d 929, 942 (6th Cir. 2002) (finding that an order "indirectly enjoining" state court proceedings violated the Act where the relitigation exception did not apply).

But even if the Anti-Injunction Act applies to this factual scenario, the Agent has made the "strong and unequivocal" showing necessary to invoke the relitigation exception for the purpose of barring Winget from nullifying his Trust contributions in probate court. *American Town Ctr. v. Hall 83 Assoc.*, 912 F.2d 104, 111 (6th Cir. 1990) (holding that "a complainant must make a strong and unequivocal showing of relitigation of the same issue in order to overcome the federal courts' proper disinclination to intermeddle in state court proceedings"). As explained at length above, it "actually ha[s] been decided by the federal court" that Winget cannot take actions contrary to the Court's collection orders. *Chick Kam Choo*, 486 U.S. at 148. That precisely is what Winget asked the probate court to declare that he may do. *See* Am. Probate Pet., ECF No. 1046-1, PageID.32851 ("Larry Winget as settlor and trustee of the Trust respectfully requests the Court . . . enter an Order nullifying the LLC contributions Larry made to the Trust" from 2003 to 2022). The "essential prerequisite for applying the relitigation exception" therefore is met, and it is within the Court's discretion to enjoin Winget from relitigating in the state probate court and the court of appeals the issue of withdrawing property from the Trust. *Chick Kam Choo*, 486 U.S. at 148.

It is unnecessary to impose severe monetary sanctions to compensate the Agent. Compensatory sanctions typically provide relief to a complainant for a failure to pay a monetary judgment; they "must of course be based upon evidence of [the] complainant's actual loss." *United Mine Workers*, 330 U.S. at 303-04. But Winget's failure to comply with the Status Quo Order has not caused the Agent financial harm, except that the Agent has incurred attorney's fees and expenses bringing this contempt motion. The Court properly may grant the Agent's request that Winget compensate it for those fees; it is "well recognized" that "[c]ourts have inherent authority to enforce their judicial orders and decrees in cases of civil contempt by assessing attorneys' fees." *Liberis v. Craig*, 845 F.2d 326, 1988 WL 37450, at *5 (6th Cir. 1988) (table); *see also Nicole Gas*

*Prod., Ltd.*, 916 F.3d 566, 579 (6th Cir. 2019) (affirming fee award as sanction for contempt finding); *Inst. of Cetacean Rsch.*, 774 F.3d at 958 ("[T]he cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party." (quotation marks omitted)). Before the Court awards the Agent its costs, however, the Agent first must make an accounting of its fees and expenses to the Court.

III.

The conduct of Larry J. Winget filing a petition asking a Michigan probate court to nullify contributions from limited liability companies Winget made to the Larry J. Winget Living Trust violated the Status Quo Order's prohibition against "encumbering, destroying, concealing, or otherwise disposing of the assets owned, titled in the name of, or otherwise held by the Trust or its trustee outside of the ordinary course of business."

Accordingly, it is **ORDERED AND ADJUDGED** that Larry J. Winget is in **CIVIL CONTEMPT** of the order of this Court.

It is further **ORDERED** that the plaintiff's motion to hold Larry J. Winget in civil contempt (ECF No. 1036) is **GRANTED IN PART**.

It is further **ORDERED** that Larry J. Winget may purge his contempt by immediately withdrawing his appeal of the Opinion and Order Regarding Trustee and Settlor's Amended Petition for Reformation, Construction, Instructions and Other Relief entered on April 17, 2023 in Oakland County, Michigan Probate Court Case Number 2022-409601-TV, or by expressly limiting the appeal to the issue of trust administration and disavowing any effort in the state courts to reverse or challenge in any way the contributions to the Trust. Larry J. Winget must immediately file a declaration of compliance with this Court.

It is further **ORDERED** that if the plaintiff wishes to recover attorney's fees, it must file with the Court an appropriate motion for attorney's fees, subject to Local Rule 7.1, documenting the time and expenses incurred in filing its contempt motion in this Court.

s/David M. Lawson
DAVID M. LAWSON
United States District Judge

Dated:  July 31, 2023