UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALTER DOMUS, LLC,

        Plaintiff and Counter-Defendant,        Case Number 08-13845

v.        Honorable David M. Lawson

LARRY J. WINGET and the LARRY J.
WINGET LIVING TRUST,

        Defendants and Counter-Plaintiffs.
_____/

## OPINION AND ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR ATTORNEY'S FEES

On July 31, 2023, the Court filed an opinion and order finding defendant Larry J. Winget in civil contempt of this Court's order enjoining Winget from disposing of or transferring property out of the Trust (the Status Quo Order). It appears that Winget has purged the contempt, but the Court ordered as part of the determination that Alter Domus, the Agent for a consortium of creditors attempting to collect a substantial money judgment, could recover its reasonable attorney's fees. *See Liberis v. Craig*, 845 F.2d 326, 1988 WL 37450, at *5 (6th Cir. 1988) (table) (stating that it is "well recognized" that "[c]ourts have inherent authority to enforce their judicial orders and decrees in cases of civil contempt by assessing attorneys' fees"); *see also Nicole Gas Prod., Ltd. v. Bowers*, 916 F.3d 566, 579 (6th Cir. 2019) (affirming fee award as sanction for contempt finding); *Inst. of Cetacean Rsch. v. Sea Shepherd Conserv. Soc.*, 774 F.3d 935, 958 (9th Cir. 2014) ("[T]he cost of bringing the violation to the attention of the court is part of the damages suffered by the prevailing party." (quotation marks omitted)). The Court invited the Agent to file a motion that included an accounting of its fees and expenses. That motion now is before the Court.

The conduct that generated the contempt finding was Larry Winget's filing an action in the Oakland County, Michigan probate court contending that certain federal court decisions converted his revocable trust into an irrevocable trust, and therefore he should be able to rescind contributions he made under the mistaken belief that the trust was revocable, and the probate court should then provide instructions on trust administration. Alter Domus successfully defended that action, which the probate court dismissed, and it sought contempt sanctions against Winget in this Court, contending that the probate action violated the Status Quo Order. For those activities, Alter Domus seeks attorney's fees totaling $380,913.75, of which $363,526.25 was incurred by the Sidley Austin law firm, and $17,387.50 was incurred by local counsel Dickinson Wright.

Winget makes two arguments in response. First, he says that Alter Domus should not be able to recover fees for work done in the Oakland County Probate Court. Its fee request, he says, should be limited to the work performed in the case before this Court. But that argument ignores the purpose of the attorney's fee allowance here, which is not based on any fee-shifting provision but rather is for compensation resulting from his contempt. *United States v. Work Wear Corp.*, 602 F.2d 110, 115 (6th Cir. 1979) ("Civil contempt is meant to be remedial and to benefit the complainant either by coercing the defendant to comply with the Court's order via a conditional fine or sentence or by compensating the complainant for any injury caused by the defendant's disobedience."). Alter Domus was required to challenge Winget's actions, which violated the Status Quo Order, in both state and federal forums. Reasonable compensation may be awarded for its total effort. *See Toledo Scale Co. v. Computing Scale Co.*, 261 U.S. 399, 426 (1923) (finding no abuse of discretion where the court awarded a party compensation for expenses incurred defending its rights against a second suit brought to interfere with the enforcement of an order in the first).

Winget's second argument is that the amount of the fee request is entirely unreasonable, both because some of the time spent was wasteful or unnecessary for particular tasks, and the hourly rates demanded are beyond the pale.  Here, Winget has a point.

