UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ALTER DOMUS, LLC,

      Plaintiff and Counter-Defendant,      Case Number 08-13845
v.      Honorable David M. Lawson

LARRY J. WINGET and the LARRY J.
WINGET LIVING TRUST,

      Defendants and Counter-Plaintiffs,
_____/

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION
TO STAY ORDER DENYING MOTION TO SET ASIDE JUDICIAL
SALE AND CONFIRMING JUDICIAL SALE**

On April 21, 2025, a judicial sale of assets was conducted by a marketing agent chosen by plaintiff and judgment creditor Alter Domus, LLC. The sale was conducted in accordance with the Sales Procedures Order. On May 12, 2025, Alter Domus filed a notice that the Marketing Agent stated that the bid of Larry J. Winget was the highest bid for the lot of sale assets. The Court held a hearing on Alter Domus's objections to the sale on August 27, 2025, and on September 9, 2025 filed an opinion and order overruling them and confirming the sale. Alter Domus now moves to stay that order pending appeal. Because the four relevant factors, when balanced together, do not favor a stay, the Court will deny the motion.

I.

The asset sale was part of the plaintiff's continuing effort to collect on a substantial judgment it obtained against the Larry J. Winget Living Trust. The long and torturous path that led to the judgment is familiar to the parties, and it has been recounted in several opinions by this Court and the court of appeals over the 15 appeals prosecuted in this case, most recently in this

Court's opinion and order denying the defendants' motion to set aside the judgment. *See* ECF No. 1241, PageID.36054-60.

Relevant here, the Court ordered that a judicial sale of certain assets of the Trust — namely, corporate stock in several companies — take place on April 21, 2025. Despite the appointed Marketing Agent's efforts publicizing the sale, defendant Larry J. Winget was the only bidder to participate. During the auction, Winget bid $19 million for the entire lot of assets. Judgment holder Alter Domus, an administrative agent for a group of lenders, did not bid. Instead, a representative made a short statement reiterating its opposition to limitations on its ability to credit bid that the Court included in its order setting out the procedures for the judicial sale (ECF No. 1103). The representative stated that the Agent "was prepared to credit bid up to hundreds of millions" from its judgment for the assets. *See* Tr. of Judicial Sale, ECF No. 1220-5, PageID.35676. At the conclusion of the sale, the Agent filed a successful bid notice stating that "the bid of Larry J. Winget . . . was the highest bid for the lot of Sale Assets." ECF No. 1203, PageID.34941.

The Agent filed a series of objections to the sale and moved to set it aside. ECF No. 1206. The Court held a hearing on the motion and on September 9, 2025 issued an opinion and order overruling the objections and confirming the sale. *See* ECF No. 1232. The Court directed the Agent to "execute all documents necessary to effectuate the sale of the Sale Assets to Larry J. Winget, including any share transfer agreements" on "receipt of the bid price payment" from Winget. *Id.* at PageID.35909.

The Agent then filed a motion to administratively stay the Court's order. The next day, it moved to stay the confirmation order pending appeal. Winget opposed both requests. The Court denied the Agent's request for an administrative stay on September 16, 2025, concluding that no

such relief was necessary as the plaintiff had filed its formal motion for a stay pending appeal and the Court could rule on the request expeditiously. ECF No. 1238. On October 1, 2025, the Agent filed a notice of appeal of the Court's order confirming the sale.

## II.

The well-known factors balanced with each other when deciding whether to stay a court's order pending appeal are: "(1) the likelihood that the party seeking the stay will prevail on the merits of the appeal; (2) the likelihood that the moving party will be irreparably harmed absent a stay; (3) the prospect that others will be harmed if the court grants the stay; and (4) the public interest in granting the stay." *Mich. Coal. of Radioactive Material Users, Inc. v. Griepentrog*, 945 F.2d 150, 153 (6th Cir. 1991)). The factors are "interrelated considerations," *id.* at 153, meaning that a strong showing of irreparable injury, for example, might counterbalance a modest showing of likely success, *id.* at 153-54 (observing that "more of one excuses less of the other") (citations omitted). However, a defendant seeking to stay a district court's judgment "is still required to show, at a minimum, 'serious questions going to the merits.'" *Ibid.* (quoting *In re DeLorean*, 755 F.2d 1223, 1229 (6th Cir. 1985)).

