# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

ALTER DOMUS (US) LLC,

    Plaintiff/Counter-Defendant,        Case No. 08-cv-13845

v.                                 Honorable David M. Lawson

LARRY J. WINGET and LARRY J.        Chief Magistrate Judge David R.
WINGET LIVING TRUST,              Grand

    Defendants/Counter-Plaintiffs.

---

## ALTER DOMUS (US) LLC'S MOTION FOR TRIAL TO DETERMINE DAMAGES FROM FRAUDULENT TRANSFER CLAIM

This Court found Larry J. Winget liable for fraudulent transfer after he revoked his Trust. Plaintiff Alter Domus (US) LLC (the "Agent") moves the Court to schedule trial to determine the damages element of that claim.

Consistent with Local Rule 7.1, on December 10, 2025, counsel for the Agent asked counsel for Mr. Winget whether he concurs in the motion. On December 10, 2025, counsel stated that Mr. Winget does not concur.

December 10, 2025                  Respectfully submitted,

                                   */s/ James W. Ducayet*
                                   James W. Ducayet
                                   Kendra L. Stead
                                   Jennifer M. Wheeler
                                   Stephen Spector
                                   SIDLEY AUSTIN LLP
                                   One South Dearborn Street
                                   Chicago, IL 60603

Telephone No. (312) 853-7000
Facsimile No. (312) 853-7036
jducayet@sidley.com
kstead@sidley.com
jwheeler@sidley.com
sspector@sidley.com

*Attorneys for Plaintiff/Counter-*
*Defendant Alter Domus (US) LLC*

# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

ALTER DOMUS (US) LLC,

      Plaintiff/Counter-Defendant,        Case No. 08-cv-13845

v.                              Honorable David M. Lawson

LARRY J. WINGET and LARRY J.      Chief Magistrate Judge David R.
WINGET LIVING TRUST,            Grand

      Defendants/Counter-Plaintiffs.

---

# ALTER DOMUS (US) LLC'S BRIEF IN SUPPORT OF
# MOTION FOR TRIAL TO DETERMINE
# DAMAGES FROM FRAUDULENT TRANSFER CLAIM

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ...................................................................................................1

BACKGROUND ....................................................................................................2

ARGUMENT ..........................................................................................................5

CONCLUSION .......................................................................................................8

ii

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Hutchinson v. Cox*,
   784 F. Supp. 1339 (S.D. Ohio 1992) ...................................................................6

*Plastic Omnium Auto Inergy Indus. SA de DV v. MCC Dev., Inc.*,
   2023 WL 5251827 (E.D. Mich. Aug. 15, 2023)...................................................6

*Talentscale, Inc. v. Aery Aviation, LLC*,
   --- F.Supp.3d ---, 2025 WL 2942235 (N.D. Fla. Oct. 6, 2025) ...........................6

## <u>ISSUE PRESENTED</u>

Whether, after finding Mr. Winget liable for fraudulent transfer more than eight years ago, the Court should schedule trial to resolve the only outstanding component of that claim: the amount of damages.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Hutchinson v. Cox*, 784 F. Supp. 1339 (S.D. Ohio 1992)

*Plastic Omnium Auto Inergy Indus. SA de DV v. MCC Dev., Inc.*, 2023 WL 5251827 (E.D. Mich. Aug. 15, 2023)

*Talentscale, Inc. v. Aery Aviation, LLC*, --- F.Supp.3d ---, 2025 WL 2942235 (N.D. Fla. Oct. 6, 2025)

iv

## INTRODUCTION

Mr. Winget was found liable for fraudulent transfer more than eight years ago for revoking his Trust in the face of the Agent's claims. The only outstanding point to resolve on that long-outstanding claim is a remedy. The Agent seeks damages, which are straightforward: the diminution in value of Trust assets caused by Mr. Winget restructuring those assets during the Revocation Period. It is time for a trial to quantify that figure.

When Mr. Winget revoked the Trust, PIM Management Company was the Trust's largest corporate asset. PIM, a holding company, owned various direct and indirect subsidiaries. During the Revocation Period, Mr. Winget caused the transfer of two extremely valuable indirect subsidiaries to a new entity (BMJD) outside the Trust's control. When Mr. Winget reinstated the Trust and claimed to have restored the assets to the "status quo ante," he did not unwind the BMJD transaction. Therefore, contrary to his representations to the Court, the reinstatement did not restore the Trust to its pre-Revocation state. Rather, it was as if Mr. Winget had taken a car from the Trust, removed the engine, and then returned the car, minus the engine, to the Trust. Sticking with this analogy, the damages to the Agent from the fraudulent conveyance are the difference between the pre-Revocation value of the fully functional car and the post-Reinstatement value of the car minus the engine.