Typically, the reasonableness of an attorney's fee request is measured by the lodestar method.  *Ne. Ohio Coal. for the Homeless v. Husted*, 831 F.3d 686, 702 (6th Cir. 2016).  That method calls for multiplying "the number of hours reasonably expended on the litigation . . . by a reasonabl[e] hourly rate."  *Ibid.* (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)).  "The party seeking attorney's fees bears the burden of proof on the number of hours expended and the rates claimed."  *Granzeier v. Middleton*, 173 F.3d 568, 577 (6th Cir. 1999).  If "documentation of hours is inadequate, the district court may reduce the award accordingly."  *Hensley*, 461 U.S. at 433 (1983).  Additionally, the Court must "exclude . . . hours that were not reasonably expended."  *Id.* at 434.  A reasonable rate for the purpose of the lodestar calculation is "the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record."  *Husted*, 831 F.3d at 715 (citing *Geier v. Sundquist*, 372 F.3d 784, 791 (6th Cir. 2004)).  Sources of information include "a party's submissions, awards in analogous cases, state bar association guidelines, and its own knowledge and experience in handling similar fee requests."  *Id.* at 716 (internal quotation omitted).

Turning first to the hourly rates, the billing records provided by the Sidley Austin law firm, Alter Domus's out-of-state counsel, do not identify clearly which attorneys participating in the litigation were partners, which were associates, and how the applicable rate for each attorney was calculated.  However, it appears that partners bill at rates varying between $1,100 and $1,500 per hour, while associate rates range between $600 and $800.  Guided by that schedule, it appears from the billing records that most of the work on this matter was performed by partners.

This Court previously has expressed concern with the approval of fee awards for the plaintiff's counsel without reference to local billing rates. *See JPMorgan Chase Bank, N.A. v. Winget*, No. 08-13845 2021 WL 7907088, at *1-2 (E.D. Mich. Jan. 8, 2021) (indicating that the Court may be obligated to revisit whether the fee rates in this case were reasonable). That statement appeared in the context of the agent's application for the approval of an interim fee award. Part of the Court's concern was the high rates for what is "at base, a collections case." *Id.* at *1. As Alter Domus points out, it is true that "district courts are free to look to national markets, an area of specialization, or any other market they believe is appropriate to fairly compensate attorneys in individual cases." *McHugh v. Olympia Ent., Inc.*, 37 F. App'x 730, 740 (6th Cir.), *amended on denial of reh'g*, 41 F. App'x 758 (6th Cir. 2002). But where the fee applicant seeks to recover fees for an out-of-town "specialist," the district court must determine "(1) whether hiring the out-of-town specialist was reasonable in the first instance, and (2) whether the rates sought by the out-of-town specialist are reasonable for an attorney of his or her degree of skill, experience, and reputation." *Husted*, 831 F.3d at 716 (citing *Hadix v. Johnson*, 65 F.3d 532, 535 (6th Cir. 1995)).

Alter Domus's use of the Sidley Austin law firm was reasonable in light of its long history of involvement in this matter. Its choice of counsel for the contempt proceedings was the natural result of Sidley's service in Alter Domus's ongoing collection efforts. *See Graceland Fruit, Inc. v. KIC Chems., Inc.*, 320 F. App'x 323, 329-30 (6th Cir. 2008) (approving choice of out-of-town counsel based on a long-standing attorney-client relationship and because local counsel would have had to get "up to speed" on the facts, increasing the fees); *Colonial Williamsburg Found. v. Kittinger Co.*, 38 F.3d 133, 138-39 (4th Cir. 1994) (approving choice of non-local counsel who

had served as the party's attorney "for almost ten years" and had drafted the agreement in question).

However, that does not render Sidley's fee rates reasonable. According to the State Bar of Michigan's 2023 Economics of Law Survey Results Summary Report, the median hourly rate charged by Michigan law firm partners is $297, and the 95th percentile rate is $730. *2023 Economics of Law Survey Results*, State Bar of Michigan, 5 (2023) https://www.michbar.org/file/pmrc/pdfs/ 2_2023EOL_SurveyResults.pdf. For associates, the median is $230 and 95th percentile is $500. *Ibid.* Sidley Austin's rates exceed these rates substantially. Alter Domus has not explained what aspects of the motion for contempt or probate court litigation required special skill not available at rates charged by local counsel, nor has it provided clear explanations of its counsel's billing rates. And it has not made a convincing argument why the Court should depart from the customary rates charged "within the venue of the court of record." *Husted*, 831 F.3d at 715. Where competent local counsel was available at a lower rate, "the district court may apply local market rates to the services provided by the out-of-town specialist." *Id.* at 716.