The Agent argues that a stay is necessary so that it meaningfully can appeal the Court's order setting out the sales procedures. The court appeals mentioned in its order dismissing the prior appeal on jurisdictional grounds that such an appeal had to await the conclusion of the sale. *See JPMorgan Chase Bank, N.A. v. Winget*, No. 23-1788, 2025 WL 610048, at *2 (6th Cir. Jan. 31, 2025).

### 1. Likelihood of Success

The Agent identifies at least three issues it wishes to present on appeal: it objects to the credit bidding limitations imposed by the Court as part of the order setting out the sales procedures;

it believes that Winget's $19 million bid for the assets, which it alleges are worth at least $350 million, is inadequate; and Winget and the Trust allegedly failed to act in good faith during the sale process. However, it fails to explain why it is likely to be vindicated by the court of appeals with respect to any of those issues.

The Sixth Circuit has made clear that "a movant seeking a stay pending review on the merits of a district court's judgment" faces a "greater difficulty in demonstrating a likelihood of success on the merits" than a party seeking a preliminary injunction. *Griepentrog*, 945 F.2d at 153. "In essence, a party seeking a stay must ordinarily demonstrate to a reviewing court that there is a likelihood of reversal." *Ibid.*

The argument regarding the credit bidding limitations has been litigated extensively by the parties. The Court explained its decision to limit the Agent's ability to credit bid for less than the full amount of its judgment in its order approving the sales procedures. *See* ECF No. 1103, PageID.33650. And when the Agent moved for reconsideration, the Court issued an opinion thoroughly explaining how credit bidding limitations were necessary to prevent "potential windfall and encourage additional bidding." ECF No. 1130, PageID.33938. The Agent offers no new arguments that suggest the Court's credit bidding restrictions were erroneous. That the sale did not generate as much interest as the Agent hoped is no reason to conclude it will likely succeed in persuading the court of appeals that this Court was wrong to impose the requirement at the outset of the process. The Court exercised its judgment to protect the process, and it is understood that district courts have broad discretion to order a sale of property "upon such terms and conditions as the court directs." 28 U.S.C. § 2001(a) (incorporated by 28 U.S.C. § 2004, addressing personalty "sold under any order or decree of any court of the United States"). Michigan law is similar. *See* Mich. Comp. Laws §§ 600.6031 and 6037. Although the statute does not furnish

extensive instructions for the sale of corporate stock, it allows a judge, when enforcing a money judgment, to "[m]ake any order as within his discretion," Mich. Comp. Laws § 600.6104(5), which is "very broad," *In re John Richards Homes Bldg. Co., L.L.C.*, 298 B.R. 591, 609 (Bankr. E.D. Mich. 2003).

       This Court also has concluded already that the Agent's other arguments lack merit, and the Agent offers little reason to think the court of appeals might agree with the Agent's position. In its order confirming the sale, the Court explained that the Agent's argument that the sale price was so inadequate as to shock the conscience lacked merit because it had "failed to produce a cogent valuation for the sale assets that reflects a realistic appraisal of what might otherwise have been attainable at the sale." ECF No. 1232, PageID.35908. This evidentiary void was fatal to its argument because determining that a sale price shocks the conscience requires comparing the price obtained with "some other reliable measure of the asset's value." *Id.* at PageID.35903. The only information the Agent offered — and that was via argument, not proof — the Court explained, were certain large figures derived from the balance sheet of one of the companies subject to sale. *Id.* at PageID.35904-05. The Agent offers no reason to believe that the court of appeals likely will take a more generous view of this type of comparator.

       The Agent's suggestion that Winget and the Trust failed to comply with the Sales Procedures order is on even shakier footing, since this Court is best positioned to assess compliance with its own orders. *See Hankins v. City of Inkster, Michigan*, 832 F. App'x 373, 378 (6th Cir. 2020); *Satyam Computer Servs., Ltd. v. Venture Glob. Eng'g, LLC*, 323 F. App'x 421, 430 (6th Cir. 2009). The Agent has failed to demonstrate a likelihood of success on the merits, so this factor weighs against a stay.