1

Recent events have confirmed that this reduction in value was no small amount. At the time Mr. Winget caused the transaction in 2016, a valuation professional assessed the value of a controlling interest in the combined transferred entities at $340,900,000. (Dkt. 1050-8.) But this year, when the Agent auctioned the stock of the Trust's corporate holdings—which included PIM after the BMJD transaction and therefore without control of the Mayco Entities—Mr. Winget placed the winning bid of only $19 million for the entire lot and has strenuously argued that this amount represents a reasonable value for the assets. In its order confirming that sale, the Court noted that the Agent could pursue its diminution in value claim for the BMJD transaction.

As discussed below, that matter is ripe for consideration notwithstanding the Agent's pending appeal, and the Agent respectfully requests that the Court set a schedule to promptly determine damages.

## BACKGROUND

The Court is well aware of the long history of this dispute and the Agent's efforts to collect on its substantial judgment. The Agent therefore summarizes only the facts that are core to this motion. On July 5, 2017, the Court determined that Mr. Winget's revocation of the Larry J. Winget Living Trust (the "Trust") was a fraudulent transfer as a matter of law. (Dkt. 732.) The Court did not decide the issue of damages at that time. (*See id.* at PageID.26292.) In February 2018, Mr. Winget

2

notified the Court and the Agent that he had unilaterally "reinstated" the Trust. (Dkt. 777.) Mr. Winget asserted that he had returned Trust property "in exactly the condition it was held immediately before the Trust was revoked by Winget." (*Id*. at PageID.27032.)

That representation was not true. During fact and expert discovery to assess damages resulting from the fraudulent transfer, the Agent learned that, while the Trust was revoked from 2014 to February 2018 (herein referred to as the "Revocation Period"), Mr. Winget had significantly altered the configuration of PIM, the largest corporation owned by the Trust. (Dkt. 1050-1 at PageID.32908.) At the time of revocation, PIM owned 100% of Mayco Holdings, which in turn owned 100% of two operating entities: Mayco Freight and Mayco International ("Mayco Operating Entities"). (*Id.*)

During the Revocation Period, Mr. Winget stripped PIM's 100% voting and economic control over the Mayco Operating Entities by causing them to be contributed to a new entity, BMJD, in exchange for non-voting and low-yielding preferred shares in BMJD. (*Id.* at PageID.32908-09.) Mr. Winget owned all voting shares of this new company, meaning that Mr. Winget transferred PIM's control over the Mayco Operating Entities from PIM to himself. (*Id.* at PageID.32909.) The following figures illustrate the effect of the BMJD transaction:



After Mr. Winget reinstated the Trust, the Court instructed the Agent to pause its progress toward a trial on damages on the fraudulent conveyance claim and instead pursue collection from the Trust. (Dkt. 857 at PageID.28010-13.) Consistent with that instruction, the Agent obtained charging liens against the membership interest in Trust-owned LLCs (*see, e.g.*, Dkt. 839) and a writ of execution against the stock of the Trust-held corporations (Dkt. 915).

The Agent later auctioned the corporate stock, including the PIM stock, pursuant to a Court-ordered process. (Dkt. 1232 at PageID.35887-88.) A marketing agent conducted the auction on April 21, 2025. (*Id.* at PageID.35892.) Mr. Winget and the Agent were the only potential bidders to attend the auction. (*Id.*) Mr. Winget placed the sole bid at auction, winning the stock of all Trust-held corporations for $19 million. (*Id.*) On September 9, 2025, the Court entered an order confirming the sale. In that order, the Court stated that the Agent could pursue "the unadjudicated

4

damages component of its fraudulent transfer claim," using the $19 million sale price as "part of its proofs." (Dkt. 1232 at PageID.35908.)

## ARGUMENT

The damages component of the otherwise-adjudicated fraudulent transfer claim remains unresolved more than eight years after the Court entered the liability ruling. Meanwhile, the Agent's outstanding judgment currently stands at over $700 million.

Consistent with the Court's instructions following Mr. Winget's re-establishment of the Trust, the Agent has diligently pursued collection from the Trust, both by obtaining the charging liens with respect to the LLCs and conducting the auction of the corporate stock pursuant to the Court's order. The Agent has also sought to recover on the assets that were conveyed through the constructive trust awarded to it by virtue of the fraudulent conveyance, including the two promissory notes issued by JVIS to Mr. Winget, as well as payments that had been made under those notes. In short, the Agent has done what it can up to this point in time to pursue collection against the Trust.