Also, one must remember that an award of attorney's fees and expenses in a contempt proceeding is an *equitable* remedy. The award must be fair to both sides considering all the circumstances of the case, which includes the reality that this case arose primarily in the Midwest and was litigated in a federal court in Michigan. The plaintiff, of course, is entitled to hire whomever it chooses to represent it. But the defendants should not be saddled with the economic consequences of that choice beyond a rule of reason. "The essential goal in shifting fees [] is [to] do rough justice, not to achieve auditing perfection." *Fox v. Vice*, 563 U.S. 826, 838 (2011). The

Court "may take into account [its] overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Ibid.*

There is no good reason that the hourly rates slightly above the median reflected in the Michigan Bar survey should not apply to the attorney's fee award here. It is true that Winget and his Trust have proven to be difficult customers, using all the legal devices at their disposal to forestall collection of the amended judgment. But there is no suggestion by any party that any "[special] expertise was necessary to the litigation." *Husted*, 831 F.3d at 716 (quotation marks omitted). Following that rationale, the appropriate hourly rate for time billed by partners is $500 (75th percentile) and $335 for associates (75th percentile). Because Sidley failed to provide detailed information about which attorneys are partners versus associates, the Court will apply a blended rate of $425 per hour. Although both law firms furnished billing records, neither presented calculations of the total hours expended on the case. Consequently, based on the record as presented, the most manageable way to approach the task of calculating a reasonable fee is to apply an across-the-board cut of 65%, which represents the approximate percentage difference between $1,200 per hour and $425 per hour.

Winget also objects to Sidley Austin's "duplicative and redundant billing." This argument is not well developed. The Court "may take into account [its] overall sense of a suit, and may use estimates in calculating and allocating an attorney's time." *Fox*, 563 U.S. at 838. Sidley's billing records reflect the work expected to respond to an action in state probate court and to bring that contemptuous lawsuit to this Court's attention. Winget asserts in a conclusory fashion that a portion of the records show duplicative and redundant billings. Although the narrative entries could be clearer, the table provided by Winget appears to show partners researching legal issues and preparing a motion for contempt. That is appropriate attorney work. A billing entry is not

duplicative simply because it reflects an attorney working on the same task at multiple points over several days.  Winget cites *Bluwav Sys., LLC v. Durney*, No. 09-13878, 2012 WL 5389874 (E.D. Mich. Nov. 5, 2012), where the court admonished Sidley for unnecessary billing, but that case involved work on a motion to dismiss that was never filed.  Here, the billing entries all involve work on either the motion for contempt or the litigation in the probate court.

Winget's only other specific example of unnecessary billing involves an entry where on October 6, 2022, "SE Olsen" spent 3 hours, at $295 per hour, "download[ing] cases cited in Motion for Contempt and Injunctive Relief in order to facilitate team cite check per E. Scholtes."  ECF No. 1108-02, PageID.33731.  He points out that Alter Domus only cited 14 cases in its motion.  This entry does appear unreasonable but removing it from the final calculation is inconsequential in light of the overall adjustment described above.  Winget provides no other examples of facially unreasonable billing.

Based on the foregoing, the lodestar yielded by the present motion is $133,319.81, which is the product of applying a 65% discount to the amount requested in the present motion.  Once that is determined, the Court may consider the so-called *Johnson* factors to adjust a lodestar.  Those factors include:

> "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."

*Blanchard v. Bergeron*, 489 U.S. 87, 91 n.5, 93 (1989) (citing *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974).  The Court need not parse each factor.  In this case, it

is sufficient to observe that they tend to balance each other, and no adjustment to the lodestar is necessary.

Accordingly, it is **ORDERED** that the plaintiff's motion for attorney's fees (ECF No. 1108) is **GRANTED IN PART**.

It is further **ORDERED** that the defendant Larry J. Winget shall pay to the plaintiff the sum of $133,319.81 as a sanction for his contempt.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:   March 27, 2024