2.  Irreparable Harm

The Agent says that if a stay is not granted, it will lose its opportunity to challenge this Court's rulings about the judicial sale, since the transaction likely will be consummated before an appellate decision is reached.

Courts weight three factors when evaluating the harm that will occur absent a stay: "(1) the substantiality of the injury alleged; (2) the likelihood of its occurrence; and (3) the adequacy of the proof provided." *Griepentrog*, 945 F.2d at 154 (citing *Ohio ex rel. Celebrezze v. Nuclear Regul. Comm'n*, 812 F.2d 288, 290 (6th Cir. 1987)). The harm must "decidedly outweigh[] the harm that will be inflicted on others if a stay is granted." *Baker v. Adams Cnty./Ohio Valley Sch. Bd.*, 310 F.3d 927, 928 (6th Cir. 2002) (per curiam). For the reasons discussed above, the Agent's likelihood of prevailing on the merits is low. Therefore, it bears a higher burden in demonstrating irreparable harm. *See Griepentrog*, 945 F.2d at 153 (explaining that irreparable injury and the probability of success on the merits are inversely related).

The Agent's chief concern is that, absent a stay, Winget may dispose of or encumber the sale assets in a manner that would make a do-over meaningless (or less lucrative) if it ultimately prevails on appeal. It emphasizes that Winget previously has modified the ownership structure of certain entities that are subsidiaries of the sale companies, *see generally* ECF No. 1232, PageID.35895-98, raising the prospect that he again might do so during the pendency of the appeal.

These arguments fail to account for the context in which these businesses operate and have operated throughout this protracted litigation. The corporate stock was titled in the name of the Trust, but that has had no operational significance to Larry Winget. The Trust appears to be the way Winget chose to organize his assets, and Winget appears to have managed them as if he retained the right to move assets in and out of the Trust at will, as most other people enjoy with

respect to revocable trusts. *See JPMorgan Chase Bank, N.A. v. Winget*, No. 21-1568, 2022 WL 2389287, at *11 (6th Cir. July 1, 2022) (Batchelder, J., dissenting). There is no reason to believe that Winget would continue to conduct these businesses in a way that would make them *less* valuable. Presumably, he shares an interest in the long-term health of the assets he acquired at auction, companies that he founded and managed over a period of years. The harms that the Agent identifies relating to Winget's control of the companies during the appeal do not rise above speculation. *Griepentrog*, 945 F.2d at 154 (noting that "the harm alleged must be both certain and immediate, rather than speculative or theoretical").

The Agent also contends that appellate review itself might be unavailable absent a stay, pointing out that Winget himself contends that the appeal may become moot under the principle of statutory mootness. That rule is found in section 363(m) of the bankruptcy code:

> The reversal or modification on appeal of an authorization . . . of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m). This provision functions to "limit[] appellate review of a consummated sale [of assets in a bankruptcy estate] . . . regardless of the merits of legal arguments raised against it." *In re Made in Detroit, Inc.*, 414 F.3d 576, 581 (6th Cir. 2005) (quoting *Licensing by Paolo, Inc. v. Sinatra (In re Gucci)*, 126 F.3d 380, 392 (2d Cir. 1997)). The rule "is predicated on the particular need to encourage participation in bankruptcy asset sales and increase the value of the property of the estate by protecting good faith purchasers from modification by an appeals court of the bargain struck with the debtor." *Weingarten Nostat, Inc. v. Serv. Merch. Co.*, 396 F.3d 737, 741 (6th Cir. 2005).

Winget does not quarrel with this concept, even citing an unpublished Fifth Circuit case, *S.E.C. v. Janvey*, 404 F. App'x 912, 915 (5th Cir. 2010), that held that statutory mootness applies

- 7 -

to all judicial sales, not just those conducted under bankruptcy supervision. But Winget maintains that the rule ought to apply here because it promotes in the interests of finality, which in turn maximizes the purchase price by eliminating the risk to a purchaser of more litigation attached to the purchase. *See In re Made in Detroit, Inc.*, 414 F.3d at 581. He adopts the position that a stay should not be granted because statutory mootness *should* apply, and the sale should be deemed final to promote the policy considerations of maximizing the returns to creditors and assuring bidders alike.