Because those efforts did not satisfy the Agent's judgment, it is time to return to the partially adjudicated fraudulent transfer claim and resolve the element of damages. To be sure, the Agent has twice sought summary judgment seeking equitable relief in connection with this claim, i.e., an order requiring the BMJD

5

transaction to be unwound. (Dkt. 1008, 1009, 1050.) However, consistent with its March 2024 request (Dkt. 1128), the Agent is now prepared to seek money damages as an alternative form of relief.

There is no reason to delay quantifying these damages. Resolving it will allow the Agent to further collect on its now more than 10-year-old judgment, an end in which the Agent and court system share a strong interest. Fully resolving the fraudulent transfer claim is necessary to conclude this case. The Agent, as a judgment creditor, has an interest to see its judgment satisfied. *See Hutchinson v. Cox*, 784 F. Supp. 1339, 1343 (S.D. Ohio 1992) (discussing, in the context of Ohio's post-judgment collection statute, the state interest "in safeguarding the efficacy of its civil justice system and an interest in providing complete justice to the person who recovered the judgment"). For its part, this Court and the judicial system generally have an interest in seeing judgments respected and enforced and likewise benefits by addressing this long-outstanding claim. *Id.*; *Plastic Omnium Auto Inergy Indus. SA de DV v. MCC Dev., Inc.*, 2023 WL 5251827, at *3 (E.D. Mich. Aug. 15, 2023) (recognizing, in the context of a motion for injunction, the "strong public interest in favor of the orderly administration of justice and the enforcement of money judgments"); *Talentscale, Inc. v. Aery Aviation, LLC*, --- F.Supp.3d ---, 2025 WL 2942235, at *2 (N.D. Fla. Oct. 6, 2025) ("[S]atisfaction of judgments is important to the American legal system.").

6

The pending appeal of the Court's sale process order in connection with the judicial sale should not delay resolution of this issue. The damages trial will involve a determination of the value of an asset that was, by definition, **_not_** sold in that process—i.e, the controlling interest in the Mayco Entities, which now belongs to Mr. Winget rather than PIM. The $19 million that Mr. Winget bid for all of the assets minus the controlling interest in the Mayco Entities is one relevant data point in establishing the value of that controlling interest. That is because the $19 million for assets that do **_not_** include the controlling interest is in stark contrast to earlier, much higher valuations in which the controlling interest was included. However, the Agent intends to prove the intrinsic value of that controlling interest itself through expert testimony, and presumably Mr. Winget will attempt to do the same. And because the Agent is not asking the Court to unwind the transaction, even if the Sixth Circuit were to require a new auction, that auction would only involve those assets that were the subject of the prior auction, i.e., PIM and the other entities as they existed following the transfer of control over the Mayco Entities from PIM to the newly created BMJD. To repeat, the Agent is asking for a damages trial on an asset that was **_not_** part of the auction, and as such, the damages trial is not dependent on the outcome of the pending appeal.

Given that the issue of liability is the subject of a final and non-appealable order, the only discovery needed is what is necessary for an expert to assess the value

of PIM as of the revocation date and the reinstatement date; an exchange of expert reports; and expert depositions. Thus, the Agent would propose the following schedule:

- **Document discovery complete**: 60 days from entry of Order granting Agent's Motion for Trial;

- **Expert reports served on issue(s) for which party offering expert has burden of proof**: 45 days after document discovery deadline;

- **Rebuttal expert reports exchanged**: 21 days after principal reports;

- **Deadline for completing expert depositions**: 30 days after exchange of rebuttal reports;

- **Trial**: Earliest date the Court has availability not earlier than 45 days after the deadline for completing expert depositions.

## CONCLUSION

The Agent has complied with the Court's instruction to pursue recovery from the Trust, and now asks that the Court set a trial schedule to resolve its outstanding fraudulent conveyance claim and further advance this matter to conclusion.

Dated: December 10, 2025   Respectfully submitted,

         */s/ James W. Ducayet*
         James W. Ducayet
         Kendra L. Stead
         Jennifer M. Wheeler
         Stephen Spector
         SIDLEY AUSTIN LLP
         One South Dearborn Street
         Chicago, IL 60603
         Telephone No. (312) 853-7000

Facsimile No. (312) 853-7036
jducayet@sidley.com
kstead@sidley.com
jwheeler@sidley.com
sspector@sidley.com

*Attorneys for Plaintiff/Counter-Defendant Alter Domus (US) LLC*

9

## CERTIFICATE OF SERVICE

I hereby certify that on December 10, 2025, I electronically filed the foregoing document using the CM/ECF system, which will send notice of this filing to all counsel of record.

/s/ *James W. Ducayet*
James W. Ducayet
SIDLEY AUSTIN LLP
One South Dearborn Street
Chicago, IL 60603

10