But it is not at all clear that withholding a stay will preclude appellate review. The exception to the rule set out in section 363(m) will allow the Agent to litigate whether Winget "purchased . . . [the] property in good faith," which is at the heart of the Agent's several articulated issues relating to Winget's conduct relating to the sales procedures. *See ibid.* (holding that "because the Appellants were denied a stay pending appeal and the Property was sold pursuant to the Committee's Plan, the only issue before us is whether TPL is a good-faith purchaser under § 363(m)"). Moreover, even if it were the case that the appeal would be moot, courts have concluded that prospect, standing alone, is insufficient to establish irreparable harm. *See In re K & D Indus. Servs. Holding Co., Inc.*, 600 B.R. 388, 391 (Bankr. E.D. Mich. 2019). If it were otherwise, "courts would be required to grant a stay for every appeal of an order approving a § 363 sale." *Ibid.* The absence of irreparable harm weighs against a stay.

### 3. Harm to Others

The Agent maintains that a stay would not harm Winget or the companies subject to the sale, or anyone else for that matter, observing that the companies have continued to operate during the course of the litigation. But Winget says he and the sale assets would be harmed by a stay, explaining that the companies have been forced to operate under a cloud of uncertainty since 2019,

when their stock became subject to a writ of execution. The Agent counters that Winget has been permitted under a status quo order to direct the affairs of the companies as normal. *See* ECF No. 915, PageID.29784-85 (authorizing Winget to "take such actions as are reasonable and necessary to the ongoing and continued operations" of the companies).

Although Winget does not offer evidence of the harm he describes, the logic of his reasoning is persuasive enough: this litigation undoubtedly has cast a long shadow, and that continued uncertainty could affect the financial health of the sale assets.

There is little in the way of evidentiary support for the idea that the companies would suffer significant harm if the sale were paused during the pendency of the appeal, but it is likely they would face at least some harm due to the continued specter of this litigation on their business operations. This factor weighs only slightly against a stay.

4. The Public Interest

The Agent contends that a stay would promote the "integrity and price-maximizing function of judicial sales" and "in preventing those who interfere in the process of judicial sales from profiting as a result of their actions." ECF No. 1234, PageID.35935. The latter rationale is unconvincing because the Court concluded that Mr. Winget did not impermissibly interfere in the conduct of the judicial sale. *See* ECF No. 1232, PageID.35902 (stating that the Agent's "quarrel is with the procedures themselves, not the defendants"). The former argument also is weak. As Mr. Winget points out in his brief, inasmuch as price-maximization is an important feature of a public sale, promoting finality by denying a stay also would promote this aspect of judicial sales by preventing purchasers of sale assets from demanding a discount for investing in property subject to litigation risks. *See In re Made in Detroit, Inc.*, 414 F.3d at 581 ("[W]ithout this assurance of finality, purchasers could demand a large discount for investing in a property that is laden with the

risk of endless litigation as to who has rights to estate property." (citation omitted)).  On balance, this factor favors neither side and therefore is neutral.

This factor ties into the first one, as well.  Staying the sales order ought to be justified by a strong argument that something was terribly wrong with the sale itself.  *In re DeLorean*, 755 F.2d at 1229 (requiring a stay applicant to demonstrate "serious questions going to the merits").  That is because it is in the public interest to finalize not only judgments, but also the execution of them.  It is a virtue that the Agent has repeatedly extolled by insisting that the judicial sale proceed with dispatch.  *See* ECF No. 1130, PageID.33939 (citing Mot H'rg Tr., ECF No. 1099, PageID.33593, where the Agent maintained: "The point I would simply make to your Honor is the way in which this case finally comes to a conclusion is if you put everyone's feet to the fire — right? — and issue that sale process motion.").  Now that the sale has taken place, and the results were apparently disappointing to the plaintiff as judgment creditor, its sense of seller's remorse should not amount to sufficient justification to bring the process to a halt.  The public interest is not served by such tactics.

### III.

Most of the critical factors weigh against a stay.

Accordingly, it is **ORDERED** that the plaintiff's motion to stay the order confirming the judicial sale (ECF No. 1234) is **DENIED**.

s/David M. Lawson  
DAVID M. LAWSON  
United States District Judge

Dated:  October 7, 2025